THE HONORABLE BARBARA J. ROTHSTEIN

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

JAMES R. HAUSMAN,

                Plaintiff,

        v.

HOLLAND AMERICA LINE – U.S.A,
a Washington corporation; HOLLAND
AMERICA LINE, INC., a Washington
corporation; HOLLAND AMERICA LINE
N.V., a Curacao corporation; and HAL
ANTILLEN N.V., a Curacao corporation,

                Defendants.

No. 2:13-cv-00937-BJR

**DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT
DISMISSING PUNITIVE DAMAGES**

**NOTE ON MOTION CALENDAR:
Friday, April 24, 2015**

## I. RELIEF REQUESTED

COME NOW Defendants HOLLAND AMERICA LINE – U.S.A., HOLLAND
AMERICA LINE, INC., HOLLAND AMERICA LINE N.V., and HAL ANTILLEN N.V.,
(collectively "HAL") and move, pursuant to Fed. R. Civ. P. 56, this Court for an Order of
partial summary judgment dismissing passenger Plaintiff JAMES R. HAUSMAN's demand
for punitive damages because such damages are barred as a matter of law, and, most

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1   importantly, because HAL did not engage in wanton, willful or outrageous conduct in reckless

2   disregard of Plaintiff's safety.  Before Plaintiff's voyage, there had been no reported injuries

3   involving these doors from the thousands of passengers that had passed through them.  James

4   Colwell Decl. ¶¶ 3-4, 7.  As discussed further below and in the testimony of Commander

5   Bryan Emond, U.S.C.G. (*Ret.*), the automatic sliding glass doors at issue in this case are and

6   were reasonably safe and meet and met the requirements applicable to these doors and this

7   vessel.  Bryan Emond Decl. ¶¶ 15, 21.  HAL neither knew nor should have known of any

8   defective condition concerning these doors.  *Id.* at ¶ 29.  Incidents involving other doors aboard

9   other HAL vessels are immaterial to the issue of recovery of punitive damages because these

10  other doors were not similarly configured as the doors in this case and the other incidents

11  occurred under different circumstances.    Emond Decl.  ¶¶ 26-28.    Summary judgment

12  dismissing part of Hausman's claim, his allegation of entitlement to punitive damages, is

13  proper because there are no genuine issues of material fact regarding HAL's culpability;

14  HAL's alleged negligence, if any, did not rise to the level of culpable misconduct necessary to

15  warrant punitive damages.

## II. BACKGROUND

16

17          This lawsuit arises because Plaintiff walked into a closing automatic sliding door

18  aboard the *ms AMSTERDAM* on November 26, 2011.  Following a cruise aboard another HAL

19  ship, Plaintiff James Hausman, his wife and daughter began this part of their 8-month odyssey

20  in Seattle two months earlier, on September 26, 2011.  J. Hausman Dep. 15:17-16:5, Apr. 14,

21  2014, Ex. 1 to Louis Shields Decl.

22          Plaintiff's door contact occurred when he and his wife went to an event near the

23  swimming pool located on the Lido Deck (Deck 8).  Am. Compl. ¶ 14, Dkt. 24.  After two

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 2

NIELSEN ❖ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

months aboard the *AMSTERDAM*, the Hausmans found that the quickest route to reach the Lido Deck pool from their penthouse suite a deck below was to take the elevator up and walk through a doorway that had two sets of automatic sliding doors. J. Hausman Dep. 27:21-28:5. Mr. Hausman denied that anything caught his attention as to the door's operation during the first two months he was aboard ship. J. Hausman Dep. 28:21-25. However, Kallie Knutson, a teacher hired by the Hausmans to instruct their daughter, testified that she told Mr. Hausman that she got bumped by one of the doors the night before his incident. Knutson Dep. 69:24-70:8, Mar. 20, 2015, Ex. 9 to Shields Decl. Knutson did not think, however, the doors were malfunctioning or unsafe. Knutson Dep. 70:15-18; 71:4-15.

After seeing Knutson walk into the doors while coming from the Lido pool the night before,[1] Mrs. Hausman, with her husband, proceeded, as they had done before in walking through the doors without incident, to walk toward the doorway from the inside of the ship so as to reach the Lido pool on the outside, following a group of crewmembers. Am. Compl. ¶¶ 14-15. A video recorded their egress from the inside of the ship to the outside. Shields Decl. ¶ 4, Ex. 3 thereto. As seen in the video, the group of crewmembers (dressed in pink and green medical scrubs) walked through the doorway without incident. *Id.* Both the inner and outer sliding glass doors opened providing passage from the inside to the outside of the ship. *Id.* As Mr. Hausman quickly entered the doorway, following the group and slightly ahead of his wife, the first set of sliding glass doors closest to him began to close, while the second set of doors

---

[1] Mrs. Hausman was with Knutson when she claims she was hit approaching the doors from the outside and was with Knutson when she reported it. Knutson Dep. 67:13-16, 68:5-12, 69:14-21. She also claims that on one occasion, the sliding doors started to close and hit her in the arm. Carol Hausman Dep. 22:9-17, Apr. 14, 2014, Ex. 2 to Shields Decl. Her husband was not with her, and she neither told him about it nor the crew what had happened. *Id.* at 69:10-22. She testified she did not warn Mr. Hausman about any problem with the sliding doors. *Id.* at 17:7-22. Apparently unconcerned that the doors posed any risk, Mrs. Hausman says she was changing her glasses at the time. *Id.* at 17:7-22.

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

remained open. *Id.* As the inner doors began to close further, Mr. Hausman continued to walk toward the right leaf on the furthest right side of the inner doorway, rather than in the middle of the doorway. *Id.* He proceeded through the doorway while looking away from the closing door coming from his right, looking instead toward the people taking photographs and videos to his left. *Id.* Mr. Hausman apparently did not see the door beginning to close. J. Hausman Dep. 108:13-20.

The door then closed further, as Mr. Hausman walked into it. Ex. 3 to Shields Decl. Mr. Hausman reacted, without his prescription glasses falling off or even being dented, and then after talking to his wife for a moment and inspecting the door, the two proceeded outside. *Id.* Mr. Hausman later went to the ship's medical center for treatment. Upon reaching the end of the cruise in December, the Hausmans flew home for the holidays. They started the next four month leg of their world cruise when they returned to the *MS AMSTERDAM* in January 2012.

More than a year after the incident, Mr. Hausman filed this suit seeking compensatory and punitive damages. Compl. Dkt. 1. Plaintiff later dismissed his claim for loss of income and earning capacity as well as any loss of income due to his business. See Stipulation, Dkt. 23; Am. Compl., ¶ 3, Dkt. 24; Stipulation, Dkt. 67.

### III. STATEMENT OF UNDISPUTED MATERIAL FACTS

Before Mr. Hausman's incident, there had been no reported injuries requiring medical attention by passengers or crew using this doorway to HAL. Colwell Decl. ¶¶ 3-4. To the contrary, approximately **97,664** guests travelled aboard the vessel without reporting any incident or injury involving these or any other automatic doors aboard this vessel. *Id.* at ¶ 7. Nor has HAL received any warnings or other information from manufacturers or those who

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 4

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

installed the automatic doors aboard the *AMSTERDAM* that these doors posed any unreasonable hazard or were defective. *Id.* at ¶ 5.

Due to ship refurbish schedules, HAL engaged a third-party, Centraltechnica (New Technology Marine Service & Supply) to replace the doors on December 22, 2010, 11 months before Plaintiff's incident. *Id.* at ¶ 3; Emond Decl. ¶ 6. Each door configuration is unique in that the doors weigh and measure various amounts and are located at different positions throughout the ship, which can affect how the sensitivity of the doors sensors are adjusted. Emond Decl. ¶¶ 8-10, 27.  HAL received no indication that there was a problem with the manufacture, design or operation of the doors or sensors. Colwell Decl. ¶ 6.

None of the analysis conducted by either party's experts attributed the incident involving Mr. Hausman to have been caused by a condition with the automatic sliding doors on the Lido Deck of the *AMSTERDAM* that was actually known to Defendants prior to the subject event.  Emond Decl. ¶¶ 16, 20. The automatic sliding glass doors were at all times reasonably safe and met the regulatory requirements applicable to these doors and this vessel. Emond Decl. ¶ 21. Accordingly, Defendants not only did not know of any defective condition concerning these doors but also could not have known of such a condition because there was no defective condition to know of, with respect to these doors.  Emond Decl. ¶¶ 15-30. HAL's actions (or inaction) were neither outrageous nor the result of gross negligence. Emond Decl. ¶ 30.  HAL did not act with willful, wanton, or reckless indifference for the rights and safety of Mr. Hausman and other passengers on board the *AMSTERDAM*.  Emond Decl. ¶ 31.

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 5

NIELSEN ⬧ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

## IV. PLAINTIFF'S NEGLIGENCE CLAIM & PUNITIVE DAMAGE ALLEGATIONS

Plaintiff Hausman bases subject-matter jurisdiction over his negligence claim solely pursuant to 28 U.S.C. § 1332 (diversity). Am. Compl. ¶ 6, Dkt. 24. He alleges, "Defendants owed Plaintiff a duty to exercise reasonable care under the circumstances." Am. Compl. ¶ 25. He asserts, "Defendants knew or reasonably should have known about the unreasonably dangerous condition posed by the self-closing automatic doors." Am. Compl. ¶ 27.

In addition to seeking general and special damages as part of his negligence claim, Plaintiff also seeks an award of punitive damages based on incidents on other ships:

> Defendants utilize and maintain automatic glass sliding doors on virtually all of their ships, separating the interior cabin and walkway from the "outdoor swimming pool," equipped with electronic sensors to automatically open and close the doors to achieve atmospheric pressure stability, among other things, and to block out gusts of wind. As a result of Defendants' actions, passengers aboard their ships have been forced to file personal lawsuits in this Court at least as far back as 2003, and as recently as 2012, involving a serious personal injury to a patron aboard the *md Eurodam* that occurred only one month prior to Plaintiff's injury.

Am. Compl. ¶ 40. Despite dissimilar incidents aboard other ships involving other doors and door configurations set and calibrated by third-parties who installed them, Plaintiff concludes:

> Defendants' actions in failing to remedy the dangerous and unsafe condition in the circumstances, and/or warn passengers of the danger posed by the dangerously calibrated and maintained automatic sliding doors, were outrageous and owing to gross negligence and willful, wanton, and reckless indifference for the rights and safety of Plaintiff and other passengers on board.

Am. Compl. ¶ 41.

When asked to identify facts, statements, documents and witnesses that supported his claim, Plaintiff confirmed that the basis for punitive damages rested on other incidents aboard other HAL vessels involving other doors in various locations. Ex. 4 at 1, 3-5, to Shields Decl. Plaintiff did not, however, identify any probative evidence showing that HAL knew the

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

automatic sliding doors board the *AMSTERDAM* were defective or even configured similarly as to the other doors or that the other incidents occurred in a substantially similar way. *See id.* Nor did Plaintiff provide any evidence that HAL improperly adjusted any of the doors or controls aboard the *AMSTERDAM.*

## V. ISSUE PRESENTED

Is HAL Entitled to Summary Judgment Dismissing Plaintiff's Allegations and Demand Re Punitive Damages as Part of His Negligence Claim As a Matter of Law, Where There is No Evidence HAL Engaged in Wanton, Willful or Outrageous Conduct In Connection with Plaintiff Walking into an Open and Obvious Automatic Closing Door Which He Also Was Told Would Close and Where HAL Had No Notice of It Being Defective?

## VI. EVIDENCE RELIED UPON

1.  Declaration of James P. Colwell;

2.  Declaration of CMDR. Bryan R. Emond, P.E., U.S.C.G. (*Ret.*); and

3.  Declaration of Louis A. Shields & Exhibits 1-9.

## VII. ARGUMENT

**A.    Punitive Damages for Personal Injury Due to Negligence Are Barred By Law.**

Plaintiff asserts subject-matter jurisdiction solely based on diversity, Am. Compl. ¶6. Under the doctrine enunciated in *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938) and its progeny, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427 (1996); *see also* Rules of Decision Act, 28 U.S.C. § 1652. Additionally, a district court deciding a case under maritime law may refer to state law when there is no settled rule recognized by the general maritime law on an issue, and the matter does not require national uniformity. *Van Valkenberg v. Puget Sound Inflatables,* 240 F. Supp. 2d 1124, 1126 (W.D. Wash. 2002) (citing *Bohemia Inc. v.*

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 7

NIELSEN ❖ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    *Home Ins. Co.*, 725 F.2d 506, 510 (9th Cir. 1984) (interpreting *Wilburn Boat Co. v. Fireman's*

2    *Fund Ins. Co.*, 348 U.S. 310 (1955)).

3        Washington substantive law has long precluded punitive damages except as authorized

4    by statute. *See Fisher Properties, Inc., v. Arden-Mayfair, Inc.*, 726 P.2d 8, 23 (Wash. 1986)

5    (citing *Barr v. Interbay Citizens Bank*, 635 P.2d 441 (Wash. 1981) ("Since 1891, in an

6    unbroken line of cases, it has been the law of this state that punitive damages are not allowed

7    unless expressly authorized by the legislature."). Thus, "punitive damages are contrary to

8    public policy." *Barr*, 635 P.2d at 444.[2]

9        As he cites no federal statute permitting him to recover punitive damages and

10   Washington substantive law prohibits it, Plaintiff must first show that established federal

11   maritime law permits the remedy of punitive damages. Even if he could, Plaintiff also must

12   show affirmative "countervailing federal interests" are at stake that warrant application of

13   federal law over the state law prohibition. *See Gasperini*, 518 U.S. at 428, 432. In this case,

14   Plaintiff can do neither.

15       In the Ninth Circuit, remedies by passengers claiming loss for injury due to the alleged

16   negligence of a cruise line are limited to pecuniary loss. *Chan v. Society Expeditions, Inc.*, 39

17   F.3d 1398, 1407-8 (9th Cir. 1994), *cert. denied*, 514 U.S. 1004 (1995); *see also Adler v. Royal*

18   *Cruise Line*, 1996 U.S. Dist. LEXIS 22528, *21-24 (N.D. Cal. Mar. 20, 1996) ("Under the

19   reasoning of *Chan*, punitive damages are unavailable in this action") (citing *Miles v. Apex*

20

21

---

22   [2] Not only are punitive damages barred in Washington, where HAL is headquartered and has its
     principal place of business, but also, punitive damages are barred in the Netherlands, under whose laws

23   the *AMSTERDAM* is flagged and registered. *See Marsh v. Burrell*, 805 F. Supp. 1493 1497(N.D. Cal.
     1992) ("In addition, Netherlands law does not allow punitive or exemplary damages.").

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 8

NIELSEN❖SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1   *Marine Corp.,* 498 U.S. 19 (1990)).   As explained in *Adler*, a personal injury claim by

2   passengers alleging willful and malicious failure to provide a safe vessel:

> Under the reasoning of *Chan*, punitive damages are unavailable in this action.
> Punitive damages, like loss of society damages, are considered nonpecuniary
> damages and are not available under either DOHSA or the Jones Act. [citation] It
> would make as little sense to allow punitive damages because the victim survived
> the maritime injury as to allow loss of consortium damages. Further, given the
> policy of providing special solicitude to seamen, it would make little sense to
> allow punitive damages to nonseamen while precluding them for seamen. Thus,
> disallowing punitive damages advances both of the "twin aims of maritime law"
> identified by the *Chan* court.

8   *Adler,* 1996 U.S. Dist. LEXIS 22528, at *25-26.

9   Even where nonbinding authority including those from other circuits (discussed below)

10  may permit a plaintiff to plead punitive damages for an intentional tort, where there is no state

11  law prohibiting it, in this case, allowing Plaintiff to recover punitive damages would run afoul

12  of Washington state law without an affirmative countervailing federal interest to warrant such

13  an application.   The "twin aims" of federal maritime law in "achieving uniformity in the

14  exercise of admiralty jurisdiction and providing special solicitude to seamen," noted in *Chan*

15  (39 F.3d at 1407), would be undermined by permitting a non-seaman to recover punitive

16  damages for negligence when it is clear a seaman cannot. *Complaint of Aleutian Enterprise,*

17  *Ltd.,* 777 F. Supp. 793, 795-96. (W.D. Wash. 1991).  *See also McBride v. Estis Well Service,*

18  *Inc.,* 768 F.3d 382, 384 (5th Cir. 2014) (*en banc*).  To hold otherwise would encourage those

19  who work aboard ship to claim to be passengers so as to recover punitive damages for

20  negligence, seduced to forum shop in favor of a federal over state forum.  Both Washington

21  and federal maritime law in this forum agree that punitive damages are unavailable as a

22  remedy in the case of maritime personal injury based on negligence.  Thus, summary judgment

23  dismissing punitive damages in this case should be granted as a matter of law.

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 9

NIELSEN ⬩ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

**B.  Dismissal of Punitive Damages Is Also Proper Where There Is Insufficient Evidence of Wrongdoing Adopted or Ratified By HAL Management.**

**1.  Partial Summary Judgment is Proper to Dismiss Punitive Damages.**

"A party may move for summary judgment, identifying each claim or defense — *or the part of each claim* or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added).  A movant is entitled to partial judgment as a matter of law under Fed. R. Civ. P. 56(c) when the evidence, viewed in the light most favorable to the plaintiff, shows there is no genuine issue as to any material fact.

Where the moving party does not bear the burden of proof on an issue at trial, such as proving the basis of punitive damages with clear and convincing proof, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. Id.; *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *see also Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), *cert. denied*, 502 U.S. 994 (1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan*, 929 F.2d at 1409.  "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    Here, Plaintiff must go beyond the pleadings and identify specific facts in dispute that

2    constitute more than speculation, conjecture and metaphysical doubt about an aspect of his

3    negligence case, namely entitlement to punitive damages.  *Anderson v. Liberty Lobby Inc.*, 477

4    U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 323; *British Airways Bd. v. Boeing Co.*, 585 F. 2d

5    946, 952 (9th Cir. 1978).   If the evidence advanced by Plaintiff "is merely colorable, or is not

6    significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

7    The undisputed material facts demonstrate that there was no wrongdoing by any HAL

8    employee or an adoption or ratification of such conduct by HAL management. *Emond Decl.*,

9    ¶¶ 30-31.  By its very terms, the summary judgment standard "provides that the mere existence

10   of some alleged factual dispute between the parties will not defeat an otherwise properly

11   supported motion for summary judgment; the requirement is that there be no genuine issue of

12   material fact." *Anderson*, 477 U.S. at 247-48.

13   As to materiality, the substantive law will identify which facts are material.   Only

14   disputes over facts that might affect the outcome of the suit under the governing law will

15   properly preclude the entry of summary judgment.   "Factual disputes that are irrelevant or

16   unnecessary will not be counted." 477 U.S. at 248 (*emphasis added*).   For example, Plaintiff's

17   references to incidents involving other doors on other ships at different times are immaterial to

18   recovery of punitive damages in this case, and all references to these other incidents should be

19   excluded from trial.  Accordingly, partial summary judgment should be granted, as there is no

20   genuine issue of material fact as to whether HAL engaged in wanton, willful or outrageous

21   conduct; it did not and Plaintiff can produce no *bona fide* evidence that it did so.

22

23

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

**2.**     **HAL Did Not Engage in Misconduct Warranting Punitive Damages.**

In maritime law, "sometimes punitive damages are allowable, sometimes they are not." *In re Exxon Valdez*, 270 F.3d 1215, 1226 (9th Cir. 2001), *subs. op. at Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008). Although the Ninth Circuit and Washington do not permit recovery of punitive damages for personal injury claims based on negligence, some courts have not stricken such allegations, relying upon *dicta* in *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 419 (2009). In *Townsend*, the United States Supreme Court held a seaman is entitled to seek punitive damages not for negligence, but for his employer's willful and wanton disregard of no-fault maritime benefits of maintenance (boarding) and cure (medical treatment). *Townsend*, 557 U.S. at 419 (noting "*Miles* does not address either maintenance and cure actions in general or the availability of punitive damages for such actions."). The Court was careful to note, however, that, "The reasoning of *Miles* remains sound" as to its other limitations on remedies involving non-pecuniary damages. *Townsend*, 557 U.S. at 420. *See also McBride*, 768 F.3d at 387-89. Even so, a few district courts have relied upon *Townsend* to permit allegations for punitive damages in a personal injury action for wanton, willful, or outrageous conduct. *See Doe v. Royal Caribbean Cruises*, 2012 U.S. Dist. LEXIS 36274, at *6-14 (S.D. Fla. Mar. 19, 2012); *but see Doe v. Royal Caribbean Cruises*, 2012 U.S. Dist. LEXIS 139965, at *6 (S.D. Fla. Sept. 28, 2012) (striking punitive damages against cruise line for failure to prevent sexual assault and battery on passenger despite video surveillance, or alternatively, for misrepresentations of a safe cruise). This exception alone does not establish a "settled rule" of admiralty law, nor apparently even an established rule in the Southern District of Florida. Nor do these out-of-circuit cases deal with the prohibition under Washington common law, or the Ninth Circuit's precedent, barring punitive damages.

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 12

NIELSEN ⬧ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

More recently, some courts have explained the issue another way.  For example, in *Terry v. Carnival Corp.*, 3 F. Supp. 3d 1363, 1371 (S.D. Fla. 2014), the defendant cruise line sought and obtained summary judgment dismissing passengers' claims for punitive damages showing the lack of evidence of intentional wrongdoing.  In a case arising from passengers' claims of injury as a result of a fire aboard ship, the district court found Carnival negligent, but granted Carnival's motion to dismiss the punitive damages claim, holding that:

> Personal injury claimants in actions brought under general maritime law have no claim for non-pecuniary damages, including punitive damages, "except in exceptional circumstances such as willful failure to furnish maintenance and cure to a seaman, intentional denial of a vessel owner to furnish a seaworthy vessel to a seaman and in those very rare situations of intentional wrongdoing.

*Terry*, 3 F. Supp. 3d at 1371 (citation omitted); *see also Fiorillo v. Carnival Corp.*, 2013 U.S. Dist. LEXIS 23163 at *6-9 (S.D. Fla. Feb. 20, 2013) (granting partial summary judgment dismissing a passenger's demand for punitive damages against a cruise line for its cabin steward's alleged sexual battery). Upon examining the standard and HAL's actions under the circumstances of this case, punitive damages should be excluded as an available remedy.

### a.    HAL Was Not Negligent Under General Maritime Law.

The duty of care owed by a ship owner is to exercise reasonable care under the circumstances.  *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959); *Samuels v. Holland American Line-USA Inc., et al.*, 656 F.3d 948, 953-54 (9th Cir. 2011).  The parties do not dispute that HAL owes such a duty. Am. Compl. & Answer, ¶ 25. As a carrier, HAL is not the insurer of the safety of its passengers. *Moore v. American Scantic Line, Inc.*, 121 F.2d 767 (2d Cir. 1941). Merely because an accident occurs, a carrier does not become strictly liable to a passenger. *See Katz v. Cie Generale Transatlantique*, 271 F.2d 590, 591 (4th Cir. 1959).

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 13

**NIELSEN ✦ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

In exercising reasonable care, there is a duty of the carrier to warn a passenger of known dangers abroad ship; however, this obligation extends only to those dangers that are not, or should not be, apparent for a sufficient period of time to invite investigation as to whether they can be corrected, or alternatively, a warning provided.[3]  *See Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 41 n.1 (S.D. Fla. 1986) *aff'd*, 808 F.2d 60 (11th Cir. 1986) (affirming dismissal of passenger's claim because the presence of a ledge behind a shower curtain was an obvious condition of which plaintiff should have known upon the ordinary use of her senses).  In this case, there had been no reported injuries involving the incident doors aboard the *AMSTERDAM* from the thousands of passengers that had passed through them before Plaintiff. Colwell Decl. ¶¶ 3-4, 7. These automatic sliding glass doors were and are reasonably safe and met and meet the regulatory requirements applicable to these doors and this vessel.  Emond Decl. ¶¶ 15, 21.  HAL neither knew nor should have known of any defective condition as to these doors. *Id.* at ¶ 29.

In addition, courts also have held consistently that there is no duty to warn of an obvious or apparent danger. *See Samuels v. Holland America Line-USA, Inc.*, 2010 U.S. Dist. LEXIS 105407, at *2 (W.D. Wash. Oct. 4, 2010) (HAL had no duty to warn of risk of undertow at beach as ocean conditions were open and obvious to injured wader), *aff'd on other grounds*, 656 F.3d 948, 954 (9th Cir. 2011).  The risk of walking into a closing door, like the risk of tripping over a ledge behind a shower curtain (*Luby, supra*) or walking down stairs at the end of a gangplank (*Cohen, infra*), is apparent to anyone accustomed to perambulating

---

[3] In other words, "for a ship owner to be liable for negligence, it must 'have had actual or constructive notice of the risk-creating condition.'" *Mirza v. Holland America Line Inc.*, 2012 U.S. Dist. LEXIS 159982, 2012 WL 5449682, at *3, (W.D. Wash. Nov. 6, 2012) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989); *see also Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2nd Cir. 1988) ("a ship owner is responsible for defective conditions aboard ship only when it has actual or constructive notice of them.").

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 14

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

through this or any other doorway with automatic closing doors, especially after recently being told about an incident involving them.[4]  Here, Plaintiff had been aboard the *AMSTERDAM* for months, and even though he claims he did not observe anything wrong with the operation of the doors during the extensive amount of time he had passed through them, and he was told about them by Kallie Knutson the night before he walked into them.[5]  Knutson Dep. 69:24-70:8.  If he had been looking forward, in the direction he was walking, instead of off to his left, he would have seen the door closing.  *See* Ex. 6, at 13 to Shields Decl.

Only a latent defective condition that persists for a sufficient time to invite corrective measures may be viewed as evidencing constructive notice of a condition, giving rise to a duty to warn.  *See Mirza v. Holland America Line Inc.*, 2012 U.S. Dist. LEXIS 159982, at *8, (W.D. Wash. Nov. 6, 2012) (citing *Monteleone*, 838 F.2d at 65).  A door closing is front of a passenger should be apparent, and not in and of itself, a defective condition.  The reported incident by Knutson the night before Hausman walked into the door is insufficient, especially given the timing, lack of any other incident, and her own account that she was walking through the doors from the Lido deck to the spa, and she nonetheless considered these doors to be safe.  *See* Knutson Dep. 67:13-16, 68:25-12, 71:4-15; Colwell Decl. ¶ 5.  Moreover, as noted above, the doors and sensors were reasonably safe as configured, and thus, there was no need to correct any unsafe condition as none existed.  *See* Emond Decl. ¶¶ 15-30.

---

[4] For example, in *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351 (S.D. Fla 2013), the district court dismissed a passenger's negligence claim arising from his tripping and falling down the stairs at the end of a gangplank leading off Carnival's ship because there was no evidence Carnival should have known of the risk-creating condition posed by the steps. 954 F. Supp. 2d at 1356-57. The court found that there was no duty to warn the passenger, as the danger descending the stairs should have been apparent to him. *Id.* at 1358.

[5] In fact, considering the amount of time Plaintiff was on the ship, the number of times he walked through these doors, and the fact that he never saw or reported any condition indicating any defect or inoperably, supports the reasonableness of the fact that HAL had no prior notice of any issue with these doors.

NIELSEN✦SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

Obviously, questions of fact may preclude summary judgment on liability, especially in negligence cases. For example, in *Galentine v. Holland Am. Line - Westours, Inc.*, 333 F. Supp. 2d 991 (W.D. Wash. 2004), this court denied HAL's summary judgment on a different issue: whether there was a genuine issue of material fact whether the automatic sliding doors on the Navigation Deck of the *RYNDAM* were defective due to closing too quickly. 333 F. Supp. 2d at 997. In denying summary judgment, the court found:

> [T]here are disputed material facts as to whether the doors operate according to industry standards. This bears directly on the factual question of whether the doors operate in an unreasonably dangerous manner. A reasonable jury could conclude, after hearing the parties' conflicting evidence, that a reasonable inspection would have revealed that the doors did not operate according to industry standards as well as the manufacturer's installation manual, and therefore did not operate in a safe manner. Moreover, a reasonable jury could conclude that Defendant had constructive notice based on the fact that Defendant's chief electrician states that he inspected the doors weekly. Based on this disputed evidence alone, summary judgment is not appropriate.

*Id.* In other words, there was a dispute as to the standard of care based on differing expert views of compliance with nonbinding industry standards. *But see Mirza*, 2012 U.S. Dist. LEXIS 159982, at *8 (granting summary judgment where these existed no actual or constructive knowledge of risk).

Like *Mirza*, and unlike *Galentine*, there is no genuine issue of material fact that HAL did not have sufficient notice of any defective condition as to the Lido deck automatic sliding doors.[6] Colwell Decl. ¶¶ 4-5; Emond Decl. ¶¶ 15, 21, 29. Given this, HAL should not be

---

[6] In *Mirza*, Judge Pechman, who also decided *Galentine, supra*, explained that Mirza's reliance on *Galentine* was inadequate to establish the knowledge element of her claim. In *Galentine*, "evidence of non-binding industry standards was admitted to establish the standard of care...and do[es] not stand for the proposition that industry standards establish actual or constructive knowledge of a risk-creating condition." *Mirza*, 2012 U.S. Dist. LEXIS 159982, at *10. In contrast, the court explained that even if the whistle on the *OOSTERDAM* exceeded the decibel levels permitted by regulation, Mirza's argument turned on the false premise that HAL knew or should have known the whistle exceeded the 110 dB(A) permitted by the regulation. *Id.* at *9. The evidence showed that HAL has never received any feedback

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 16

NIELSEN ⬩ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

exposed to liability, especially for punitive damages, where it has not been negligent in failing to correct any unreasonably dangerous condition. And without a genuine issue of material fact as to whether HAL was grossly negligent in this instance, the demand for punitive damages must be dismissed.

### b. Alleged Incidents Involving Other Doors are Immaterial.

Along with the Ninth Circuit, the Second, Fifth, Sixth, and Eighth Circuits have also expressly adopted the *Kermarec* rule of reasonable care under the circumstances in passenger cases. *Samuels*, 656 F.3d at 953; *Fritsch v. Princess Cruise Lines, Ltd.*, 2010 AMC 1655, 1663 (Cal. App. 2010) (surveying cases regarding carrier duty under general maritime law). For example, in *Fritsch, supra*, the trial court dismissed a passenger's claim that the cruise line was negligent for her slipping while stepping from her cabin to the balcony based on a lack of notice of a dangerous condition. 2010 AMC 1664-65. The appellate court wisely rejected testimony of similar accidents on stateroom balconies on different Princess vessels as sufficient to give notice to Princess of a danger or defect, noting, "[t]hat would be like suing Hilton Hotels saying there was a slip and fall at the Hawaii Hilton; therefore, that's notice of something in another Hilton somewhere else." *Id.* at 1666. *See also Galentine*, 333 F. Supp. 2d at 998 (noting automatic sliding doors on *VEEDAM* would have to be "identical" to Navigation Doors on *RYNDAM* to compare for purposes of constructive notice).

While the issues whether the automatic sliding doors on the Lido Deck aboard the *AMSTERDAM* were defective and whether HAL should have known of the defect so as to warn passengers is disputed among the parties, Plaintiff cannot use other incidents on other

after inspections indicating that the whistle was too loud or that any harm could result from its use, nor received passenger complaints about the noise volume of the whistle (except Plaintiff's). *Id.* at \*9-10.

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 17

NIELSEN ⬧ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1   HAL ships involving other doors and different circumstances to prove constructive knowledge

2   regarding the subject alleged difficulties. *See Galentine*, 333 F. Supp. at 998; *Mirza*, 2012 U.S.

3   Dist. LEXIS 159982, at *8.  Only sufficient notice of a nonobvious defective condition as to

4   this particular Lido deck door that Plaintiff walked into could trigger a duty to investigate, as

5   all doors and sensors on all ships, as well as the circumstances involving other incidents, are

6   unique to each. *See* Emond Decl. ¶¶ 7-10.

7        More importantly for this motion, other alleged incidents cannot prove entitlement to

8   punitive damages as part of a maritime claim.  As the U.S. Supreme Court pointed out in

9   *Townsend, supra*, "The jury's broad discretion to set damages included the authority to award

10  punitive damages when the ***circumstances of the case*** warranted."  557 U.S. at 391 (emphasis

11  added).  To that effect, the Supreme Court concluded that punitive damages remain available in

12  a seaman's case for willfully unpaid maintenance and cure, "under the ***appropriate factual***

13  ***circumstances***."  *Gonzalez v. Maersk Line, Ltd.*, 2011 U.S. Dist. LEXIS 99647, at *6 (P.R.

14  Sept. 2, 2011) (quoting *Townsend*, 557 U.S. at 415).  Therefore, an award of punitive damages

15  will depend on the conduct under the particular facts of the case, and malice, ill will, or gross

16  negligence is required to warrant such a punishment. *Gonzalez*, 2011 U.S. Dist. LEXIS 99647,

17  at *6.  Even discovery as to other incidents to prove punitive damages should be denied as

18  "plaintiff can only obtain such an award if he proves that [defendant's] conduct was 'wanton,

19  willful and outrageous,' [citation] in ***this specific case***."  *Id*. at * 7 (emphasis added).

20        As noted above, Plaintiff alleges incidents on other ships involving automatic sliding

21  doors justify an award of punitive damages, without proof that such doors were designed,

22  constructed, inspected, calibrated, and maintained in the same way as the subject doors.  Am.

23  Compl. at ¶¶ 40-41; Ex. 4 to Shields Decl.  Nor does he proffer evidence in his discovery

responses that the circumstances of the other cases are the same, whether the issues in these other instances concerned timing of the doors or some other alleged defect that is at issue in his case. *See* Ex. 4 to Shields Decl. Furthermore, attempts to use evidence of past alleged wrong or other acts is inadmissible to show HAL so performed as to these doors. *See* Fed. R. Evid. 404. In fact, HAL had the doors replaced and fitted by a third party specialist not long before the subject incident. Emond Decl. ¶ 6; Colwell Decl. ¶ 3. Accordingly, any other alleged wrongdoing involving automatic sliding doors is immaterial and inadmissible as respects adjudication HAL's conduct here, and as such, cannot amount to a genuine issue of material fact to sufficient preclude summary judgment here, as requested.

**c.    There is No Wrongful or Malicious Conduct To Justify Exposure To Punitive Remedies.**

Punitive damages serve the purpose "of punishing the defendant, of teaching him not to do it again, and of deterring others from following his example." *Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1385 (9th Cir. 1985) (citing Prosser, The Law of Torts § 2, at 9 (1971). Recovery of punitive damages is limited to cases of "enormity," where a defendant's conduct is outrageous, willful, wanton, and reckless indifference for the rights of others, or behavior even more deplorable. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008). Such a remedy is not permitted for mere error in judgment, rather the plaintiff must plead and prove the necessary degree of misconduct. *See Borkowski v. F/V MADISON KATE*, 599 F.3d 57, 61 (1st Cir. 2010) ("Simply put, not all intentional behavior constitutes 'reckless indifference for the rights of others.'") (citing *Baker*, 554 U.S. at 492).

**NIELSEN ✦ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

As the Ninth Circuit previously has held in non-injury claims before *Chan*, general maritime law requires a plaintiff to make a significant showing of culpable conduct, including a reckless disregard of a person's safety or rights, in order to recover punitive damages. 767 F.2d at 1385.   In the Ninth Circuit, punitive damages are:

> . . . not a favorite in the law and are never awarded as of right, no matter how egregious the defendant's conduct, but may be imposed for that conduct which manifests 'reckless or callous disregard' for the rights of others, or for conduct which shows 'gross negligence or actual malice or criminal indifference.

*Id.* at 1385. So, for example, in another case before *Miles and Chan* placed limits on recovery of nonpecuniary loss as a matter of law, the Ninth Circuit affirmed a district court's factual finding that although operation of a skiff while intoxicated (on alcohol and probably marijuana) and colliding with another skiff at night, resulting in injury and death, was negligent, it was not error to conclude that such conduct did not amount to wrongdoing of a level sufficient to warrant an award of punitive damages. *See also Churchill v. F/V Fjord*, 892 F.2d 763, 772 (9th Cir. 1988), *cert. denied*, 497 U.S. 1025 (1990).

The level of misconduct necessary for punitive damages has been described as wanton and willful,[7] capricious, outrageous, or with a conscious or reckless disregard to the safety and welfare of others.   *See Borkowski*, 599 F.3d at 6. Having recently updated the *MS AMSTERDAM* and replaced and serviced the doors, HAL did not have the state of mind of acting recklessly indifferent to passenger safety. With the doors' recent installation, there were

---

[7] "Wanton and willful" requires a state of mind surpassing ordinary negligence but less than intentional harm; meaning doing some act or omission if required to act with reckless indifference that "such act or omission will likely or probably result in injury." *In re Complaint of Cameron Boat Rentals, Inc.*, 683 F. Supp. 577, 585 (W.D. La. 1988) (allowing punitive damages for hiring and use of pilots ignorant of radar fundamentals and who were expected to use radar was in reckless disregard of safety resulting in vessel collision and sinking involving injury and death of passengers and crew); *compare Churchill*, 892 F.2d at 772 (9th Cir. 1988) (no punitive damages for negligent, intoxicated operation of a skiff in injury and death or passengers).

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 20

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

no reports of injury inviting correction or modification of their operation. HAL's crew did not act willfully or grossly negligently to cause injury. As discussed above, it is undisputed that HAL had neither actual nor constructive knowledge of any non-obvious defective condition involving the Lido deck sliding doors, especially after they had just been replaced and HAL had not received any reports of injury or malfunction. Colwell Decl. ¶¶ 3-4; Emond Decl. ¶¶ 5, 7, 13. Without any showing that HAL knew or should have known of a defect or some operational issue, the assertion of entitlement to punitive damages should be dismissed.

Even assuming Plaintiff could meet his burden in this case of showing a pre-incident conscious awareness of risk of harm (*i.e.* suggesting that HAL should have known of the potential risk of passenger walking into the sliding doors as they closed), there remains no evidence of an egregious, willful or wanton departure from the proper level of reasonable care. At best, Plaintiff's Amended Complaint alleges HAL failed to warn of an unreasonably dangerous condition it knew of or reasonably should have known existed; neither evidence nor even Plaintiff's allegations, suggest HAL acted with the requisite willful disregard for safety and the exercise of reasonable care. *See* Am. Compl. ¶¶ 27-31; Ex. 4 to Shields Decl. Nor is there evidence HAL was grossly negligent. *See* Emond Decl. at ¶ 31. Thus, the claim for punitive damages should be dismissed.

### 3.     HAL Did Not Authorize or Approve Any Wrongful Conduct.

As the Ninth Circuit previously has held in non-injury claims, general maritime law requires a plaintiff to make a significant showing of culpable conduct, including a reckless disregard of a person's safety or rights, in order to recover punitive damages. *Protectus*, 767 F.2d at 1385. As discussed above, there is no evidence any person at HAL acted with a motive

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 21

NIELSEN ⬥ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

to harm Plaintiff or any other passenger. Nor is there evidence that such individual motives should be attributed to HAL as a corporate defendant so as to punish its shareholders.

In addition to having to make a significant showing of evil motive or intent, maritime courts, including the Ninth Circuit, in connection with corporate liability for punitive damages, require proof of (a) an authorization of the wrongful act by the corporation; or (b) that the corporation was reckless in employing an unfit employee; or (c) that the agent was employed in a managerial capacity and was acting in the scope of employment; or (d) that the corporation ratified or approved the act. *See Protectus*, 767 F.2d at 1386; *Muratore v. M/S SCORTIA PRINCE*, 845 F.2d 347, 354-56 (1st Cir. 1988) (a principal "cannot be held liable for exemplary or punitive damages merely by reason of wanton, oppressive, or malicious intent on the part of the agent."). Neither Plaintiff's allegations nor his discovery responses provide evidence of any of these elements. [8] *See* Am. Compl. ¶¶ 40-41; Ex. 4 to Shields Decl. For this alternative reason, summary judgment dismissing Plaintiff's claim seeking punitive damages against HAL should be granted.

---

[8] Pursuant to the Supreme Court's decisions in *Twombly* and *Iqbal*, plaintiff must plead factual content sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged. *Sanchez v. Various Defendants (In re Asbestos Prods. Liab. Litig.)*, 2014 U.S. Dist. LEXIS 92959 at *74 (E.D. Pa. July 9, 2014) (citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 n.3 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To satisfy the pleadings standard, Plaintiff's complaints must therefore contain factual allegations that, if accepted as true, state a facially plausible punitive damages claim. *Id.* Merely reciting the elements of a punitive damages claim are insufficient to satisfy the pleading standard articulated in *Twombly* and *Iqbal*. *Sanchez*, 2013 U.S. Dist. LEXIS at *76 (citing *Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do."). Ordinarily, failure to do so results in a judgment on the pleadings in defendant's favor. *Id.*

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

## VIII.  CONCLUSION

HAL's Motion is ripe and appropriate for summary judgment.  Plaintiff has provided his responses to discovery regarding the basis for his claim for punitive damages.  Examination of the pleadings, discovery responses, and declarations, show that HAL did not have actual or constructive knowledge of any unsafe condition and did not act with a conscious and willful disregard of passenger safety to warrant exposure to punitive damages.  For these and the foregoing reasons, HAL respectfully requests the Court's dismissal of Plaintiff's demands for an award of punitive damages.


DATED this 31ST day of March, 2015.

s/Louis Shields
LOUIS A. SHIELDS, WSBA # 25740
NIELSEN SHIELDS, PLLC
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
Telephone:    206-728-1300
Facsimile:    206-728-1302
Email:        las@nielsenshields.com
Attorneys for Defendants

NIELSEN SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1

**CERTIFICATE OF SERVICE**

2
        I hereby certify that on March 31, 2015, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which

3
will send notification of such filing to the following:

4
        Herbert Farber, Esq.

        The Farber Law Group

5
        PO Box 69

        Bellevue, WA  98009-0069

6

7
        Kenneth R. Friedman, Esq.

        William S. Cummings, Esq.

        Friedman Rubin

8
        1126 Highland Ave

        Bremerton, WA  98337

9

10
        Richard H. Friedman, Esq.

        David R. Roosa, Esq.

        Friedman Rubin

11
        51 University Street, Suite 201

        Seattle, WA 98101

12

13
        I certify under penalty of perjury under the laws of the State of

Washington that the foregoing is true and correct.

14
        Signed at Seattle, Washington.

15
                *Sheila Baskins*

16
                Legal Assistant

                1000 Second Avenue, Suite 1950

                Seattle, Washington 98104

17
                Telephone:  206-728-1300

                Facsimile:  206-728-1302

18
                smb@nielsenshields.com

19

20

21

22

23

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT DISMISSING PUNITIVE DAMAGES
No. 2:13-cv-00937-BJR – Page 24

**NIELSEN ✦ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104

21100 rc250404