THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES R. HAUSMAN,<br><br>      Plaintiff,<br><br>v.<br><br>HOLLAND AMERICA LINE - U.S.A., a Washington corporation; HOLLAND AMERICA LINE, INC., a Washington corporation; HOLLAND AMERICA LINE N.V., a Curacao corporation; and HAL ANTILLEN N.V., a Curacao corporation,<br><br>      Defendants. | No. 2:13-cv-00937-BJR<br><br>**DEFENDANTS' MOTION *IN LIMINE***<br><br>**NOTE ON MOTION CALENDAR:**<br>**Friday, June 12, 2015** |

## I. RELIEF REQUESTED

COME NOW Defendants HOLLAND AMERICA LINE – U.S.A. *et al.* (collectively "HAL") and move *in limine* to exclude from the jury any and all references to: (A) other door incidents, (B) HAL installing or adjusting the door/sensors after they were installed and set by Centraltechnica on December 22, 2010, (C) medical causation except when made on a "more-probable than-not" basis, (D) testimony by Plaintiff's rebuttal witness Michael Freeman, and

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 1

NIELSEN✦SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

(E) Plaintiff's excessive number of listed character-damage witnesses. **Certification of Conferral**: Before making this motion, counsel for the parties met and conferred on May 22, 2015, and again on May 26, 2015, without reaching an agreement as to these issues.

## II. BACKGROUND

This lawsuit arises because Plaintiff was not watching where he was going when he walked into a closing automatic sliding door aboard the *ms AMSTERDAM* on November 26, 2011. After two months aboard the EU-regulated cruise ship, the Plaintiff and his wife chose to reach the Lido Deck to celebrate crossing the equator by taking an elevator up a deck from their penthouse suite and walking through a doorway that had two sets of automatic sliding doors. Both had used the doors multiple times during the two months onboard and were well aware the doors closed if they did not pass through them in a set amount of time after they activated a sensor to open them. A video recorded the incident showing Mr. Hausman looking away from the closing door as he tried to walk through them as they were closing. After the incident, the Hausman remained on ship, visiting various ports of call until the end of the first half of the cruise in December 2011. After they flew home for the holidays, the Hausmans returned to the ship in January 2012 to finish enjoying the next four-month leg of their cruise.

Although HAL had received no notice of injury involving these doors before their cruise, Italian-based Centraltecnica replaced the automatic sliding glass doors and control systems on December 22, 2010, so as to continue to operate in a reasonably safe manner in accordance with applicable European Union (EU) standards. Bozic Decl. ¶¶ 3-4, 5, 7, Dkt. #103. After Mr. Hausman's incident, a retired U.S. Coast Guard Commander whose past duties included inspection of passenger vessels, examined the doors and found that "[t]hese

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 2

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

automatic sliding doors are reasonably safe and meet the requirements applicable to these doors and this vessel." Cdr. Emond Decl. ¶ 30, Dkt. # 86.

More than a year after his incident, Mr. Hausman filed this suit seeking to be awarded compensatory and punitive damages. Compl. ¶¶ 46-46, Dkt. #1. He alleges he is entitled to recover damages as a passenger who was injured aboard a ship at sea because he says HAL either knew of the danger from other incidents on other ships or was aware of it because it participated in setting the sensitivity of the door's sensors to an unreasonable level. Am. Compl. ¶¶ 19-20, Dkt. #24. Plaintiff's retained door witness, Dave Trotter, says that the interior automatic door and sensors were improperly installed and adjusted. Dkt. #86 at ¶ 23. However, it remains unrefuted that Centraltecnica, not HAL, replaced the automatic sliding glass doors and set the control systems and sensors. Bozic Decl. ¶¶ 3-4, 5, 7, Dkt. #103. It also remains undisputed that before Mr. Hausman's incident, there had been no incidents reported to HAL requiring medical attention by passengers or crew using this doorway. Colwell Decl. ¶¶ 3-4, Dkt. #84. To the contrary, approximately **97,664** guests travelled aboard this vessel without reporting any incident or injury involving these or any other automatic doors aboard this vessel. *Id.* at ¶ 7. HAL has not received any warnings or other information from manufacturers or those who installed the automatic doors that these doors posed any unreasonable hazard or were defective. *Id.* at ¶ 5.

### III. ARGUMENT

A. **References to Other Door Incidents Are Irrelevant and Unfairly Prejudicial.**

In this case, Plaintiff has argued HAL's records show that automatic sliding doors on other ships injured 22 other passengers along with 2 crewmembers. As referenced in his Amended Complaint and by his retained door expert, Dave Trotter, who relies on these

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 3

NIELSEN✦SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

incidents, it is anticipated Plaintiff intends to make reference to them to the jury to argue HAL had notice of an unsafe condition on the *AMSTERDAM* as well as to assert HAL's alleged bad corporate character as a general basis for punitive damages. In its motion to dismiss punitive damages by partial summary judgment, HAL demonstrated that alleged past incidents involving other doors were immaterial in this case to liability and punitive damages issues. Dkt. #83 at 17:6- 19:9. HAL renewed its objection in its reply along with noting the incident reports (Pl.'s Ex. 17) were improperly authenticated and contained inadmissible hearsay. Dkt. #100 at 5:8, 11:13-12:3.

For the same reasons, HAL moves *in limine*, pursuant to Federal Rules of Evidence 402, 403 and 404(b), to exclude references to the jury and/or any opinions based on other incidents that have no nexus with this case and would only serve to unduly prejudice the jury against HAL. As the Court may recall from the summary judgment submissions on dismissing punitive damages, the Ninth Circuit as well as the Second, Fifth, Sixth, and Eighth Circuits have expressly adopted the *Kermarec* rule of reasonable care under the circumstances in establishing a duty to warn of non-obvious dangers in passenger cases. *Samuels v. Holland American Line-USA Inc., et al.*, 656 F.3d 948, 953-54 (9th Cir. 2011) (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959)). Furthermore, "for a ship owner to be liable for negligence, it must 'have had actual or constructive notice of the risk-creating condition.'" *Mirza v. Holland America Line Inc.*, 2012 U.S. Dist. LEXIS 159982, 2012 WL 5449682, at *3, (W.D. Wash. Nov. 6, 2012) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989); *see also Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988) ("a ship owner is responsible for defective conditions aboard ship only when it has actual or constructive notice of them.").

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 4

NIELSEN ❖ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

For example, in *Fritsch v. Princess Cruise Lines, Ltd.*, 2010 AMC 1655, 1663 (Cal. App. 2010), the trial court dismissed a passenger's claim that the cruise line was negligent for failing to warn her of the dangers of slipping while stepping from her cabin to the balcony. 2010 AMC 1664-65. The appellate court wisely affirmed the trial court's rejection of testimony of similar accidents on stateroom balconies on different Princess vessels as sufficient to give notice to Princess of a danger or defect on Fritch's balcony, noting, "[t]hat would be like suing Hilton Hotels saying there was a slip and fall at the Hawaii Hilton; therefore, that's notice of something in another Hilton somewhere else." *Id.* at 1666. *See also Galentine v. Holland Am. Line - Westours, Inc.*, 333 F. Supp. 2d 991, 998 (W.D. Wash. 2004) (explaining that even assuming the automatic sliding doors on two different ships were "identical" to compare for purposes of constructive notice, the plaintiff's incident occurred *before* the incident allegedly giving notice).

Plaintiff cannot just "assume" other incidents on other HAL ships involving other doors and different circumstances to prove constructive knowledge regarding the subject alleged difficulties. *See Fritsch*, 2010 AMC at 1666; *Galentine*, 333 F. Supp. at 998. *See also Mirza*, 2012 U.S. Dist. LEXIS 159982 at *8. Only sufficient notice of a nonobvious defective condition[1] as to this particular Lido deck door that Plaintiff walked into could trigger a duty to investigate, as all doors and sensors on all ships, as well as the circumstances involving other incidents, are unique to each. In this case, there were no such defective conditions in the installation and operation of the doors and sensors. *See* Cdr. Emond Decl. ¶¶ 7-10, Dkt. #86;

---

[1] *See Samuels v. Holland America Line-USA, Inc.*, 2010 U.S. Dist. LEXIS 105407, at *2 (W.D. Wash. Oct. 4, 2010) (HAL had no duty to warn of risk of undertow at beach as ocean conditions were open and obvious to injured wader), *aff'd on other grounds*, 656 F.3d 948, 954 (9th Cir. 2011)

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 5

**NIELSEN ✦ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

*see also* Bozic Decl. ¶¶ 11-12, Dkt. #103). Nor is there evidence HAL knew or should have know of a defective condition that had not manifested before Plaintiff's incident.

Likewise, other alleged incidents cannot prove entitlement to punitive damages as part of a maritime claim. Rather, an award of punitive damages will depend on the conduct under the particular facts of this case, and malice, ill will, or gross negligence is required to warrant such a punishment." *Gonzalez v. Maersk Line, Ltd.*, 2011 U.S. Dist. LEXIS 99647, at *6 (P.R. Sept. 2, 2011) (citing *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 419 (2009)). Even discovery as to other incidents to prove punitive damages should be denied as "plaintiff can only obtain such an award if he proves that [defendant's] conduct was 'wanton, willful and outrageous,' [citation] in ***this specific case***." *Id.* at * 7 (emphasis added).

Furthermore, attempts to make references to the jury or use allegations of past wrong or other acts is inadmissible to show how HAL performed as to these installation and operation of the doors and sensors on this ship. *See* Fed. R. Evid. 404(b).[2] The "other acts" evidence involving other doors on other ships does not have a tendency to make any relevant fact in this litigation "more or less probable than it would be without the evidence." Rather, it is an impermissible assault on HAL's corporate character that would invite the jury to use this case to punish HAL for alleged conduct in which HAL has not been adjudged liable.

---

[2] Federal Rule of Civil Procedure 404(b) also specifically prohibits evidence of previous, unrelated acts to show that a party acted consistently with those prior acts, which is precisely how Plaintiff intends to use the evidence here. For "other act" evidence to be admissible to show intent, each of four elements must be met: "(1) there must be a sufficient degree of evidence for the jury to find that the other acts were in fact committed; (2) the other acts evidence may only be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time to the conduct charged; and (4) the other acts must be sufficiently similar to the charged conduct when they are being introduced to show intent." *United States v. DeSalvo*, 41 F.3d 505, 509 (9th Cir. 1994) (citation omitted).

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 6

NIELSEN✦SHIELDS
*P L L C*
*1000 Second Avenue, Suite 1950*
*Seattle, Washington 98104*
*206.728.1300*

The United States Supreme Court closed the door on use of dissimilar "bad acts" to show the intent necessary for punitive damages, holding that "conduct must have a nexus to the specific harm suffered by the plaintiff" to be relevant to "deliberateness and culpability" or to form the basis for a punitive damages award. *State Farm v. Campbell*, 538 U.S. 408, 422 (2003). With respect to punitive damages, the Court held: "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business."[3] *Id.* at 422-23.

But even when evidence has a probative value apart from impermissible character assassination, it may still be inadmissible if "its probative value is substantially outweighed by a danger of unfair prejudice," confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403; *see United States v. Paguio*, 114 F.3d 928, 931 (9th Cir. 1996). In this case, the probative value of any of the "other acts" evidence Plaintiff seeks to introduce is far outweighed by the danger that the jury will use it for the impermissible purpose of showing the alleged propensity to disregard passengers safety. Thus, the "other act" evidence Plaintiff is seeking to introduce is not

---

[3] Plaintiff previously argued HAL was on notice that its automatic doors were set in a way to hurt people as it was sued for "this defect" years ago. Dkt. #98 at 13:1-3 (citing *Galentine*, 333 F. Supp. 2d. at 991). However, in *Galentine*, Plaintiff's witness David Trotter declared under penalty of perjury that the *ms RYNDAM's* doors met and exceeded industry standards. Trotter Decl. ¶¶ 3-4, Dkt. # 101-1 at 15-16; *Galentine*, 333 F. Supp. 2d at 997.

Additionally, unlike *Galentine*, there are no issues concerning the door closing speed or presence sensors in this case. In *Galentine*, plaintiff presented evidence through his expert that the sliding automatic doors on the Navigation deck of the *RYNDAM* did do not operate according to the manufacturer's installation manual or according to industry standards because the closing speed is faster than that allowed by industry standards and the position of the presence sensors (which trigger the doors to stay open) does not meet industry standards or the instructions in the manufacturer's installation manual. *Galentine*, 333 F. Supp. 2d at 997. Plaintiff has presented no such admissible evidence in this case.

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 7

NIELSEN✦SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

admissible because "the jury might [use this evidence to] jump[] to" impermissible conclusions about HAL's alleged corporate character or tendency to act in conformity with that alleged character. *See United States v. 87.98 Acres of Land More or Less in the Cnty. of Merced*, 530 F.3d 899, 906 (9th Cir. 2008) (finding courts properly apply Rule 403 to exclude evidence where its admission would "invite" the jury to make "inferences . . . that were unsupported.").

The only purpose that could be served by introducing evidence or making reference to prior incidents aboard other ships would be to invite the jury to improperly decide this case based on unrelated conduct which may or may not have already been the subject of litigation or claim resolution (and claimed compensatory and punitive damages awards) in other matters. That purpose is impermissible under Federal Rules of Evidence 403 and 404. It also improperly invites the jury to conclude that even though there were no reports of injury before this cruise as a result of these (or any other) automatic sliding doors aboard the *AMSTERDAM*, which had been recently replaced and set by Centraltechnica according to applicable standards, that HAL should have somehow known the replacement and setting was improper. In essence, Plaintiff seeks to try HAL for previous cases, well beyond the time limitation to do so, where it has never been found negligent, and where the evidence is likely to be stale at best and potentially violating settlement agreements.

Plaintiff's attempt to garner sympathy to his case by pointing to other dissimilar cases and with the intent to call witnesses (or in an attempt to force HAL to do so), including other passengers and scores of HAL officers and experts who investigated other door incidents on other ships, to show HAL acted in this case with a particular bad character would not only violate FRE 404(b)(1) but also would result in unfair prejudice, confuse the issues, mislead the

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 8

NIELSEN SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

jury, result in an undue delay and waste of time, all far outweighing any probative value under FRE 403. Other incidents that have resolved should not now be retried in violation of HAL's due process rights. For these reasons, references to the jury of other door incidents and any opinions formulated based on other incidents should be excluded from trial.

**B. Speculation that HAL Adjusted the Sensors Before the Incident is Misleading.**

As noted above, it is undisputed that Italian-based Centraltecnica replaced the subject automatic sliding glass doors and control systems on December 22, 2010 so as to continue to operate in a reasonably safe manner in accordance with applicable European Union (EU) standards. Bozic Decl. ¶¶ 3-4, 5, 7, Dkt. #103; *see also* Cdr. Emond Decl. ¶ 30, Dkt. #86. There is no evidence that HAL changed the setting of the sensors after they were installed by Centraltecnica on December 22, 2010 and before Plaintiff's incident on November 26, 2011. In fact, after Plaintiff's incident, HAL took subsequent remedial measures to change one of the settings not only on this sensor from "low" to "medium" but to do so fleet wide. Pl.'s Ex. 10, 11, Dkt. #99-2 at 59-73, 81-103.[4] As noted in an email by HAL's Deputy Director of Technical Operations to chief electricians to take subsequent remedial measures on various HAL vessels:

> We had a[n] unfortunate incident on the Amsterdam where a guest got injured by an automatic sliding door. (Lido)
>
> After investigating the issue it appeared that the sliding doors motion sensors are set at "Low" sensitivity. Most of these doors have been replaced on the R-class by the same company and most likely are all set the same.

---

[4] Plaintiff argued Exhibits 10 and 11 were not inadmissible as subsequent remedial measures by FRE 407 because he sought to admit them for another purpose, but not one provided for under the rule or supported by any case authority. Pl.'s Opp.'n. 14:5-18, Dkt. #98. In addition to being improperly authenticated and hearsay, HAL renews its objection under FRE 407 that these exhibits are admissible at trial.

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 9

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

> We would like to adjust all these doors to Medium sensitivity to prevent any similar issues.

Dkt. # 99-2 at 102. In other words, HAL did not have any previous knowledge that Centraltecnica had not only set the motion sensor range to "low" on the *Amsterdam* on December 22, 2010 but also did so on other ships when replacing the doors and various sensors. Moreover, as Centraltecnica set the range setting to "low," then the only change HAL could have made was to set the setting to "medium" or "high". Of course, without any significant incident involving these doors on this ship, there was no reason for HAL to do so.

Although Plaintiff appears to speculate that the various sensor manufacturers produced sensors that could be set to an unsafe detection range (and subject them to liability for a defective product), the setting of the sensor's range to "low" is, in fact, not in and of itself unreasonable or unsafe and complies with the manufacturer and applicable standard. Bozic Decl. ¶¶4-5, Dkt. #103 (noting that "At either end of the range of the sensitivity settings, the sensitivity of the door sensors operates in a reasonably safe manner and in accordance with EU standards."); *see also* Cdr. Emond Decl. ¶9, Dkt. # 86 ("Even on the 'low' setting, the zone is still reasonably safe and complies with the applicable standards."). Moreover, with respect to Plaintiff's incident, changing the sensor setting range to medium would not have prevented his walking into the closing door. Cdr. Emond Report 15, Dkt. #86-1 (noting that changing the sensor setting would not have prevented the accident from occurring).

There is no factual basis to reference to the jury that HAL either installed or adjusted the setting of the sensors. To do so would impermissibly mislead the jury into believing that HAL changed the sensor setting without even an offer of proof. In addition, Plaintiff has previously argued that even though HAL may not have adjusted the sensors itself, it still is

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 10

NIELSEN SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

liable for Centraltechnica's actions.  However, the general rule of admiralty law is that the ship's passengers are not covered by the doctrine of unseaworthiness where there is a warranty imposed on the vessel owner to provide a ship reasonably fit for her intended purposes. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1335 (11th Cir. 1984); *see also Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 208 n.6 (1996) (finding duty to provide seaworthy ship is owed to seamen).  Rather, Plaintiff must show that HAL should have known of an unapparent danger and then failed to warn him, and that had he been warned, he would not have walked into the door as it was closing. *See John Morrell & Co. v. Royal Caribbean Cruises, Ltd.*, 534 F.Supp.2d 1345, 1353 (S.D. Fla. 2008).   Centraltechnica did not provide any warning to HAL that the sensors were set improperly. Bozic Decl. ¶ 10, Dkt. #103.  Nor is it HAL's agent.  Accordingly, no references should be made to the jury to mislead it into believing that HAL either installed or adjusted the doors or the sensor settings after Centraltechnica installed and set them.

### C. Medical Causation Must Be Based on a "More-Probable-Than-Not" Basis.

"Witnesses who offer an opinion to prove medical causation must speak in terms of probability, not mere possibility." *Colley v. PeaceHealth*, 312 P.3d 989, 995 (2013).  HAL moves *in limine* to exclude any references or speculation with respect to medical causation that is not based on this standard.

To succeed on a claim of negligence under general maritime law (or Washington law as Plaintiff alleges the sole basis for jurisdiction is based on diversity), Plaintiff must show by a preponderance of the evidence that HAL owed and breached a duty of care, and HAL's breach was the proximate cause of the injuries. *See Samuels*, 656 F.3d at 953.  HAL does not have the

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 11

**NIELSEN ✛ SHIELDS**
*PLLC*
*1000 Second Avenue, Suite 1950*
*Seattle, Washington 98104*
*206.728.1300*

burden to prove causation or lack of causation. *See Colley v. PeaceHealth*, 312 P.3d at 995 ("Nor is a defendant obligated to agree or assume that the plaintiff is injured.").

Under general principles of tort law,[5] plaintiff may only proffer evidence as to the causation of his injury based on a degree of medical certainty; on a "more-probable-than-not" basis. As summarized by a California appellate court:

> The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case. That there is a distinction between a reasonable medical "probability" and a medical "possibility" needs little discussion. There can be many possible "causes," indeed, an infinite number of circumstances which can produce an injury or disease. A possible cause only becomes "probable" when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury.

*Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d 396, 402-403 (Cal. App. 2d Dist. 1985). In addition to testimony, medical records, if they speak to medical causation, must likewise reflect that they meet this standard, as well as not contain inadmissible hearsay and be properly authenticated. *See Young v. Liddington*, 309 P.2d 761, 765 (Wash. 1957) ("We hold that a medical opinion as to causation, which is not the result of an observed act, condition or event, cannot be established by a business record"); *Erickson v. Robert F. Kerr, M.D., P.S.*, 851 P.2d 703, 711 (Wash. App. 1993), *aff'd in part, rev'd in part*, 883 P.2d 313 (Wash. 1994) ("Doctors' records are normally admissible in order to show events, conditions, or acts . . . records are not admissible if they express opinion, conjecture, or speculation."). For these reasons, Plaintiff proposed an agreement fact in a draft of the parties' pretrial statement that

---

[5] "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Dominique v. Holland Am. Line, N.V.*, 2013 U.S. Dist. LEXIS 139888 at *5-6 (W.D. Wash. Sept. 27, 2013) (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012)).

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 12

NIELSEN ✢ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

"Ship's physician, Dr. Palma Wideman, diagnosed Mr. Hausman with **possible** post-concussive syndrome on November 30, 2011," is neither proper as it fails to meet the required standard nor is otherwise admissible from the ship's medical records as it is not an observation of a condition but merely speculation as to possible symptoms.

Likewise, Plaintiff, during the course of the litigation, also submitted various reports to try to prove he suffered a brain injury, but failed, upon HAL's objections, to show these were properly authenticated and based on a "more-probable-than-not" basis. *See* Dkt. #88-3 at 15 ("*If* he did sustain a concussion, it would be considered a mild traumatic brain injury at worst, not a moderate or severe brain injury, and he should have fully recovered from any brain-based cognitive symptoms within three months post head injury.") (emphasis added); *see* Dkt. #88-3 at 18 ("Q: What is your opinion as to whether or not he suffered a concussion? A. It's *possible.*") (emphasis added). While Plaintiff argues that all MDs and non-MDs, such as neuropsychologists and a chiropractor he retained, can opine that Mr. Hausman *could* have sustained a brain injury (Dkt. #87 at 7:12-14), those references should be excluded from trial unless the witness has previously testified or stated in a report that Plaintiff sustained a particular injury on a "more-probable-than-not" basis. This also will avoid the substantial danger of unfair prejudice and confusion of the issues. *See* Fed. R. Evid. 403.

**D. Plaintiff's Retained Rebuttal Witness Freeman Should Be Excluded.**

Under Federal Rules of Evidence, Rule 403, the probative value of testimony must not be substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury. While Plaintiff boasts about retaining chiropractor Michael Freeman, as

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 13

*NIELSEN ✣ SHIELDS*
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

"one of the nation's leading experts in the proper use of statistical data in forensic science,"[6] Dkt. #87 at 3:18-20, Plaintiff purposefully obscured from the record that Freeman's views have been rejected by courts at least half a dozen times (*see, e.g.*, Dkt. # 96-2; Dkt. # 96-3 at 114:23-24; Dkt. # 96-5 at 37:11-17), including another head injury case where he tried to rebut the methodology by Dr. Irving Scher, Ph.D., P.E. as an expert on biomechanical engineering.[7] Dkt. # 96-1 at 176:24-178:12.  In this case, Plaintiff has retained Freeman in an attempt to conduct the same attack (which has been rejected by other courts), especially with respect to Dr. Scher's expert opinion that Plaintiff probably could not have suffered a traumatic brain injury based on the forces of the impact.

Before withdrawing his motion challenging Dr. Scher, Plaintiff also failed to mention that Western State Chiropractic College reprimanded Freeman for willfully and knowingly providing false information, namely, creating a fictitious report. Dkt. #96-3 at 10:11-18, 11:13-16; 32:17-22.  Although he morphs into various areas of claimed expertise depending on the case and the fee paid for his services, including claiming in this and the other case to be an expert in biomechanical engineering (even though he possess no engineering background), Freeman's views are not supported and regularly are rejected.

Moreover, HAL requested the Court order Plaintiff to produce Freeman's educational transcripts as subpoenaed and Plaintiff is required to disclose. *See* Wright Decl. ¶¶ 8-14, Dkt.

---

[6] As one court pointed out in rejecting Freeman's opinion and his claim that "forensic medicine" was a distinct field in which he was an expert, "In court, everything is 'forensic' so that adjective can hardly be expected to make something inadmissible to something admissible." Order Granting Mot. to Exclude Freeman, Case No. 12-CA-011898 (Jud. Cir. Hillsborough County, Aug. 25, 2014), Ex. 2 at 7, n. 8, Dkt. #96-2.

[7] As noted in the Reference Manual on Scientific Evidence, "the field of biomechanics (alternatively called biomechanical engineering) involves the application of mechanical principles to biological systems, and is well suited to answering questions pertaining to injury mechanics." *Id.* at 900-902. See http://www.fjc.gov/public/pdf.nsf/lookup/SciMan3D01.pdf/$file/SciMan3D01.pdf.

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 14

NIELSEN✠SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

#96; *see also* Dkt. #96-2 at 205:15-22 (ordering Freeman to produce educational transcripts as to the basis of his biomechanical engineering views and credibility). When subpoenaed to produce it in this case, Freeman continues to refuse to do so even though he had access to his own transcript when he was ordered to produce it in another case.[8] Wright Decl. ¶¶ 7-8, Dkt. #96. At his deposition, Freeman joked that he "looked under the couch to see if they had slipped there," a joke in response to a federal subpoena. Dkt. #96-5, 6:8-9, 12-14. The parties have met and conferred; however, Plaintiff has not produced the transcripts despite FRCP 26(1)(2)(B). *Id.* Given credibility issues and the claim to have a biomechanical engineering background, HAL's repeated requests and Freeman's refusal to produce his transcripts as to verifying his biomechanical courses, HAL requests the Court exclude Freeman from testifying so as to prevent misleading the jury and creating confusion about the issues in the case, especially biomechanical principles.

E.   **Excessive Number of Character or Damage Witnesses Should Not Be Permitted.**

Even if relevant, Rule 403 also permits exclusion of testimony if its probative value is substantially outweighed by a danger of unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. In his Seventh Supplemental Disclosure, Plaintiff has listed over 80 lay witnesses who have knowledge with respect to aspects of Mr. Hausman's damages. Many of these appear to be friends and family expected to testify as to Plaintiff's character. *But see* F.R.E. 608(b). Upon meeting and conferring, the only witnesses Plaintiff has disclosed so far that are testifying are himself and his wife, reserving identification of additional character/damages witnesses for further discussion and preparation of the parties'

---

[8] After denying under oath a history of lying and claiming that he had biomechanical training from the same chiropractor school from which he was suspended (Dkt. # 96-1 at 70:15-25, 73:17-24), the *Arms* court ordered Freeman to produce his educational transcripts. *Id.* at 205:15-22.

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 15

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

joint pretrial statement. It should be noted that Plaintiff has also disclosed and plans to call a number of expert witnesses to testify about his medical condition and related damages. Given the number of possible witnesses and Plaintiff's disclosure as to their possible testimony, HAL requests the Court, pursuant to FRE 403, limit the number of such lay witnesses who have no knowledge of the incident (which was videotaped), especially as such cumulative testimony would be introduced for the improper purposes of trying to solicit an emotional response by the jury from Plaintiff's family and friends with an obvious bias toward his interests.

## IV. CONCLUSION

For the foregoing reasons, HAL respectfully requests the Court grant HAL's motion *in limine* on all the above-referenced issues.

DATED this 28th day of May, 2015.

s/Louis Shields
LOUIS A. SHIELDS, WSBA # 25740
NIELSEN SHIELDS, PLLC
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
Telephone:   206-728-1300
Facsimile:   206-728-1302
Email:       las@nielsenshields.com
Attorneys for Defendants

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 16

NIELSEN SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Herbert Farber, Esq.
The Farber Law Group
PO Box 69
Bellevue, WA  98009-0069

Kenneth R. Friedman, Esq.
William S. Cummings, Esq.
Friedman Rubin
1126 Highland Ave
Bremerton, WA  98337

Richard H. Friedman, Esq.
David R. Roosa, Esq.
Friedman Rubin
51 University Street, Suite 201
Seattle, WA 98101

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Seattle, Washington.

*Sheila Baskins*
Legal Assistant
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
Telephone:  206-728-1300
Facsimile:  206-728-1302
smb@nielsenshields.com

DEFENDANTS' MOTION *IN LIMINE*
No. 2:13-cv-00937-BJR – Page 17

NIELSEN · SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300