Honorable Barbara J. Rothstein

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| JAMES R. HAUSMAN,<br><br>    Plaintiff,<br><br>v.<br><br>HOLLAND AMERICA LINE-U.S.A., a Washington corporation; HOLLAND AMERICA LINE, INC., a Washington corporation; HOLLAND AMERICA LINE N.V., a Curacao corporation; and HAL ANTILLEN N.V., a Curacao corporation.<br><br>    Defendants. | Case No. 2:13-cv-00937-BJR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE***<br><br>**NOTE ON MOTION CALENDAR:**<br>**June 12, 2015** |

Plaintiff James Hausman, through counsel, responds to the motions *in limine* filed by defendants Holland America Line-U.S.A., Inc., Holland America Line, Inc., Holland America Line N.V., and HAL Antillen N.V. (collectively, "HAL"). HAL's motions regarding other door incidents, HAL's control over the door sensors, the testimony of plaintiff's expert Dr. Michael Freeman, and plaintiff's character and damage witnesses should be denied. HAL's motion with regard to the standard for medical testimony may be granted in part, although it is unnecessary.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.*, Case No. 2:13-cv-00937-BJR
Page 1 of 16

**FRIEDMAN | RUBIN®**
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300

Initially, HAL's statement of facts is misleading and incomplete. The video of this incident shows that the door closed on Mr. Hausman while he was approaching it at a proper speed and in a proper manner, while looking through the open doorway, as an average person would. Although there is no reason an automatic door should ever close on a pedestrian crossing through it, this one did. Defendants' own expert confirms that the sensors were improperly adjusted.

HAL had exclusive control over these doors for at least eleven months prior to Mr. Hausman's injury. It inspected them regularly during that period, confirming that the settings were satisfactory to it, even if dangerous to its passengers. Passengers throughout the HAL fleet were regularly injured by closing automatic doors, but HAL dismissed these incidents as the passengers' fault, undertook no significant investigation, and never alerted the crews on any of its ships to perform proper safety inspections or adjust sensors. As HAL itself later proved, it would have been easy to do so.

### A. Other Automatic Door Incidents Should Have Alerted HAL of the Danger In Time to Present Mr. Hausman's Injuries.

HAL produced in this case incident reports reflecting more than twenty injury-causing incidents involving its automatic doors in less than three years prior to the door striking Mr. Hausman. *See* Exhibit 1 (prior incident reports). HAL also produced a spreadsheet derived from its own database showing additional injury-causing incidents relating to doors. In total, there are fifty-five (55) automatic door related injury reports recorded by HAL. These are reflected on Exhibit 2, a Evidence Rule 1006 summary plaintiff has prepared of the information provided by HAL. There may have been others incidents, as HAL admits to purging items from its database if they did result in a claim or lawsuit. *See* Exhibit 3 (August 27, 2014 letter from Asia Wright), at 2.

In another case also involving an automatic door injury aboard one of HAL's ships, this District held that automatic sliding doors are not unique to maritime travel and that, therefore, the plaintiff needed to establish that HAL had actual or constructive notice of the condition that created the danger. *See Galentine v. Holland America Line-Westours, Inc.*,

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.*, Case No. 2:13-cv-00937-BJR
Page 2 of 16

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300

333 F. Supp. 2d 991, 996 (W.D. Wa. 2004). HAL now seeks to exclude these records of the notice it received of the unsafe condition of its automatic doors, but the evidence is extremely relevant, not unfairly prejudicial, and not character evidence.

### 1. HAL's Knowledge of Other Automatic Door Incidents is Relevant.

HAL argues that Mr. Hausman must establish that it had actual or constructive knowledge of the risk-creating condition. HAL MIL at 4:17-19. Its current claim that all of the prior automatic door incidents it experienced and ignored before the door struck Mr. Hausman are irrelevant is irreconcilable with that position. If Mr. Hausman must prove that HAL had notice, he must be allowed to show the incidents which provided that notice, or would have provided that notice if HAL had acted reasonably.

This is especially true here because HAL itself has acknowledged that the automatic doors on its ships are sufficiently similar that notice of a problem with one is sufficient to raise concerns about the rest. Several months after Mr. Hausman was hurt, HAL's risk management department finally decided to alert its technical staff to the injury. This quickly led to a determination that the sensors on the door were set too low. This in turn led to emails to multiple ships directing them to inspect their doors and adjust their sensors. *See* Exhibits 4 and 5 (sensor emails).

Contrary to HAL's argument, it does not matter that the other incidents occurred on different ships or different decks; HAL did not need to know the manufacturer of the door, manufacturer of any sensor, identity of installer or any other particular fact about a particular door to recognize the importance of making changes to all doors.[1] All that is required to show notice is "substantial similarity" between the prior incidents and the current one. *White v. Ford Motor Co.*, 312 F.3d 998, 1009 (9th Cir. 2002), *opinion amended on denial of reh'g*, 335 F.3d 833 (9th Cir. 2003). "Minor or immaterial dissimilarity does not prevent

---

[1] HAL relies heavily on *Fritsch v. Princess Cruise Lines, Ltd.*, 2010 AMC 1655 (Cal. App. 2010), in support of its other-ships-are-irrelevant argument. *Fritsch* is an unpublished decision from the California Court of Appeals. As noted in the decision, the court designated it unpublishable and included a statement prohibiting courts and parties from citing or relying upon it. *See* Cal. Rules of Court 977.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.*, Case No. 2:13-cv-00937-BJR
Page 3 of 16

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300

admissibility." *Id.* Here, HAL itself has established that its other doors are substantially similar, regardless of the specific manufacturer or type of sensor. After the door hit Mr. Hausman, HAL's director of technical operations ordered all automatic doors to be adjusted. Exhibit 4. The fact that some doors had different sensors or were on different ships or decks did not prevent it from requiring this adjustment. Exhibit 5, at 8. In short, HAL concluded that the Hausman injury was sufficient notice of danger from sliding doors on other ships to require that the doors on those other ships be inspected and adjusted. A jury might well conclude that the 55 other incidents or even the 20 plus just in the few years before Mr. Hausman's injury, provided sufficient notice of danger to require that the doors on the *ms AMSTERDAM* be inspected and adjusted **before** Mr. Hausman's injury. Of course, HAL may still argue to the jury that the other incidents did not give it notice because of whatever differences it wishes to identify; it simply is unlikely to be a very convincing argument.

Recognizing that these incidents are substantially similar is also consistent with HAL's own practice, as evidenced by the incident reports themselves. *See* Exhibit 1. While HAL now claims that a prior incident involving another automatic door is not notice to it unless the other door was identical in all ways including manufacturer of door, manufacturer of all sensors, and identity of installer, it did not consider any of this information of sufficient interest to record on its accident reports. Obviously, unless HAL was deliberately attempting to suppress relevant information within its exclusive control, it would have recorded these details about every door involved in every incident if it believed they were important.[2] It did not because, as Exhibits 4 and 5 show, it is appropriate to draw a general lesson from one automatic door to apply to all others.

---

[2] *See* Exhibit 6 (MR-100), at 128-34 (emphasizing importance of thorough investigation).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al., Case No. 2:13-cv-00937-BJR*
Page 4 of 16

**FRIEDMAN | RUBIN**®
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300

### 2. HAL's Knowledge of Other Automatic Door Incidents May be Devastating to Its Attempt to Claim No Notice, But It Is Not Unfairly Prejudicial.

HAL's knowledge of these other incidents is also not "unfairly prejudicial" within the meaning of Evidence Rule 403. These reports present very little risk of being misunderstood. The jury will be instructed that HAL must have had notice of the defective condition that injured Mr. Hausman, before it can find HAL negligent. The jury will therefore understand that these reports are being presented as evidence of such notice. HAL is free to argue that they did not provide such notice because of the differences it identifies. The fact that it will likely not succeed in that attempt is a function of the weakness of the argument and its own actions in recognizing that an injury caused by one door is notice of the injury-causing potential of other automatic doors, not any unfair prejudice. There is nothing unfairly prejudicial about showing that HAL knew of a common dangerous condition on its ships before the injury to Mr. Hausman. Fed.R.Evid. 403.

### 3. HAL's Knowledge of Other Automatic Door Incidents is Not Improper Character Evidence

HAL also claims that FRE 404(b)(1) precludes evidence of other incidents to prove HAL acted in accordance with its "character"[3] of allowing doors to hit passengers. This is not the purpose of this evidence. Mr. Hausman offers evidence of other similar events to show that HAL had actual and constructive notice of the dangerous condition, as required by *Galentine*, 333 F. Supp. 2d at 996. Under HAL's warped reading of Rule 404(b), a plaintiff could never show notice because all evidence of notice would also constitute a prior bad act. The law requires notice. Mr. Hausman must be allowed to meet that burden.

The prior incidents documented by HAL and shown in Exhibits 1 and 2 also help show HAL's extreme indifference to the risks its automatic doors presented to its passengers. This is a proper purpose for this evidence. Because these prior incidents are not dissimilar and are being used here not to show a pattern or practice, but to show notice and HAL's recklessness

---

[3] FRE 404(b)(1) refers to evidence of a "person's character" and does not apply to HAL, which is not a person.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.*, Case No. 2:13-cv-00937-BJR
Page 5 of 16

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300

in failing to respond to that notice, *State Farm v. Campbell*, 538 U.S. 408, 422 (2003), has no application.[4]

For all of these reasons, HAL's motion to prevent Mr. Hausman from presenting evidence of prior door incidents to show HAL's awareness of the danger to passengers should be denied.

### B. Mr. Hausman is Entitled to Present Evidence that HAL Had Exclusive Control Over These Doors and the Opportunity to Inspect and Determine How They Should Be Adjusted.

#### 1. Mr. Hausman Can Show That HAL Controlled the Doors and All Adjustable Controls.

HAL misunderstands Mr. Hausman's contentions with regard to HAL's control over the automatic doors that struck and injured him. Mr. Hausman does not intend to speculate that HAL made any particular adjustment to these doors. He will, however, present evidence that HAL had the ability to direct its subcontractor how to install the door and set sensor levels and other adjustable controls and that HAL had exclusive control over these doors for at least eleven months before the door struck Mr. Hausman. During this time, HAL inspected the doors on a regular basis.[5] It therefore had more than sufficient opportunity to set all sensors and controls so that the doors did not present a risk of harm to its passengers. In light of the numerous accidents involving automatic doors throughout its fleet, it should have done so. HAL is free to explain to the jury what it actually did or did not do to the doors and why. Mr. Hausman's evidence will show that it could have made the doors safe, but did not do so.

---

[4] The fact that Mr. Hausman is seeking punitive damages does not somehow reduce the evidence that is admissible in this case. Mr. Hausman is still entitled to admit evidence to show that HAL had notice of the dangerous condition presented by its automatic doors. Evidence of harm to others is also admissible to show the reprehensibility of HAL's actions. *See Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1016 (9th Cir. 2007), citing *Philip Morris USA v. Williams*, 549 U.S. 346, 127 S.Ct. 1057 (2007)

[5] Because HAL purports to have inspected the doors, the jury can reasonably infer that its current claim that it did not have any previous knowledge about how the sensors were set is inaccurate.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.*, Case No. 2:13-cv-00937-BJR
Page 6 of 16

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300

HAL cannot escape responsibility for the operation of systems on its own ship by ignoring them.

HAL argues that if it was unsafe to set the sensors on low, the sensors must have been defective, somehow freeing it from liability. This makes no sense. The manufacturer provides multiple settings on multiple components of the door because they may be used in many different circumstances and combinations. A low setting may very well be appropriate in combination with a long delay before closing, with certain user groups, or where there is truly no alternative and warnings are clearly presented of the risk. The manufacturer has no control over the location of doors with its sensors or a customer like HAL's decision to place no warnings and set other controls in a manner that exacerbates the risk. The manufacturer provided HAL with a number of tools to adjust this door in a manner that was safe for users. It cannot be blamed because HAL did not use those tools appropriately.

### 2. HAL's Internal Emails regarding Fleet-Wide Automatic Door Adjustments Are Admissible.

HAL also argues in a footnote that evidence of changes to its automatic doors that HAL ordered after the door struck Mr. Hausman is barred by Evidence Rule 407, the subsequent remedial measures rule. The evidence HAL seeks to exclude is the only evidence directly confirming the setting of the sensors at the time of the incident, as HAL did not otherwise record this information. This evidence also helps show that the automatic doors on HAL's ships are sufficiently similar that notice of the dangerous propensity of one is notice of the dangerous propensity of the rest. The evidence also shows that HAL had control over the doors and the feasibility of making fleet-wide changes to their operation. Rule 407 does not bar this evidence.

Federal Rule of Evidence 407 only precludes evidence of subsequent remedial measures to prove "negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." The Rule specifically provides that the Court "may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures." FRE 407. "The list of permissible uses

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.*, Case No. 2:13-cv-00937-BJR
Page 7 of 16

**FRIEDMAN | RUBIN**®
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300

in Rule 407 is illustrative, not exclusive; evidence of subsequent repairs may be admitted for any purpose that does not require an inference to the negligence or culpable conduct of the repairer." Kenneth W. Graham, Jr., FED. PRAC. & PROC. EVID. § 5290 (footnotes omitted).

Here, the issues in dispute include how the automatic door controls were set at the time of the incident,[6] the similarity of other automatic doors on other ships to the doors that struck Mr. Hausman,[7] HAL's power to control the door settings,[8] and the feasibility of those changes. HAL's internal emails directly address those questions, and use of this evidence to establish these points is permitted by FRE 407.

The internal emails are not being used to show that the HAL was negligent. That is shown by the video of the door closing on Mr. Hausman as he properly moved through the opening and by the evidence of all of the prior incidents that should have alerted a reasonable ship operator to adjust its doors. Instead, the emails are being used, for example, to show HAL's control. Despite HAL's current attempts to blame its contractor, the emails show that HAL did not believe its subcontractor was at fault or responsible for implementing any change. The emails do not blame the subcontractor or ask it to make any change. Instead, HAL employees identified the fix and implemented it, showing that it considered the doors to be under its control. The emails also help show that determining the setting only required looking at the sensors, which demonstrates, contrary to HAL's argument, that it had control over the operation of the doors prior to the date the door struck Mr. Hausman.

---

[6] The emails confirm that the sensors were set on low. Exhibit 4, at 8. HAL did not otherwise record this information. "One permissible use of subsequent remedial measures that was recognized at common law and that will continue to apply under Rule 407, though it is not listed in that rule, is as proof of prior conditions. … [I]n some cases proof of the subsequent repair will show what the condition of the article was prior to the accident." Kenneth W. Graham, Jr., FED. PRAC. & PROC. EVID. § 5290 (citations omitted).

[7] Despite its own actions, HAL continues to argue—in the same memorandum in which it claims this evidence should be excluded—that "all doors and sensors on all ships … are unique to each." HAL MIL at 5:16-19.

[8] In this very MIL, HAL argues that it had no previous knowledge of how the sensors and other controls were set, despite regularly inspecting the doors. HAL MIL, at 10:2-6.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al., Case No. 2:13-cv-00937-BJR*
Page 8 of 16

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300

The emails also help disprove HAL's argument that adjusting the sensors was not feasible, as they show both that this was not an actual concern of its engineers, and that a change was implemented without any problems.[9]

Rule 407 also does not prohibit use of these emails to show that HAL considered all of its automatic doors sufficiently similar that an incident regarding one would justify correction to them all. HAL is actively disputing plaintiff's theory that any one of the two dozen injury producing accidents in the prior three years was sufficient to give HAL notice to review and adjust the sensors on all of its ships. Eventually, in March 2012, HAL finally concluded, "We cannot leave it with this. The incident was of that nature that we need to correct the situation." Exhibit 5, at 8. The "situation" it corrected was the state of the doors on all ships.

For these reasons, HAL's motion to exclude evidence regarding its control over these doors should be denied.

### C. Medical Opinion Evidence Must Be Presented at Trial on a More Probable Than Not Basis, But HAL Misunderstands What That Means for This Case.

Mr. Hausman partially opposes this motion. He agrees that expert medical opinions must generally be presented on a "more-probable-than-not" basis. But HAL's characterization of the evidence that will be presented at trial is incorrect as briefed.

For example, HAL implies that its ship's doctor, Dr. Palma Wideman, said that it was only "possible" that Mr. Hausman suffered from post-concussive syndrome. In fact, Dr. Wideman stated that Mr. Hausman suffers from "*probable*" post-concussion syndrome. Exhibit 8 at 6 (Ship's medical records). Rather than cite to the ship's records or to Dr. Wideman's deposition, HAL quoted plaintiff's draft proposed stipulated facts, which

---

[9] HAL's expert suggested that adjusting the door sensors to be more sensitive would have unintended consequences, such as detecting and opening for people not using the door. *See* Exhibit 7 (Emond depo.), at 95:18-24. The internal emails show that HAL easily changed the sensor settings to medium without difficulty and did not even express concern about interference.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.*, Case No. 2:13-cv-00937-BJR
Page 9 of 16

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300

mistakenly said "possible" instead of "probable"—the word Dr. Wideman actually used.[10] The records themselves plainly state that Dr. Wideman's diagnosis was "probable post-concussive syndrome." Dr. Wideman confirmed this in her deposition. Exhibit 10 (Wideman depo. at 13:22-14:3 and 19:19-21). This diagnosis and the corresponding records are admissible.[11]

Additionally, Holland America suggests in its brief that Plaintiff's experts have not testified to a reasonable degree of medical certainty that Mr. Hausman sustained injuries as a result of the sliding door striking his head. [Dkt. #107 at p. 13]. That is also not true. *See for example:*

- Exhibit 11 (Glisky Report dated 9/17/14 at 4; "*In my opinion, on a **more probable than not basis**, the primary cause of Mr. Hausman's current cognitive and emotional symptoms is the **mild traumatic brain injury** that occurred as a result of being hit by the automatic door on 11/26/11*);

- Exhibit 12 (Ginsberg Report dated 9/11/14 at 4; "*…**on a more probable than not basis**[,] [a]s a result of the injury of November 26, 2011, aboard the MS Amsterdam, Mr. James Hausman sustained the following injuries: (a) **acute concussion**…*);

- Exhibit 13 (Fortin Dep. at 18:17-22 "*Q: And did you formally diagnose concussion? A: **And postconcussive syndrome, yes**;*" and 35:11-36:5 "***I can state to a reasonable degree of medical certainty**, given the incident of head injury documented on the video that I saw resulting in Mr. Hausman being struck in the head... that in my opinion is sufficient to result in his clinical symptoms that persist to this day, which include... **postconcussive syndrome**.*");

- Exhibit 14 (Langman Dep. at 36:18-23; "*Q: If Mr. Hausman has an issue with the **unilateral vestibular weakness**, that being in the left ear, **do you find on a more***

---

[10] Plaintiff's counsel later wrote HAL's counsel to correct that error. Exhibit 9 (E-mail from David Roosa to HAL's counsel dated May 28, 2015).

[11] Because Dr. Wideman was ship's doctor, her diagnosis is also an admission pursuant to F.R.E. 801(d)(2)(D).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.*, Case No. 2:13-cv-00937-BJR
Page 10 of 16

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300

*probable than not basis to a reasonable degree of medical certainly that that condition could in any way be related to the hit, the subject casualty? A: Yes.*").

More importantly, at trial, all of Plaintiff's experts will state their causation opinions to a reasonable degree of medical certainty.

Holland America's motion is somewhat confusing because it cites and quotes a neuropsychologist Mr. Hausman saw outside of this litigation and its own neuropsychologist, Dr. Breen, for the proposition that plaintiff will be relying on evidence not stated on a more-likely-than-not basis. HAL MIL, at 13:5-17. These are both witnesses who will testify at trial only if called by HAL. Mr. Hausman is, of course, permitted to cross examine these witnesses on the limits of their opinions. Thus, for example, Dr. Breen admitted at his deposition that it was possible that Mr. Hausman suffered a concussion when the door struck his head. Exhibit 15 (Breen depo), at 27:7-16. This is a proper question and topic for cross examination, even if not stated "to a reasonable degree of medical certainty." The jury may use this information to weigh the credibility and veracity of the witness' testimony.

In sum, Mr. Hausman agrees generally that both sides must offer medical causation opinions that are stated on a more-probable-than not basis. However, the specific examples given by HAL in its motion are largely mischaracterized. The motion should be denied as unnecessary.

**D.   Defendants Offer No Valid Reason for Excluding Plaintiff's Expert Dr. Michael Freeman**

It is not clear from HAL's motion *in limine* why it contends Dr. Freeman should be excluded. It alludes to several disagreements regarding Dr. Freeman, but never articulates why any of them, individually or collectively, would justify excluding him.

**1.   HAL's Motion is Late**

As an initial matter, HAL's motion to exclude Dr. Freeman is untimely and must be denied on that basis. This Court's Procedures for All Cases provides, "Motions relating to limiting or excluding expert testimony shall be filed no later than the date set for the filing of

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.*, Case No. 2:13-cv-00937-BJR
Page 11 of 16

**FRIEDMAN | RUBIN**®
1126 Highland Avenue
Bremerton, Washington  98337
(360) 782-4300

dispositive motions." Dkt. #52, at 5. That deadline was March 31, 2015, almost two months before HAL filed its motions *in limine*.

### 2. Whether Dr. Freeman was Allowed to Testify in Other Cases Does Not Control Whether He Can Testify Here.

HAL asserts that Dr. Freeman over his long career has not been allowed to testify "at least half a dozen times." As Dr. Freeman's list of cases over just the last four years demonstrates, that is an extremely miniscule percentage. Exhibit 16 (Freeman Rule 26 Disclosure). More importantly, HAL makes no effort to explain why Dr. Freeman's exclusion in those other cases would somehow justify excluding him in this case.

### 3. Dr. Freeman's School Discipline from Twenty-Nine Years Ago Does Not Justify Excluding His Testimony.

HAL mentions that Dr. Freeman was reprimanded when he was in chiropractic college. To the extent this is intended to support its motion to disqualify him, it makes no sense. This incident happened in 1986. Dr. Freeman returned to school and graduated at the top of his class. *See* Exhibit 18 (Freeman depo.), at 10:12-23, 33:17-19. Mr. Hausman has filed his own motion to exclude any reference to this incident, based on is age and irrelevance. Dr. Freeman's school discipline from almost thirty years ago certainly does not justify barring him from providing testimony now.

### 4. Dr. Freeman Did Not Have to Produce Material He Did Not Have in Response to a Subpoena.

HAL also seems to argue that Dr. Freeman should be excluded in this case because he did not produce his school transcripts in response to HAL's subpoena.[12] But HAL offers no support for the surprising position that in response to a subpoena, a witness must produce documents he does not have. It is undisputed that Dr. Freeman did not possess any of his transcripts at the time he was served with the subpoena. Nothing in Rule 45 requires a third party to litigation to obtain documents he does not have.

---

[12] This was the only reason for excluding Dr. Freeman's testimony listed in HAL's list of proposed MIL topics, and thus the only basis on which it initiated the meet and confer process.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.*, Case No. 2:13-cv-00937-BJR
Page 12 of 16

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300

### 5. Excluding Dr. Freeman is Not an Appropriate Remedy for His Inability to Produce His Transcripts at His Deposition.

Even if Rule 45 could be interpreted to require a witness to obtain transcripts from thirty years or more or so at the whim of the party serving the subpoena, there is no reason that Dr. Freeman would have understood that he had that obligation. If HAL believed that its subpoena was sufficient to compel Dr. Freeman to obtain copies of his transcripts, its proper course of action was to bring a motion to compel in the appropriate court. Although Dr. Freeman's deposition was four months ago, it has not done that. If it had, and if the issue was resolved in its favor, the most HAL would have been entitled to would have been Dr. Freeman's transcripts. Excluding Dr. Freeman's testimony bears no relationship to this dispute and is an improper sanction.

It is especially true that exclusion is an inappropriate remedy because ***Dr. Freeman actually produced the transcript HAL expressed most interest in***. HAL fails to mention that Dr. Freeman produced his transcript from Western State Chiropractic College.[13] *See* Exhibit 17 (March 18, 2015 supplemental disclosure producing transcript, which is confidential). It would be especially inappropriate to exclude Dr. Freeman for not producing his transcripts when he in fact did so. HAL's current attempt to recharacterize its interest in school transcripts as an effort to verify Dr. Freeman's biomechanical courses does not change this result. HAL's new characterization of its interest only confirms that its motion is an extremely untimely *Daubert* motion.

### E. Mr. Hausman Should Be Allowed to Present His Damage Case, Including Witnesses That Address Different Aspects of His Damages.

Mr. Hausman bears the burden of proving his cause of action, including damages. The jury will be asked to assess not just the physical injuries Mr. Hausman has sustained, but how those injuries have affected different aspects of his life. Presenting that part of his case requires testimony from multiple people. Like most of us, Mr. Hausman had more than one role in life. He was a business owner and manager, a husband, a father, a philanthropist, and a

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.*, Case No. 2:13-cv-00937-BJR
Page 13 of 16

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300

1  friend, to name just a few of his roles. How he performed each of those roles before and after
2  he was struck in the head is directly relevant to the damages he has sustained.

3    HAL seeks to prevent Mr. Hausman from showing his full damages by asking the
4  Court to arbitrarily limit the number of witnesses that may testify from among his family and
5  friends. HAL bases this motion on the argument that Mr. Hausman's lay witnesses' testimony
6  would be unduly cumulative or introduced "for the improper purpose of trying to solicit an
7  emotional response...." HAL MIL at 16:6. This is not true. Mr. Hausman expects to call no
8  more than ten (and perhaps as few as six) lay damages witnesses other than Mr. Hausman and
9  his wife Carol.[14] The direct examination of most of these witnesses will be approximately ten
10 to fifteen minutes each, although some may be shorter than others.  Each witness will address
11 his or her own relationship with Mr. Hausman, and what changes he or she has observed in
12 him since his brain injury. No witness will improperly attempt to solicit an emotional
13 response.

14   This evidence cannot be presented solely through Mr. Hausman and his wife. They are
15 subject to express or implied criticism that they are biased due to their interest in the result of
16 this litigation. Moreover, they are not the best witnesses on certain damage elements.
17 A person with a brain injury is not always able to perceive or describe how his life has been
18 altered. For example, Mr. Hausman's long-time friend Pat Newman is a better witness on
19 how the brain injury has affected their relationship than Mr. Hausman himself.

20   Each lay witness had a different relationship with Mr. Hausman, and saw him in
21 different contexts. Each will have different things to say about what Mr. Hausman has lost as
22 a result of the incident. The witnesses are important for Mr. Hausman to prove his case and

---

[13] HAL actually falsely states that "[Dr.] Freeman continues to refuse to [produce his transcripts]." HAL MIL, at 15:2-4.

[14] Mr. Hausman's counsel informed HAL's counsel of his likely damage witnesses (when the trial was set to begin in June) before HAL filed its current motion. HAL nevertheless chose to imply that Mr. Hausman intended to call 80 such witnesses. In effect, HAL is criticizing Mr. Hausman for fulfilling his obligation under Federal Civil Rule 26(a)(1)(A)(i) to disclose individuals likely to have discoverable information.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.,* Case No. 2:13-cv-00937-BJR
Page 14 of 16

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington  98337
(360) 782-4300

1  counter HAL's claims that he has not suffered significant losses. There may be some overlap,
2  but the Court is fully capable of shutting down a witness if in fact the testimony is repetitive
3  and not helpful to the jury.
4  HAL's motion to limit Mr. Hausman's witness in some unspecified way should be
5  denied.

### F. Conclusion

For the reasons set forth above with respect to each of HAL's motions *in limine*, these motions should be denied. For the most part, HAL seeks to limit proper testimony or evidence that is necessary or appropriate to prove Mr. Hausman's case. Mr. Hausman does agree that medical causation evidence is limited to that presented on a more-probable-than-not basis, but there is no need for an order expressing that principle.

DATED this 8th day of June 2015.

                /s/  William S. Cummings
Richard H. Friedman, WSBA # 30626
Kenneth R. Friedman, WSBA #17148
William S. Cummings, WSBA #40082
David P. Roosa, WSBA #45266
FRIEDMAN | RUBIN
1126 Highland Avenue
Bremerton, WA  98337
Tele:  (360) 782-4300 ~ Fax:  (360) 782-4358
E-Mail:  rfriedman@friedmanrubin.com
        kfriedman@friedmanrubin.com
        wcummings@friedmanrubin.com
        droosa@friedmanrubin.com

                /s/  Herbert Farber
Herbert Farber, WSBA # 7340
THE FARBER LAW GROUP
PO Box 69
Bellevue, WA 98009-0069
Tele:  (425) 455-9087 ~ Fax:  (425) 455-9017
E-Mail:  hgfarber@hgfarber.com

Counsel for Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al., Case No. 2:13-cv-00937-BJR*
Page 15 of 16

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington  98337
(360) 782-4300

# CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June 2015, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system, which will send notification of such filing to the following:

> Louis A. Shields, Esq.
> Asia N. Wright, Esq.
> Richard A. Nielsen, Esq.
> Nielsen Shields, PLLC
> 1000 Second Avenue, Suite 1950
> Seattle, WA 98104
> Tel: 206-728-1300
> las@nielsenshields.com
>
> Herbert G. Farber, Esq.
> The Farber Law Group
> 10655 NE 4th Street, Suite 312
> P.O Box 69
> Bellevue, WA 98009-0069
> hgfarber@hgfarber.com

I also certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

                                          /s/  Deborah A. Traver
                                        Deborah A Traver, Paralegal
                                        Friedman | Rubin

Z:\Bremerton Cases\Hausman vs. HAL\PLED\Ds MILs\DRAFTS\Opp to Ds MILs - 6-08-15 - SERVED.doc

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*
*Hausman v. Holland America Line-U.S.A., et al.*, Case No. 2:13-cv-00937-BJR
Page 16 of 16

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington 98337
(360) 782-4300