1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Honorable Barbara J. Rothstein

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

JAMES R. HAUSMAN,

        Plaintiff,

v.

HOLLAND AMERICA LINE-U.S.A., a Washington corporation; HOLLAND AMERICA LINE, INC., a Washington corporation; HOLLAND AMERICA LINE N.V., a Curacao corporation; and HAL ANTILLEN N.V., a Curacao corporation.

        Defendants.

Case No. 2:13-cv-00937-BJR

**PLAINTIFF'S RESPONSE TO DEFENDANTS' SUBMISSION RE EVIDENCE OF "OTHER INCIDENTS"**

For the second time,[1] and without citing authority, HAL argues to exclude the majority of Plaintiff's evidence of "other similar incidents" ("OSI's"). HAL complains that the Court's 3-page limitation on briefing does not allow "adequate discussion of this important issue." Dkt. #136 at 2. But HAL already has had one opportunity to brief this issue when it filed its motions *in limine*.

---

[1] *See* Dkt. #107 (Defs. Motions *in Limine*) and Dkt. #127 (Opinion and Order Denying in Part Defs. Motion re Other Doors).

PLAINTIFF'S RESPONSE TO DEFENDANTS' SUBMISSION RE EVIDENCE OF "OTHER INCIDENTS"
*Hausman v. Holland America Line-U.S.A., et al., Case No. 2:13-cv-00937-BJR*
Page 1 of 5

**FRIEDMAN** | **RUBIN**®
1126 Highland Avenue
Bremerton, Washington  98337
(360) 782-4300

These incidents are relevant and admissible, ***not*** because they all involve the exact same brand and model of door hitting a person in the exact same place on the head as Mr. Hausman, but because individually and collectively, these incidents should have put HAL on notice that its doors may not have been properly functioning and needed adjustment for the safety of passengers and crew. Stated differently, a jury could find that in response to one or more of these incidents, a reasonable cruise line would have investigated and discovered problems with the sensors on its automatic doors. Eventually, after 35 incidents, HAL did investigate and ordered that **all sensors** on **all automatic doors** on **all its ships** be adjusted.

Each of the incidents here involves essentially the same components: (1) automatic doors that; (2) struck a person because; (3) the door did not detect the person.

Holland America argues in various ways that the other incidents should be excluded because they are not "identical" in every way to Mr. Hausman's incident. But that is not the standard. The standard for admissibility is whether that the OSI's were "substantially similar" such that they would have put HAL on notice that doors were not properly detecting passengers. *E.g. Gonzalez v. Continental Tire North America, Inc.*, 2005 WL 5978045 at *3 (D. Ariz. 2005) ("Evidence of earlier accidents that occurred under reasonably similar but not necessarily identical circumstances is admissible.") The Court has already rejected this argument by HAL:

> The Court rejects Defendants' contention that every automatic sliding door across its fleet is unique. It is clear from Ramaeker's email that many of the doors will meet the "substantially similar" standard. However, at the Pretrial Conference the Court will consider excluding some of the accident/injury reports if Defendants can prove that the ***doors*** involved in those incidents were in fact of a ***totally different type*** than the door involved in Plaintiff's incident. Moreover, the Court will exclude any accident/injury reports that occurred prior to 2009.

Dkt. #127 at n.2, p.5 (emphasis added). Holland America has come forward with no evidence that the doors from the OSI's are "of a totally different type." Even the doors that (allegedly) involve pressing a button are automatic doors with sensors or "safety beams" that are supposed to detect people, and remain open to prevent injury. These doors too were presumably adjusted in response to Ramaeker's email. HAL has had possession and control

PLAINTIFF'S RESPONSE TO DEFENDANTS' SUBMISSION RE
EVIDENCE OF "OTHER INCIDENTS"
*Hausman v. Holland America Line-U.S.A., et al., Case No. 2:13-cv-00937-BJR*
Page 2 of 5

**FRIEDMAN** | **RUBIN**®
1126 Highland Avenue
Bremerton, Washington  98337
(360) 782-4300

1  of all documents that would describe these OSI's and the subject doors. To the extent that

2  information is missing, HAL should not receive the benefit of the doubt.

3        Holland America appears to argue that several OSI's should be excluded because,

4  according to HAL, the passenger was at fault.[2] Indeed, HAL also blamed Mr. Hausman for

5  his injury, both in the safety meeting minutes from December, 2011[3], and during this

6  litigation. This is no reason to exclude the evidence. To the contrary: automatic doors should

7  be configured so as to never hit a person walking through the doorway – even a person who is

8  "not paying attention" or "moving slowly." That is the very purpose of the sensors and the

9  timers. HAL's repeated statements that the doors were functioning properly and that the

10 passengers were at fault is evidence that HAL had notice that its doors were causing injuries,

11 but refused to acknowledge it or fix the problem. HAL can argue to the jury that the

12 passengers were at-fault for these OSI's, but this goes to the weight of the evidence only, not

13 its admissibility. It is the features of the door – not the actions of the injured people – that are

14 at issue when considering "substantial similarity." *Jackson v. Firestone Tire & Rubber Co.*,

15 788 F.2d 1070, 1083 (5th Cir. 1986) (Reversing trial court's exclusion of OSI evidence and

16 remanding for new trial, holding that other incidents involving the defect at issue were

17 substantially similar: "Any differences in the circumstances surrounding these occurrences go

18 merely to the weight to be given the evidence.")[4]

19       Attached hereto as Exhibit A is a summary of the disputed OSI's, along with HAL's

20 objections and Plaintiff's responses thereto.

21 //

22 //

23 //

24

25

26 [2] For example, HAL blames the injured party for No. 8, No. 10, 13, 14, 15, 17, and 22.

  [3] *See* Exhibit P-39 at p.3, where HAL reports "Passenger was also observed not paying attention to the closing door…"

27 [4] Indeed, if the incidents are truly dissimilar, HAL can simply point that out to the jury and make it look as though

28 Plaintiff is over-reaching. HAL has pointed to no prejudice it will suffer by introduction of a dissimilar incident. In the end, it is for the jury to decide how much weight to give a prior incident.

PLAINTIFF'S RESPONSE TO DEFENDANTS' SUBMISSION RE
EVIDENCE OF "OTHER INCIDENTS"
*Hausman v. Holland America Line-U.S.A., et al., Case No. 2:13-cv-00937-BJR*
Page 3 of 5

FRIEDMAN | RUBIN®
1126 Highland Avenue
Bremerton, Washington  98337
(360) 782-4300

1

DATED this 15th day of September 2015.

2

3

_____/s/  Richard H. Friedman_____

Richard H. Friedman, WSBA #30626

4

Kenneth R. Friedman, WSBA #17148

William S. Cummings, WSBA #40082

5

David P. Roosa, WSBA #45266

6

Roger S. Davidheiser, WSBA #18638

FRIEDMAN | RUBIN

7

1126 Highland Avenue

8

Bremerton, WA  98337

Telephone:  (360) 782-4300

9

Facsimile:  (360) 782-4358

10

E-Mail:  rfriedman@friedmanrubin.com

kfriedman@friedmanrubin.com

11

wcummings@friedmanrubin.com

12

droosa@friedmanrubin.com

rdavidheiser@friedmanrubin.com

13

14

15

_____/s/  Herbert Farber_____

Herbert Farber, WSBA # 7340

16

THE FARBER LAW GROUP

PO Box 69

17

Bellevue, WA 98009-0069

18

Telephone:  (425) 455-9087

Facsimile:  (425) 455-9017

19

E-Mail:  hgfarber@hgfarber.com

20

Counsel for Plaintiff

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE TO DEFENDANTS' SUBMISSION RE
EVIDENCE OF "OTHER INCIDENTS"
*Hausman v. Holland America Line-U.S.A., et al., Case No. 2:13-cv-00937-BJR*
Page 4 of 5

**FRIEDMAN | RUBIN**®
1126 Highland Avenue
Bremerton, Washington  98337
(360) 782-4300

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of September 2015, a copy of the foregoing document was electronically filed with the Court using the CM/ECF system, which will send notification of such filing to the following:

Louis A. Shields, Esq.
Asia N. Wright, Esq.
Richard A. Nielsen, Esq.
Nielsen Shields, PLLC
1000 Second Avenue, Suite 1950
Seattle, WA 98104
Tel: 206-728-1300
las@nielsenshields.com

Herbert G. Farber, Esq.
The Farber Law Group
10655 NE 4th Street, Suite 312
P.O Box 69
Bellevue, WA 98009-0069
hgfarber@hgfarber.com

I also certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

_____/s/  Deborah A. Traver_____
Deborah A Traver, Paralegal
Friedman | Rubin

Z:\Bremerton Cases\Hausman vs. HAL\PLED\DRAFTS\Opp to Defs Submission re Other Incidents - 9-15-15 - SERVED.doc

PLAINTIFF'S RESPONSE TO DEFENDANTS' SUBMISSION RE
EVIDENCE OF "OTHER INCIDENTS"
*Hausman v. Holland America Line-U.S.A., et al., Case No. 2:13-cv-00937-BJR*
Page 5 of 5

**FRIEDMAN | RUBIN**®
1126 Highland Avenue
Bremerton, Washington  98337
(360) 782-4300

# EXHIBIT A

| No. | Exhibit | Def.'s Argument | Pl.'s Response |
|---|---|---|---|
| 1 | Ex. P-1 at 2-3 (Herzog) | The door on the EURODAM is not a sliding door, but a swinging door. Mr. Herzog stated that a "gust of wind possibly caused the door to be blown closed." Additionally, page 3 of Exhibit 1 is a photo of a fire screen door in a hallway and not related to the Lido Restaurant where the Herzog incident occurred. | HAL 30(b)(6) Deponent Micheal Versteeg specifically stated in his deposition in regard to this incident that he was familiar with the doors, and that they were SLIDING doors. *See* Versteeg Dep. at 118:22-119:15.<br>The report states that the guest "alleges that he was entering the Lido Restaurant doors … when the second set of doors closed on him." (Ex. P-1 at 2).<br>It is substantially similar to Mr. Hausman's incident. |
| 2 | Ex. P-1 at 5-6 (Christensen) | The cause of the incident was found to be the guest's inattention rather than any door malfunction. Guest's husband stated that his wife was not paying attention where she was going. The report noted that guest was not wearing her prescription glasses at the time of the accident. | The guest stated that "the glass door on the starboard side closed against her and pushed her to the floor." Blaming the injury on the guest does not mean it was not "substantially similar." HAL usually blames it passengers from for their injuries and has attempted to also blame Mr. Hausman, despite video showing otherwise. This does not preclude admission of the incident. |
| 3 | Ex. P-100 at 1 (Adey) | The guest tripped and fell on the sliding door's threshold. The door did not strike the guest. This is evidenced by the following notations, "Falls on Same Level" "T/F [trip/fall] walking through Lido Rest sliding door, bruised wrist." | This is argument without evidence. All the summary says is "T/F walking through Lido Rest sliding door, bruised wrist." HAL produced these documents in response to discovery requests for other similar incidents involving automatic doors. HAL has the burden of proving that the door in question is "of a totally different type." Dkt. 127 at n.2. HAL has not met this burden or provided evidence that the door was not a factor. |

| No. | Exhibit | Def.'s Argument | Pl.'s Response |
|---|---|---|---|
| 4 | Ex. P-1 at 8-9 (Villaroman) | The door is in a crew area. It is a non-glass solid door. One side of the door is activated by a button. Unlike the AMSTERDAM door, there are no motion sensors, only infrared safety beams. The crewmember leaned her head over the threshold above the safety beams. | The OSI involves an automatic sliding door that should have detected a person, but did not, causing injury. The report simply says "she passed through the door and believing that someone called her name she turned her head back and was struck by the closing door causing her injury." The circumstances are substantially similar, and need not be identical. |
| 5 | Ex. P-1 at 11-12 (Andiranto) | This is the same type of door as Villaroman door on the starboard side of the ship. Like Villaroman, crewmember Andiranto leaned only his head over the threshold outside the path of the safety beam. | Another automatic sliding door that should have detected a person, but did not, causing injury. This is substantially similar. |
| 6 | Ex. P-100 at 1 (Oleheiser) | The door did not strike Oleheiser. The guest scraped his hand on the glass door as evidenced by the following notations: "Cut/Puncture/ Scrape," "Cut hand on sliding glass door," and "Laceration/ Cut/ Puncture/Scrape." There is no reference to any door closing on Oleheiser. | An open door that is recessed into the wall cannot cut a hand. The fact that there was an injury to the hand is circumstantial evidence that the door did not detect this person. A jury could reasonably conclude that this should have put HAL on notice that its doors were not detecting people. |
| 7 | Ex. P-1 at 14-15 (LeMaster) | Unlike the AMSTERDAM, the doorway contained a set of non-automatic interior swinging doors and a set of exterior automatic sliding doors. LeMaster, who was 90-years old at the time of the incident, testified that the swinging door hit her from behind. (LeMaster Dep. 30:6-7). LeMaster testified her balance "isn't that good." (LeMaster Dep. 48:11). | Despite HAL's argument, the report plainly says "91 y.o. female guest was knocked over by the automatic doors outside the Crow's Nest." Again: (1) automatic door; (2) hitting a guest because (3) did not detect her. This is substantially similar. HAL's reference to the LeMaster dep is improper. It is hearsay, and was not produced in discovery or attached to a declaration. |

| No. | Exhibit | Def.'s Argument | Pl.'s Response |
|---|---|---|---|
| 8 | Ex. P-1 at 17-18 (Pedersen) | Unlike Hausman, Pedersen quickly reversed her direction "while the door started to close and caught her left hand. . . ." | Another (1) automatic door; (2) hitting a guest because (3) did not detect her. A person's hand should not be caught or struck in a door if the door is properly working. HAL's characterization of the event is a jury argument that does not preclude admission. |
| 9 | Ex. P-100 (Perez) | The guest tripped and fell on the sliding door's threshold. The door did not strike the guest. This is evidenced by the following notations, "Falls on Same Level" "T/F [trip/fall] at sliding door to pool area midship, fx lft ring finger." | HAL's documentation does not show that the door was not a factor. The location of the incident was "Electric Sliding Door" and there is no incident report to corroborate HAL's version of the facts. |
| 10 | Ex. P-1 at 20-24 (Smith) | With her walker, Smith walked so slowly that the "automatic door sensors activated due to lack of detectable movement and closed." | HAL's description of the cause is based on its own investigators' determination, not evidence. A slow-moving senior citizen is NOT at-fault when a door closes on her. The door still closed on someone who was approaching it.  Sensors should be set sufficiently sensitive to detect a passenger. Regardless, this was an automatic door that failed to detect a person and caused injury. It is substantially similar. |
| 11 | Ex. P-100 at 1 (Henderson) | The guest fell near a sliding door. The door did not close on or strike the guest. This is evidenced by the following notations, "Falls on Same Level," Failure to React/Correct," and "startled and fell, sprained rt. knee." | HAL's documentation does not show that the door was not a factor. The location of the incident was "Electric Sliding Door," The guest may just as well have been "startled" by the door. HAL has also argued that other guests – including Mr. Hausman – "failed to react/correct." |
| 12 | Ex. P-100 at 1 (Humter) | The guest tripped and fell near a sliding door. There is no reference to any door closing on or striking the guest. This is evidenced by the following | HAL's documentation does not show that the door was not a factor. The location of the incident was "Electric Sliding Door" and there is no incident report to corroborate |

| No. | Exhibit | Def.'s Argument | Pl.'s Response |
|---|---|---|---|
| | | notations, "Falls on Same Level" and "PAX TRIP AND FALL WALKING." | HAL's version of the facts. |
| 13 | Ex. P-1 at 41-42 (Andermo) | Mr. Andermo videotaped the automatic doors in operation shortly after the incident. The videotape shows only Mr. Andermo's effort to "recreate" his wife's incident. Nonetheless, the video reveals that the doors open and close very slowly. The glass panels are emblazoned with the HAL logo and two bold horizontal stripes making them plainly visible to all users. Watching the video leads to one conclusion: Mrs. Andermo was distracted and walked into one of the doors. Mrs. Andermo testified unequivocally that she hit her head on the glass door pane, so it is obvious that the door had closed in front of her or had not fully opened yet. (Andermo Dep. 42:9-19; 43:21-23.) | Mr. Andermo's version of these events will differ from HAL's description at trial. HAL's claims that the Andermos were "distracted" or otherwise that it was their fault is typical of HAL's investigation technique, but not grounds for exclusion of this incident. An automatic sliding door struck a person who was walking toward it and should have been detected. Also, a person can hit her head on a door because it closed unexpectedly in front of her without time to react. This is substantially similar. |
| 14 | Ex. P-1 at 44-45 (Armstrong) | Armstrong walked into a closed door. She stated "that the doors should supposed [sic] to open from the center and slid [sic] to both sides but at the time only one door opened and she ran onto the still closed right door." | HAL ignores the plain language of its own documents. The report reads "Guest stated that the door malfunctioned." If the door was closed when she "walked into it," then the door was not working properly. Doors should not remain closed when people try to walk through them. This is notice to HAL that the door sensors weren't working. It is substantially similar. |
| 15 | Ex. P-1 at 47-48 (Van den | A guest in a hurry ran into a door that was still in the process of opening. | Again, HAL may not exclude this OSI that involves an automatic sliding door striking a person |

| No. | Exhibit | Def.'s Argument | Pl.'s Response |
|---|---|---|---|
| | Elsen) | | simply because HAL blames the victim. This goes to weight, not admissibility. |
| 16 | Ex. P-100 at 2 (MacConnell) | The "springloaded doors shut" on the guest's arm "tearing skin on forearm-not the sliding door." | The doors in question are plainly automatic sliding doors on the Lido deck, and HAL does not dispute this. The report actually reads "¿springloaded¿" which suggests that the guest might have said that word, but it makes no sense given the context.  There is no suggestion that HAL has "springloaded" doors. |
| 17 | Ex. P-1 at 50-51 (Rudeen) | The guest scraped his arm against the edge of the door after he moved to the side to make room for three guests coming toward him. The door did not close on the guest. | HAL blames the victim again. A door should detect the person and remain open. How does an arm "scrape against the edge of a[n automatic] door" that is properly functioning? This OSI is substantially similar. |
| 18 | Ex. P-1 at 53-54 (Hunt) | The door did not strike the guest, rather the guest ran into a closed door. | HAL blames the victim again. A door should detect the person and remain open. HAL's characterization that this was the Guest's fault is mere argument and does not establish that the incident is dissimilar. HAL 30(b)(6) witness |
| 19 | Ex. P-100 at 2 (Siddall) | The guest tripped on the even floor and fell between the two sets of sliding glass doors. The doors did not strike the guest. | HAL blames the victim again. HAL's documentation does not show that the door was not a factor. The location of the incident was "Electric Sliding Door" and there is no incident report to corroborate HAL's version of the facts. |
| 20 | Ex. P-1 at 56-57 (Logan) | The guest banged her forearm as she walked through the doors. The doors did not close on Logan. | Another (1) automatic door; (2) hitting a guest because (3) it did not detect her. Versteeg admitted that the report "doesn't specifically describe what happened, what the accident really caused -- was caused by." At 162:14-20. HAL |

| No. | Exhibit | Def.'s Argument | Pl.'s Response |
|---|---|---|---|
| | | | can argue that it was her fault to the jury. |
| **21** | Ex. P-1 at 59-62 (Schilling) | Unlike Plaintiff, Schilling did not walk through the threshold, but "stood still" in threshold as the doors closed. | (1) automatic door; (2) hitting a guest because (3) did not detect her. HAL blames the victim again. The doors should not close with a person who is there to be detected. This is notice to HAL that the sensors were not effective. |
| **22** | Ex. P-1 at 70-71 (Ferrainio) | The door did not recognize the movement of a slow moving 90-year old, 5-foot tall guest who walked with a cane. | Doors should detect slow-moving 90-year-old people. This is simply another example of HAL blaming the victim. This OSI is admissible. |
| **23** | Ex. P-1 at 84-85 (Smith) | The door is in a crew area. Like the Villaroman and Andiranto doors, the door is a solid non-glass door that on the working side is activated by a button. | Another automatic sliding door that should have detected a person, but did not, causing injury. This is substantially similar. |