THE HONORABLE BARBARA J. ROTHSTEIN

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

JAMES R. HAUSMAN,

Plaintiff,

v.

HOLLAND AMERICA LINE-U.S.A., *et al.*,

Defendants.

No. 2:13-cv-00937-BJR

**DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL**

<u>NOTE ON MOTION CALENDAR:</u>
**Friday, November 20, 2015**

**ORAL ARGUMENT REQUESTED**

### I. RELIEF REQUESTED

Holland America Line ("HAL") Defendants respectfully renew their motion, pursuant to Fed. R. Civ. P. Rule 50(b)(3), for Judgment as a Matter of Law on Plaintiff's claim for punitive damages as it is unsupported by the evidence. HAL also moves the Court, pursuant to Fed. R. Civ. P. Rules 59(a)(1)(A) & 60(b), to reduce the award of compensatory damages, as well as punitive damages in line with general maritime law proportioning punitive to compensatory damage, or to grant a new trial.

NIELSEN ✤ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    Recovery of punitive damages under general maritime law may be awarded only upon

2    substantial evidence showing the defendant's actions were a "willful, wanton, and reckless

3    indifference for the rights of others, or behavior even more deplorable." *Exxon Shipping Co. v.*

4    *Baker*, 554 U.S. 471, 493 (2008). In *Exxon Shipping,* the Supreme Court confronted a case

5    "resulting in substantial recovery for substantial injury." 554 U.S. at 496.  It found that  "[a]

6    median ratio of punitive to compensatory damages of about 0.65:1 probably marks the line

7    near which cases like this one largely should be grouped." *Exxon Shipping,* 554 U.S. at 513.

8    The Court held that a "1:1 ratio, which is above the median award, is a fair upper limit in such

9    maritime cases." *Id.* Applying this standard, the Court concluded, "A punitive-to-compensatory

10   ratio of 1:1 thus yields maximum punitive damages in that amount." *Id.*  It therefore vacated

11   the judgment and remanded the case for the Court of Appeals to remit the punitive damages

12   award accordingly. *Id.*

13   As discussed below, HAL seeks the Court to find as a matter of law that there is a lack

14   of substantial evidence supporting an award of punitive damages in this case.  Alternatively,

15   HAL seeks a new trial, or for the Court to remit the compensatory and punitive damages as

16   they are both excessive and unsupported.   Plaintiff submitted no evidence of any special

17   damages in this case, and thus, given the facts, his compensatory damages award appears

18   driven by passion and prejudice, including, possibly, some relation to HAL's purported wealth.

19   Moreover, there is no reason that punitive damages should exceed a standard award by a

20   reasonable jury, i.e., a ratio of 0.65:1 with compensatory damages.  In no event is there a basis

21   for punitive damages to exceed the amount of reasonable compensatory damages.  For these

22   and the reasons discussed below, the damages should be reduced or a new trial held.

23

NIELSEN ⬥ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

## II. ARGUMENT

**A.      The Court Should Enter a Judgment as a Matter of Law Dismissing Plaintiff's Claim for Punitive Damages as the Verdict is Unsupported.**

A court may grant a renewed motion for judgment as a matter of law ("JMOL")[1] following trial, and direct the entry of judgment pursuant to Fed. R. Civ. P. 50(b)(3). *Cox v. Cont'l Cas. Co.*, 2015 U.S. Dist. LEXIS 80715, *4-5 (W.D. Wash. June 19, 2015). Plaintiff and the Court agree that the verdict should be reviewed to determine whether the amount awarded is excessive. *See* Pf's Trial Brief, 1:24-26, 4:12-14 & 26-27, Exh. 1 to Shields Decl.; Report of Proceedings ("RP"),") Exh. 2d, 111:18-21; 113:9-11. HAL repeatedly has moved that punitive damages should be dismissed as a matter of law, including by summary judgment (Dkt. # 83) and pre-verdict JMOL (Dkt. #187). "While the summary judgment inquiry generally seeks to determine whether there is a genuine issue of fact for trial, the directed verdict or JNOV inquiry hinges on whether there is substantial evidence to support a verdict." *Moore v. Thornwater Co. LP*, 2006 U.S. Dist. LEXIS 33187 at *6-7 (W.D. Wash. May 23, 2006). Here, there is no substantial evidence supporting the jury's excessive award.

Under general maritime law, "sometimes punitive damages are allowable, sometimes they are not." *In re Exxon Valdez*, 270 F.3d 1215, 1226 (9th Cir. 2001), *subs. op. at Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008). Recovery of punitive damages is limited to cases of "'enormity,' where a defendant's conduct is 'outrageous,' owing to 'gross negligence,' 'willful, wanton, *and* reckless indifference for the rights of others,' or behavior even more deplorable." *Exxon Shipping,* 554 U.S. at 493 (citations omitted) (Emphasis added). Such an

---

[1] "The 1991 amendments to the rules drop the designations of 'directed verdict' and 'judgment notwithstanding the verdict' in favor of 'judgment as a matter of law.'" *Magnussen v. YAK, Inc.*, 863 F. Supp. 1292, 1293, n.1 (W.D. Wash. 1994), *rev'd on other grounds*, 74 F.3d 245 (9th Cir. 1996).

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 3

**NIELSEN ✦ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1  extreme remedy is not permitted under general maritime law for mere error in judgment, even

2  if intentional. *See Borkowski v. F/V MADISON KATE*, 599 F.3d 57, 61 (1st Cir. 2010) (citing

3  *Exxon Shipping*, 554 U.S. at 492).   For example, negligent operation of a skiff while

4  intoxicated and colliding with another skiff at night resulting in injury and death did not

5  amount to willful, wanton, and reckless disregard for the rights of others.  *Churchill v. F/V*

6  *Fjord*, 892 F.2d 763, 772 (9th Cir. 1988), *cert. denied*, 497 U.S. 1025 (1990).

7         In recent cases arising from serious passenger incidents aboard cruise ships, courts have

8  dismissed punitive damages claims where there was no evidence of willful, wanton, and

9  reckless disregard for the rights of others.  For example, a court, in applying general maritime

10 law, granted summary judgment dismissing passengers' claims for punitive damages where

11 there was a lack of evidence of required willful and intentional wrongdoing as a result of a ship

12 fire disabling the vessel at sea with thousands of passengers stranded until they could be

13 returned to port.   *Terry v. Carnival Corp.*, 3 F. Supp. 3d 1363, 1371 (S.D. Fla. 2014).

14        Likewise in *Fiorillo v. Carnival Corp.*, 2013 U.S. Dist. LEXIS 23163 at *6-9 (S.D. Fla.

15 Feb. 20, 2013), the court granted partial summary judgment dismissing a passenger's demand

16 for punitive damages against a cruise line for its cabin steward's alleged sexual battery.  The

17 court noted, "In admiralty law, punitive damages are generally available in personal injury

18 actions arising under the Court's maritime jurisdiction when the defendant engaged in wanton,

19 willful or outrageous conduct — the level of culpable conduct necessary to obtain punitive

20 damages at common law." *Fiorillo*, 2013 U.S. Dist. LEXIS 23163 at *6.  The court found that

21 the passenger plaintiff could not proffer sufficient evidence to meet this standard.

22        Another court also granted a motion to strike punitive damages against a cruise line for

23 failure to prevent sexual assault and battery on a passenger, or alternatively, for

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 4

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

misrepresentations of a safe cruise. *Doe v. Royal Caribbean Cruises*, 2012 U.S. Dist. LEXIS 139965, at *6 (S.D. Fla. Sept. 28, 2012). The plaintiff alleged the cruise lines' surveillance footage captured her assailant, visibly intoxicated, wandering down a hallway until he came to her cabin, which he entered without a keycard. *Id.* at *2. She alleged that the cruise line knew from prior experiences that in monitoring the ship (or failing to do so), there was a serious risk of harm to her. *Id.* at *3. She further alleged the cruise line did not act despite this risk of harm, and also that it made a conscious corporate decision to market and advertise its cruises without disclosing the significant risk of crime and harm to passengers while on board. *Id.* In rejecting the recoverability of punitive damages, the court noted that plaintiff must prove and allege facts showing wanton, willful, and outrageous conduct. *Id.* at *6-7 (citing *Baker v. Carnival Corp.*, 2006 U.S. Dist. LEXIS 88249, *14-15 (S.D. Fla. Dec. 5, 2006) (dismissing punitive damages due to a lack of evidence of intentional wrongdoing). While noting such allegations may be sufficient to state a claim for negligence, the court held they are insufficient to establish a basis for punitive damages. 2012 U.S. Dist. LEXIS 139965, at *10.

In this case, Plaintiff plead Defendants' action was conducted with "willful, wanton, and reckless indifference." Amended Complaint, Dkt.# 24, ¶41. He just did not proffer any evidence of willful and wanton indifference at trial, relying only on an attempt to show recklessness. See RP Exh. 2b, 132:14-18. As discussed below, there is also a lack of substantial evidence even proving a "complete indifference" to the rights of others in this case, as taken from the Court's jury instruction.

Like these cases recognizing the availability of punitive damages under general maritime for willful, wanton, and reckless disregard for the rights of others, this Court departed from Ninth Circuit precedent in *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1407-1408

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 5

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    (9th Cir. 1994), to hold that under a broad reading of *Atlantic Sounding Co., Inc. v. Townsend*,

2    557 U.S. 404 (2009), which permitted punitive damages for *willful and wanton* failure to pay

3    seaman's benefits of maintenance and cure, punitive damages also should be recoverable for a

4    maritime passenger claiming personal injury. Order, Dkt. #126, 9:12-13.   Applying this

5    Court's view of *Townsend*, substantial evidence of willful, wanton, and reckless disregard for

6    the rights of others would therefore be required for a passenger to recover punitive damages.

7    **1.    Previous Unrelated Door Incidents Do Not Amount to Willful, Wanton**
     **Conduct or Recklessness As to the Subject Door, Which Had No History of**
8    **Harming Others.**

9         In denying HAL's motions to dismiss punitive damages, the Court noted that the

10   Plaintiff claimed the sensors on the door were improperly set, and he asserted that HAL was

11   aware of the risk of harm posed to passengers and did nothing to remedy the danger.  SJ Order,

12   Dkt. # 128, 12:24-3:3; JMOL Order, RP Exh. 2b, 133:8-10 ("I'm going to deny the motion,

13   counsel. I think that the same disputed fact is there that I found on summary judgment.").

14   Plaintiff pointed to accident reports on other ships to prove HAL's awareness of potential

15   harm. As discussed below, such awareness, without proof of willful, wanton, and reckless

16   conduct, is insufficient as a matter of law to recover punitive damages, and no reasonable jury

17   would have awarded them under these factual circumstances.

18        **a.    Plaintiff proffered no evidence HAL's actions were willful or wanton.**

19        In order to recover punitive damages, Plaintiff must prove by substantial evidence that

20   at a minimum, HAL's conduct amounted to a "willful, wanton, and reckless indifference for

21   the rights of others." *Exxon Shipping*, 554 U.S. at 492.  Here, there is no evidence of the first

22   two components, willful and wanton conduct.   Despite his own Amended Complaint

23   acknowledging that he must prove "willful and wanton," Plaintiff focuses only on

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 6

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

"recklessness." RP Exh 2b, 132:14-18. *But see* Amended Complaint, Dkt.# 24, ¶41 (alleging Defendants' action was "willful, wanton, and reckless indifference."). The jury's verdict was limited to a finding whether "Defendants acted with reckless disregard for Plaintiff's safety and rights, proximately causing him injury and loss," without reference to the first two legal components. Verdict, Dkt. #201, at 2:15-17. The use of "or" instead of "and," although in the Pattern Instruction, is not in line with the standard announced in *Exxon Shipping v. Baker*. On this basis alone, the Court should grant JMOL dismissing punitive damages.

  **b.**  **The record lacks substantial evidence proving recklessness.**

  As to the third component, "[r]ecklessness may consist of either of two different types of conduct. In one the actor knows, or has reason to know . . . of facts which create a high degree of risk of . . . harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk." 554 U.S. at 493-94 (citing Restatement § 500, Comment *a*, pp. 587-588 (1964)). In this case, there is no evidence that HAL knew before Mr. Hausman's incident that the sensor on the subject door created a zone in which it would allow the doors to close, and in doing so, would probably harm him. Even after the subject incident, inspection of the doors by the vessel's Chief Electrician and Security Officer found no patent defect, both concluding the doors were operating normally. Stipulated Facts, Dkt. # 125, 4:18-27. The monthly check of the doors after they had been replaced but before the incident, disclosed no defect. *Id.* There had been no prior reported injuries. *Id.*

  As to the other type of conduct constituting recklessness, the Supreme Court has also noted this occurs when "the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so." *Exxon Shipping*, 554 U.S at 494. Again, there is no evidence HAL had

NIELSEN ✛ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1   reason to know of a defect with doors that had not injured anyone and which had been recently

2   replaced by a third-party, Centraltechnica. Dkt. # 125, 5:1-2.   In addition, there was no

3   evidence that any reasonable cruise line operator would have realized that a recently installed

4   door with new sensors that had not injured anyone involved a high degree of risk of injury

5   because it created a zone where it would not detect a passenger and then close.

6       Here, Mr. Hausman's personal injury claim did not arise from any willful, wanton, and

7   reckless misbehavior, or a "complete indifference to Mr. Hausman's safety or rights." Rather,

8   the undisputed evidence revealed that no other passenger had been injured by this or any other

9   door on the AMSTERDAM. Dkt. # 125, ¶18.   Furthermore, the video of the incident

10   established that the door's sensors were recognizing people as they walked through the door

11   immediately before Mr. Hausman. See Dkt. # 82. The doors were installed eleven months

12   before the incident and had been inspected and maintained per the manufacturer's instructions.

13   Dkt. # 125, 5:1-2. In light of these facts, there is no substantial evidence as a matter of law that

14   would allow a reasonable jury to conclude that HAL acted with willful, wanton, and complete

15   indifference to Mr. Hausman's safety.

16       Mr. Hausman also relied heavily on the sixteen other incidents that had occurred on a

17   fleet of fifteen ships over three years with millions of passenger cruise days to constitute

18   notice. There was no evidence that the other doors were substantially similar in construction or

19   wear, involved the same sensors and equipment, or operated under the same conditions.

20   While such evidence may be sufficient to warrant a finding of negligence, the evidence of

21   sixteen other incidents does not rise to a level sufficient to establish that HAL, or any

22   reasonable person, appreciated a high degree of risk of harm to passengers going through the

23   recently replaced subject doors where no injury had previously occurred. Rather, the evidence

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 8

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1   established that each incident was promptly investigated and corrective action was taken when

2   a deficiency was found. *See* Pf's Trial Exh. P-1, Exh. 4 to Shields Decl. For example, in the

3   *Andermo* case a faulty sensor was replaced. See TP Exh. 2c, 82:8-9. In other cases, electricians

4   inspected the doors. See Exh. 4. Each incident resulted in a detailed report and discussion at

5   monthly Safety Committee Meetings. See *id.*; TP Exh 2c, 48:2-8. These actions, all taken

6   with passenger safety in mind, showed that HAL was acting as a prudent company should and

7   that any failure to have uncovered something that may have led to preventing Mr. Hausman's

8   incident years in the future on a different ship with a newly installed and properly maintained

9   door cannot possibly be deemed reckless. Plaintiff's theory that HAL should have discovered

10   that there was a gap in the zone that experts subsequently found in post accident investigation

11   of his case, but no others, cannot create a basis for recklessness.

12      **c.**    **A reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiff on punitive damages based on other incidents involving other people.**

14      The jury's award of $16.5 million suggests an improper application of the sixteen prior

15   incidents to this case. Punitives cannot be used to punish a defendant for harming persons not

16   before the court. *Philip Morris, USA v. Williams*, 549 U.S. 346 (2007). Accordingly, the

17   Court's instruction on punitive damages states that "You may not, however, set the amount of

18   any punitive damages to punish Holland America, in this case, for harm to anyone other than

19   Mr. Hausman, including any person involved in the prior incidents on any other Holland

20   America cruise ship." Jury Instruction 31. Here, the jury heard considerable argument relating

21   to the sixteen prior incidents, plus the "near miss" involving the Hausman's nanny, Kallie

22   Knutson. The jury's award of $16.5 million reflects the fact that the jury used the other

23   incidents as a means of quantifying the punitive damages award; we suspect the "half-interest"

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 9

**NIELSEN ✦ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1   was awarded for the Kallie Knutson door bump.  Such damages based upon harm to others,

2   non-parties, are not allowed.

### 2. The Captain's Purported Knowledge Does Not Amount to Willful, Wanton, Recklessness Where There Was No Evidence He Knew the Subject Door Resulted in Prior Injury Or Dissimilar Events on Other Ships.

5   In attempting to prove another disputed fact, Plaintiff pointed to Captain Eversen's

6   purported statement to him to prove HAL's corporate awareness and ratification of willful,

7   wanton, and reckless conduct.  *See* SJ Order, Exh. 2, Dkt. # 128, 3:14-18; *see also* JMOL

8   Order, RP Exh. 2b, 133:8-10.  Mr. Hausman embellished his deposition at trial testifying that

9   Captain Eversen told him "Those doors have nailed every officer on this ship, at least twice,"

10  adding the "at least twice" part at trial.  It is odd that someone having such alleged difficulty

11  with his memory, recalled at trial details previously not mentioned, from the party conversation

12  of nearly four years ago.  There is no testimony that there was an injury as a result of such

13  incidents, that the doors were operating improperly, or whether the officers, themselves, had

14  used appropriate caution in proceeding through moving doors.  *See* RP Exh. 2b, 111:12-16.

15  While the Court found Mr. Hausman could testify as to what Captain Eversen purportedly told

16  him, over HAL's objection (Dkt. #128, 4:3-18), the statement, if believed, shows, at best, that

17  the Captain was aware that the doors came in contact with the officers, not that the doors

18  resulted in any injury to them or were defective.

19  As Captain Eversen explained in denying the statement, had that been the case, he

20  would have incident reports on his desk if such event had occurred, which he then would have

21  taken care of right away. RP Exh. 2d, 136:21. In addition to Captain Eversen's denial of the

22  statement to Mr. Hausman, there was no testimony that he was aware of incidents on other

23  ships. In fact, he testified he was not aware of any other incidents in which sliding doors

injured a passenger other that Mr. Hausman. RP Exh. 2d, 135:24-136. As a third party installation expert had just replaced the subject doors and sensors (Dkt. # 125, 5:1-2), the proper inference by Captain Eversen, given no knowledge of any door injuring any passenger on any ship, would be that the doors on his ship were working properly.

Under these facts, there was no willful, wanton and reckless disregard for the safety of others where there was no previous incident of injury involving the particular doors/sensors at issue. In order for there to be a "reckless disregard" there must be at least a showing that the defendant failed to perform an act with knowledge that it probably would result in injury or harm.[2] The failure to discover the zone deficiency unique to this case was not the result of malice, willfulness, or wantonness, but involved disputed material facts, including whether HAL should have known there was a problem with the sensor of the doors that would cause an injury even though they had been used millions of times without incident or injury. Accordingly, Plaintiff failed to provide substantial evidence of wrongdoing, and thus, his claim for punitive damages should be dismissed.

**B.      Plaintiff's Damages Should Be Reduced as Excessive.**

The Court may grant a new trial under Fed. R. Civ. P. 59 upon finding the damages to be excessive. *See, e.g., Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014) (district court on Rule 59 motion "can weigh the evidence and assess the credibility of the witnesses" and "can grant . . . on any ground necessary to prevent a miscarriage of justice"). *See also* Fed. R. Civ. P. 60(b)(court may relieve party from judgment, order, or proceeding due to being void or "any other reason that justifies relief").

---

[2] For example, "When Exxon trusted an officer it knew was incompetent to command the *Exxon Valdez* through the treacherous waters of Prince William Sound, Exxon acted with reckless disregard for the health and safety of all those in the vicinity." *In re Exxon Valdez*, 490 F.3d at 1086.

NIELSEN ⚜ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    Alternatively, remittitur of damages is an accepted alternative to new trial for an excessive

2    verdict. *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014).

3           Rule 59 authorizes the Court to order a new trial, but does not specify the grounds upon

4    which relief may be granted. *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir.

5    2003).    Rather, the court is "bound by those grounds that have been historically

6    recognized." *Id.* Historically recognized grounds include, but are not limited to, claims "that

7    the verdict is against the weight of the evidence, that the damages are excessive, or that, for

8    other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan*,

9    311 U.S. 243, 251 (1940). For the same reasons discussed above, the verdict is against the

10   weight of evidence, and the damages awarded are excessive.

11          The only damages Plaintiff disclosed in the pretrial order was $106,521.96, which he

12   stated he had not decided whether to claim or not at trial.[3] See Pf's 7th Supp. Disclosure, Exh. 4

13   to Shields Decl.  The parties stipulated that "Mr. Hausman will not seek to recover economic

14   damages relating to any business owned or operated by Mr. Hausman at trial in this matter or

15   lost earning capacity related to his alleged injuries." Stip, & Order, Dkt. #67, 1:18-20.  He was

16   excluded from presenting evidence of the need of a life care assistant as no physician had

17   found that was medically necessary for him. Minute Entry, Dkt. #185.  Mr. Hausman did not

18   submit any evidence of special damages at trial.

19          The jury's award of $5 Million dollars in general damages, approximately 50 times his

20   disclosed special damages of approximately $106,000, is excessive, unreasonable and unfair.

21   Of note, the evidence established that Mr. Hausman's injuries did not prevent him from

---

[3] Rule 37(c)(1) "forbid[s] the use at trial of any information required to be disclosed by Rule
26(a) that is not properly disclosed." *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246
(9th Cir. 2012).

**NIELSEN ✦ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

completing five additional months of sailing around the world, hosting parties in his shipboard penthouse (RP Exh. 2b, 206:3-6), participating in many single and multi-day excursions at various ports around the world, (id. 207:1-4, 214:1-7, 14-15, &23-15, 216:9-18, 220:11-13, 222:1-2), riding an elephant in Thailand (id., 227:9-15) managing his business from the cruise ship (id., 29:1-13), returning to work once home from the cruise (id., 32:19-25; 252-253), gambling and returning in February 2013 for another cruise.  Although Mr. Hausman has pursued medical care, he is clearly able to care for himself, drive his vehicle, and travel over 550 miles alone to his cabin in Wisconsin.  Furthermore, Mr. Hausman continued working at The Gold Center as President after selling a majority share of his business in 2013, only recently retiring after his employment contract was not renewed; and he retains his 20% ownership (with his wife).

     In light of these facts and because the Court permitted the jury to hear irrelevant and prejudicial testimony as to HAL's purported wealth when determining liability and compensatory damages, the jury was misled in its passion and prejudice.  As this was unfair to HAL and as the $5 Million in general damages are excessive when considering the $106,000 in special damages that were not even claimed at trial, the Court should order a new trial as to punitive damages unless Plaintiff agrees to a remittitur of the damages to an amount that is reasonable and does not offend due process.

**C.**    **Maritime Law Proportions Punitive Damages With Compensatory Damages.**

     In addition to review of Plaintiff's damages award, the Court should review the amount of punitive damages awarded on a reasonable relationship to compensatory damages and proportionate level of blameworthiness. See *Exxon Shipping*, 554 U.S 495 ("As for procedure, in most American jurisdictions the amount of the punitive award is generally determined by a

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

jury in the first instance, and that 'determination is then reviewed by trial and appellate courts to ensure that it is reasonable.'"). Plaintiff does not disagree. As Plaintiff acknowledged, "[u]nlike the initial damage calculation, determining the ceiling on a punitive damage award is a question of law, properly reserved for the court." Exh. 1, 4:26-27 (quoting *White v. Ford Motor Co.*, 500 F.3d 963, 974 (9th Cir. 2007)). "Courts have also recognized that the question of applying ratios to punitive damage awards is one for the Court, post-trial." *Id.*, 4:12-14.

In discussing the appropriate ratio to be applied under general maritime law, the Supreme Court in *Exxon Shipping* reviewed the punitive damage award in that case for conformity with federal maritime law. *Id.* at 489-90. Unlike its previous response to outlier punitive-damages awards confined by due process standards, the Supreme Court explained a stricter standard under general maritime law:

> Today's enquiry differs from due process review because the case arises under federal maritime jurisdiction, and we are reviewing a jury award for conformity with maritime law, rather than the outer limit allowed by due process; we are examining the verdict in the exercise of federal maritime common law authority, which precedes and should obviate any application of the constitutional standard.

*Exxon Shipping*, 554 U.S 501-502. The Court was particularly troubled by "outlier" punitive damage awards "that dwarf the corresponding compensatories" much like the punitive damage award in this case. *Id.* at 500. In "eliminating unpredictable outlying punitive awards by more rigorous standards than the constitutional limit,"[4] the Court rejected creating a judicial cap,

---

[4] In determining whether an award comports with due process, the Supreme Court rejected a 3:1 ratio as inappropriate under general maritime law, even though it reflected the statutory cap in a majority of states, because the 3:1 ratio is often applied in statutes to only the "most egregious conduct." *Exxon Shipping*, 554 U.S. at 510-11 ("[A] legislative judgment that 3:1 is a reasonable limit overall is not a judgment that 3:1 is a reasonable limit in this particular type of case.") *see also M/V Marlin*, 2009 U.S. Dist. LEXIS 61538 at *16 (finding state treble damages statute preempted by 1:1 ratio under general maritime law) (citing *Exxon Shipping*).

NIELSEN ❖ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    similar to that imposed by some state statutes, because it could not be adjusted for inflation.

2    *Id.* at 506.  Instead, "The more promising alternative is to leave the effects of inflation to the

3    jury or judge who assesses the value of actual loss, by pegging punitive to compensatory

4    damages using a ratio or maximum multiple." *Id.*

5         The Supreme Court found in *Exxon Shipping* that it was confronted with "a case of

6    reckless action," "resulting in substantial recovery for substantial injury." *Id.* at 596.  After

7    concluding that punitive damages must be proportionate to compensatory damages, the Court

8    analyzed ratios.  *Id.* at 507-13.  The Court calculated the median ratio of punitive to

9    compensatory damages actually awarded in a cross section of cases, concluding the 0.65:1

10   median ratio reflected "what juries and judges have considered reasonable across many

11   hundreds of punitive awards." *Id.* at 512.   However, the Court concluded the maximum

12   permissible ratio permitted under general maritime law is 1:1.  554 U.S. at 513. ("We consider

13   that 1:1 ratio, which is above the median award, is a fair upper limit in such maritime cases.").

14        As discussed below, punitive damages in this case should be less than the median

15   0.65:1 value, but in no event should exceed the fair 1:1 upper limit in maritime cases.

16   **1.   If punitive damages are allowed they should be set to less than the Average.**

17        As noted above, the Supreme Court in *Exxon Shipping* found that in cases where

18   punitive damages were allowed, the appropriate ratio of punitive damages to compensatory

19   damages should be 0.65:1 or less.   *Exxon Shipping*, 554 U.S. at 513 ("a median ratio of

20   punitive to compensatory damages of about 0.65:1 probably marks the line near which cases

21   like this one largely should be grouped.").  The punitive damages awarded in this case results in

22   a ratio of over 3.3:1.  Such an award is excessive when applying median ratio that most juries

23   and judges have concluded is reasonable.  There are no special circumstances in this case that

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 15

**NIELSEN ✦ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

justifies a higher award than average.  The $16.5 Million award in this case does not comport with what a reasonable jury would award on average given the evidence in this case as to HAL's conduct and resulting harm.

      a.      **Analogous Constitutional guideposts aid review of punitive damages.**

In reviewing a punitive damages award to comport with the higher due process limit (as opposed to the stricter general maritime law ratio), a court must consider three guideposts:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 418, (2003). (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575(1996)).  Although these guideposts are used to determine whether a punitive damage award comports with due process reasonableness and proportionality to compensatory damages, they likewise seem to give guidance in assessing the ratio to be used in a general maritime law case, noting the range is between 0:1 and 1:1 as the upper limit. In using these guideposts, the Court should likewise be guided in conducting its review, and accordingly reduce the punitive damage award in this general maritime law case to the average ratio of 0.65:1 or less, appropriate in this type of case.

      b.      **Analysis of analogous guideposts support using a less than 0.65:1 ratio.**

In considering the first guidepost of the degree of reprehensibility of defendant's conduct, while he asserts the failure to inspect and find a defect with the sensor to the doors caused him harm, Mr. Hausman was not a target of HAL's alleged negligence because he had financial vulnerability.  Before the incident, there had been no reported injuries requiring medical attention by passengers or crew using the doorway. Dkt. #125-11, ¶18.  No evidence

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 16

**NIELSEN ✦ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

was or could be introduced that Captain Eversen knew or should have known the doors would cause injury, because as a matter of undisputed fact, they had not. No evidence was shown that other incidents on other ships were the result of a defect in how the sensor field was set. As such, this guidepost points to an average punitive award in a ratio of 0.65:1 or less.

As to the second guidepost, the Supreme Court has noted that if the compensatory damages are substantial, a lesser ratio, "equal to compensatory damages, can reach the outermost limit of the due process guarantee." *State Farm,* 538 U.S. at 425. The Court also noted that "The wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." *Id.* at 427. As the jury awarded $5 Million in compensatory damages to Plaintiff, and even if reduced substantially as requested above, any award over $50,000 is substantial. See *Bains, LLC v. Arco Products Co.,* 405 F.3d 764, 776 (9th Cir. 2005) ($50,000 economic damages award was substantial). Thus, this guidepost not only calls for the reduction of punitive damages, but also that any such damages award should be at a lesser ratio than the average.

The third *Gore* guidepost instructs the Court to consider the statutory and other civil penalties imposed in comparable cases. The international statutory limit on damages under the terms of the Convention Relating to the Carriage of Passengers and Luggage at Sea" of 1974 as well as the Protocol to the Convention of 1976 ("Athens Convention"), which was also specifically incorporated by reference by the parties to the HAL passage contract, Plaintiff's total damages would be limited to 46,666 Special Drawing Rights, approximately $70,000. See Passage Contract, 24:(b) (Dkt. # 102-1). Plaintiff has never disputed this or that his passage contract with HAL specifically provided that "in no event will we be liable to you for consequential, incidental, exemplary or punitive damages." *See* Carol Kidd Decl. at ¶ 14 (Dkt.

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 17

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

# 102). Washington has long precluded punitive damages except as authorized by statute. *Fisher Properties, Inc., v. Arden-Mayfair, Inc.*, 726 P.2d 8, 23 (Wash. 1986). Not only are punitive damages barred in Washington, where HAL is headquartered and has its principal place of business, but also, punitive damages are barred in the Netherlands, whose laws govern the *AMSTERDAM*, where the vessel is flagged and registered.[5] As punitive damages are unavailable on an international voyage and under the law of Washington and the Netherlands, the third factor also supports reduction of punitive damages in this case.[6]

In considering these three factors and the proportionality expressed by the Supreme Court in *Exxon Shipping* as to maritime cases, the Court should find that punitive damages are excessive as a matter of law when considering the amount of compensatory damages, and thus should be reduced by applying the 0.65:1 ratio or less.

## 2.      Punitive Damages Should Not Exceed The 1:1 Ratio Under Maritime Law.

In *Southern Union Co. v. Irvin*, 563 F.3d 788 (9th Cir. 2009), the Ninth Circuit directed, "It is worth noting, however, that when the Supreme Court selected a ratio for federal maritime law purposes, rather than constitutional purposes, it saw a ratio of one to one as the 'fair upper limit.'" 563 F.3d at 788, n.1 (citing *Exxon Shipping*, 554 U.S. at 512).   While punitive damages in this case should not exceed the average ratio, in no event should the ratio exceed the fair upper limit of a one to one ratio as between punitive and compensatory damages.

---

[5] "Netherlands law does not allow punitive or exemplary damages." *Marsh v. Burrell*, 805 F. Supp. 1493 1497 (N.D. Cal. 1992).

[6] Where punitive damages did not exist as a matter of law at the time of the subject incident in November 2011, permitting punitive damages *ex post facto* violates due process, is unconstitutional, is contrary to the law of the flag, and conflicts with Washington state law where no established federal maritime rule permitted them.  See *Landgraf v. USI Film Products*, 511 U.S. 244, 247 (1994) (allowing recovery of punitive damages where none existed before could not be applied *ex post facto*).

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 18

NIELSEN ❖ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

a.      **Maritime uniformity requires a 1:1 ratio limit.**

At least one rationale expressed for linking compensatory damages to punitive damages in admiralty cases is the need for uniformity and consistency in damage awards. In *Norfolk & Portsmouth Belt Line R.R. Co. v. M/V Marlin*, the federal court, sitting in admiralty, noted that while the Supreme Court in *Exxon Shipping* suggested that in many cases the appropriate ratio of punitive damages to compensatory damages would be 0.65:1 or less, it could be higher, but even in the "most extreme cases, the maximum permissible ratio is likely 1:1." *M/V Marlin*, 2009 U.S. Dist. LEXIS 61538 at *10, 2009 A.M.C. 1135, 1141 & 1143 (E.D. Va. 2009) (citing *Exxon Shipping, supra*).    The federal admiralty court explained:

> At least one rationale expressed for placing a cap on punitive damages in admiralty cases is the need for uniformity and consistency in damage awards. *See Exxon*, 128 S. Ct. at 2625 ("The real problem, it seems, is the stark unpredictability of punitive awards. Courts of law are concerned with fairness as consistency, and evidence that the median ratio of punitive to compensatory awards falls within a reasonable zone, or that punitive awards are infrequent, fails to tell us whether the spread between high and low individual awards is acceptable. The available data suggest it is not.").

*M/V Marlin*, 2009 U.S. Dist. LEXIS 61538 at *10-11, n.8.  In *M/V Marlin*, the federal court was confronted with a Virginia statute that provided for triple damages. *Id.* at *11.  In finding it punitive, the court sitting in admiralty concluded that the "remedy in the form of triple damages is inconsistent with *Exxon's* 1:1 ratio of punitive to compensatory damages, and therefore conflicts with the general maritime law. " *Id.* at *12.  In addition to conflicting with general maritime law, allowing triple the compensatory damages "impinges upon the uniformity of the general maritime law in an area that requires uniformity." *Id.* at *16.  Thus, a statutory 3:1 ratio was rejected in favor of the 1:1 ratio. *Id.*

NIELSEN ⬥ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

**b.   The Ninth Circuit agrees there is a 1:1 limit under General Maritime Law.**

In reading *Exxon Shipping,* various panels of the Ninth Circuit as well as federal district courts in the Ninth Circuit have consistently observed, punitive damages are limited to a 1:1 ratio with the amount of compensatory damages in admiralty cases. *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1122 (9th Cir. Cal. 2008) ("a 1:1 ratio, which is above the median award, is a fair upper limit"); *Southern Union,* 563 F.3d at 788, n.1; *Sea Hawk Seafoods,* 2009 U.S. App. LEXIS 16324 at *5. *See also Sidman v. Young Bros.,* 2015 U.S. Dist. LEXIS 84186 at *8-9 (June 29, 2015) ("adopting, in the area of federal maritime law, a 1-to-1 ratio between compensatory and punitive damages"); *Paul v. Asbury Auto. Grp., LLC,* No. 3:06-cv-01603-KI, 2`009 U.S. Dist. LEXIS 4924, *30 (D. Or. Jan. 23, 2009) ("Under *Exxon,* in maritime cases involving a similar level of reckless misconduct as at issue here (according to defendant), the ratio of punitive to compensatory damages should not exceed a 1:1 ratio and should more likely fall in the range of 0.65:1").   Accordingly, the Court should follow the Ninth Circuit precedent and not approve a punitive damages award in excess of the 1:1 ratio.

**c.   The Court should not be misled by the limited scope of state courts     that ignored Federal admiralty law and based their rulings on malicious conduct not present in this case.**

No admiralty case since *Exxon Shipping* has held that punitive damages are not bound by a reasonable relationship to the conduct proven and must be proportionate to the compensatory damages awarded.  The Washington Supreme Court agreed, explaining a 1.5:1[7] ratio is permissible when the case involves malicious behavior and dangerous activity carried

---

[7] In *Clausen,* court opined that when including attorney fees ($387,558.00) to the $453,100 in damages for Jones Act negligence and $37,420 in maintenance and cure, the $1.3 Million in punitive damages award was within due process limits of the compensatory award ($878,078). 174 Wn.2d at 87.

NIELSEN ⬥ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

on for the purpose of increasing a tortfeasor's financial gain. *Clausen v. Icicle Seafoods, Inc.*,

174 Wn.2d 70, 85, 272 P.3d 827, *cert. denied*, ___U.S.___, 133 S.Ct. 199, 184 L.Ed.2d 39

(2012). *See also Colombo v. BRP US Inc.*, 230 Cal. App. 4th 1442, 1474, 179 Cal.Rptr.3d 580

(2014) (finding 3.78:1 ratio reasonable and proportionate measure of the blameworthiness of

defendant's conduct and given the nature of injury); *McWilliams v. Exxon Mobil Corp.*, 111

So.3d 564 (La. Ct. App.), *writ den.*, 125 So.3d 451(2013) (ratio of 2.18:1 proper).  While these

state court cases awarded more than the 1:1 ratio, they did so based on factors not present here,

including malicious conduct.  For example, in *Clausen*, the jury found that the defendant had

not just been reckless, but "acted callously or willfully and wantonly in its failure to pay

maintenance and cure."  *Clausen*, 174 Wn. 2d at 85. The trial court, in denying a motion to

reduce the punitive damages, also found that the defendant intentionally disregarded the

seaman's health by refusing to pay for his spinal injections and surgery, did so knowing the

seaman was practically homeless, living in a broken down recreational vehicle, deliberately

made false statements in its federal court complaint seeking to terminate maintenance and cure,

and its conduct was motivated by profit. *Id.* at 85-86.  In contrast here, there was no evidence

of malicious conduct, deliberate false statements to the court, or conduct motivated by profit.

The verdict form does not even mention "wanton and willful" conduct in this case.

  The facts of the present case do not fit the narrow *Clausen* exception, if such an

exception is to be followed by this federal court, contrary to federal admiralty precedent set

forth in *M/V Marlin*, *supra*, 2009 U.S. Dist. LEXIS 61538 at *16, and Ninth Circuit cases

noted above. *See also Clausen*, 174 Wn. 2d at 88-92 (J. Johnson dissenting) ("Today, the

majority ignores instruction from the United States Supreme Court—the final arbiter of federal

maritime law—as articulated in *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008). In *Exxon*,

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 21

NIELSEN✦SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    the Supreme Court held that in maritime cases, punitive damage awards cannot be excessive in

2    relation to the actual harm caused. *Id.* at 503 (holding the appropriate ratio of punitive to

3    compensatory damages in that case was 1:1).").

4        *First*, there is no evidence of malice or wanton and willful conduct, and as noted above,

5    Plaintiff only elected to seek punitive damages based on reckless indifference:

6        14    MR. FRIEDMAN: Your Honor, just to be clear, the
         15    instructions, I think proposed by both sides on punitive
7        16    damages, have several elements that are optional. The one
         17    we're relying upon is reckless indifference to safety of the
8        18    passengers.

9    RP Exh. 2b, 132:14-18. The jury's verdict was limited to a finding whether "Defendants acted

10   with reckless disregard for Plaintiff's safety and rights, proximately causing him injury and

11   loss." Verdict, Dkt. #201, at 2:15-17. There was no mention of wanton and willful conduct.

12       *Second*, the Court denied HAL's summary judgment motion and pre-verdict JMOL

13   based on there being disputed facts concerning whether HAL had notice, not because Plaintiff

14   had proven HAL acted maliciously toward the general public or with wanton and willful

15   disregard to Plaintiff's safety. Order, Dkt. #128, 3:25-4:2 ("Through the accident/incident

16   reports, Plaintiff has offered sufficient evidence to create a genuine dispute of fact as to

17   whether management had notice of a defect."); RP Exh. 2b, 133:8-10 ("I'm going to deny the

18   motion, counsel. I think that the same disputed fact is there that I found on summary

19   judgment.").

20       It is a stipulated fact that "Before the incident, there had been no reported injuries

21   requiring medical attention by passengers or crew using the doorway." Dkt. #125, ¶18. The

22   doors on the AMSTERDAM were examined and found to be normal and functioning properly.

23   *Id.* ¶¶16-17. Kallie Knutson, the Hausman's nanny, used the doors the night before Mr.

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

Hausman's accident while proceeding with Mrs. Hausman, and told Mr. Hausman that night about what had happened; Mr. Hausman proceeded the next morning to pass through them without any additional caution or concern. RP Exh. 2b, 242:2-24.

The subsequent remedial measure taken by HAL to increase the setting of the sensors from low to medium did not change the pattern of the sensor detection area, and thus it would not have prevented Plaintiff walking into an area where the sensor range did not detect him. RP Exh. 2c, 192:24-193:2. In fact, having it configured differently, would not have made a difference. *Id.* at 178:9-17.

While Plaintiff proffers views by his retained expert, Capt. Derie, that what we have here is a "failure to communicate" the other events on other ships, this is far from the factual setting of *Clausen* which involved "the extreme end of the scale of egregiousness." *See Clausen*, 174 Wn. 2d at 86. Accordingly, HAL Defendants request, pursuant to Rule 50(b), that the Court reduce the award of punitive damages to a ratio of 1:1 or less, if it does not dismiss them altogether as lacking an evidentiary basis. And there is no legal basis to sustain the jury's excessive punitive damages award as a matter of general maritime law.

*Third*, unlike *Clausen*, there was no showing here that HAL acted maliciously in order to gain financially. Action taken or omitted in order to augment profit represents an enhanced degree of punishable culpability, as does willful or malicious action, taken with a purpose to injure. *Exxon Shipping*, 54 U.S. at 493-94. While financial motive may be a reason to increase the ratio above average 0.65:1, the Supreme Court has not held that the ratio could exceed the 1:1 limit. *See id.* Regardless, there was no desire on the part of HAL to have the doors close more quickly in order to save heating and air-conditioning expenses. RP Exh. 2a, 170:22-25; see also RP Exh. 2d, 148:3-6, 9-11, & 17-19 & 170:22-25. In fact, HAL did not set the

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 23

NIELSEN ❖ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1  sensors, Centraltechnica did.  There was no record HAL adjusted them.  Accordingly, there

2  was no substantial evidence of a financial incentive to warrant punitive damages.

3  **d.  No reasonable jury would exceed the 1:1 ratio had it been instructed.**

4  Finally, the jury in this case was not instructed on an appropriate ratio or directed on its

5  verdict form to link the amount of punitive to compensatory damages.[8]   In contrast,

6  Washington Pattern Jury Instructions direct the jury to consider "The amount of any punitive

7  damages should also bear a reasonable relationship to any injury or harm actually or potentially

8  suffered by (name of plaintiff)." 6A Wash. Prac., Wash. Pattern Jury Instr. Civil WPI § 348.02

9  (5th ed.) (Wash. Sup. Ct. Comm. on Jury Instr. 2005). No reasonable jury, having been properly

10  instructed on the 1:1 ratio limit, could have awarded punitive damages of more than 3.3 times

11  the amount of compensatory damages as was done in this case.

## III. CONCLUSION

13  Based on the foregoing reasons, HAL Defendants request the Court grant JMOL, new

14  trial, or remittitur to comport with the limits set under general maritime law.

15  DATED this ___5th___ day of November, 2015.

16
                                    *s/Louis Shields*
17                                  LOUIS A. SHIELDS, WSBA # 25740
                                    RICHARD A. NIELSEN, WSBA #11916
18                                  NIELSEN SHIELDS, PLLC
                                    1000 Second Avenue, Suite 1950
19                                  Seattle, Washington 98104
                                    Telephone:    206-728-1300
20                                  Facsimile:    206-728-1302
                                    Email:        las@nielsenshields.com
21                                  Attorneys for HAL Defendants

22  ───────────────
[8] Various jurisdictions, including Washington, to provide the protection directed by the Supreme Court
23  in relating compensatory to punitive damages, have updated their pattern instructions to include that
"any award must bear a reasonable relationship to plaintiff's compensatory damages." *See*
http://www.williamskastner.com/uploadedFiles/Pitcher%20Robinson%20Jury%20Instructions.pdf.

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Herbert Farber, Esq.
The Farber Law Group
PO Box 69
Bellevue, WA  98009-0069

Kenneth R. Friedman, Esq.
William S. Cummings, Esq.
Friedman Rubin
1126 Highland Ave
Bremerton, WA  98337

Richard H. Friedman, Esq.
David R. Roosa, Esq.
Roger S. Davidheiser, Esq.
Friedman Rubin
51 University Street, Suite 201
Seattle, WA 98101

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Seattle, Washington.

*Sheila Baskins*
Legal Assistant
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
Telephone:  206-728-1300
Facsimile:  206-728-1302
smb@nielsenshields.com

DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF
LAW, OR ALTERNATIVELY, FOR REMITTITUR OR NEW TRIAL
No. 2:13-cv-00937-BJR – Page 25

21100 rk050301

**NIELSEN✦SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104