THE HONORABLE BARBARA J. ROTHSTEIN

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

JAMES R. HAUSMAN,

                    Plaintiff,

    v.

HOLLAND AMERICA LINE-U.S.A., *et al.*,

                  Defendants.

No. 2:13-cv-00937-BJR

**DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR DISMISSAL, OR ALTERNATIVELY MOTION TO VACATE JUDGMENT AND FOR NEW TRIAL BASED ON PLAINTIFF'S FRAUD ON THE COURT, WILLFUL VIOLATION OF THIS COURT'S DISCOVERY ORDER, INTENTIONAL DESTRUCTION OF EVIDENCE, AND WITNESS TAMPERING (Evidentiary Hearing Requested)**

**NOTE ON MOTION CALENDAR:**
**Friday, December 4, 2015**

### I. RELIEF REQUESTED

    Defendants Holland America Line-USA, *et al.*, move the Court to Vacate the Judgment rendered in this matter (Dkt. #207) and for either Dismissal or, alternatively, for New Trial Based on Plaintiff's Fraud on the Court, willful violation of this Court's discovery Order (Docket No. 66), Intentional Destruction of Evidence and Witness Tampering. This Motion is

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 1

NIELSEN ◆ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    brought pursuant to Fed. R. Civ. P. Rules 59 and 60(b)(2), (b)(3) and (b)(6), as well as under

2    the Court's inherent powers to vacate judgments and dismiss cases for fraud on the court,

3    willful violation of court orders, willful discovery misconduct and tampering with evidence, all

4    of which was discovered on November 10, 2015 after the verdict was rendered in this action.

5    This Motion is supported by the Declaration of Amy Mizeur, which details that Plaintiff James

6    Hausman: (1) willfully and systematically destroyed evidence after being ordered by this Court

7    to preserve and produce it; (2) fabricated evidence with the intention that one of his treating

8    physicians would rely upon it; and (3) tampered with at least one witness, including suborning

9    perjury of a fact witness.  As detailed in the Declaration of Louis Shields, the above facts and

10   misconduct were not known to Defense counsel or Defendants until after the verdict in this

11   action was rendered when Former Gold Center/Hausman employee Amy Mizeur contacted

12   Defense counsel to report Plaintiff Hausman's misdeeds and other sanctionable acts previously

13   unknown to Defendants or defense counsel, and to apologize for her role in committing this

14   fraud.  HOLLAND AMERICA submits with this Motion the sworn Declaration of Ms. Mizeur

15   (an independent witness formerly employed as Personal Assistant to Mr. Hausman), which

16   presents clear and convincing evidence of Plaintiff's extensive misconduct, requiring the

17   imposition of Relief from Judgment and other remedies, as HOLLAND AMERICA requests.

18   *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878-79 (9th Cir. 1990).

19                                                 II.

20   **PLAINTIFF'S INTENTIONAL ACTS OF MISCONDUCT MANDATE VACATING
     THE VERDICT AND JUDGMENT AND OTHER SANCTIONS**

21

22        **A.     Plaintiff Intentionally Violated An Express Order of this Court by Willfully
                   and Intentionally Destroying Evidence He Had Been Ordered to Produce
23                  and Causing Another Witness to Likewise Destroy Evidence**

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 2

In this trial, there was no dispute that Plaintiff had been struck by an automatic door onboard one of Defendants' ships. Rather, the primary dispute at trial involved the nature and extent of Mr. Hausman's claimed damages including his claims that the accident had altered his relationships with his wife and family and that he could not perform certain routine activities due to his alleged head injury. In an effort to test the veracity of these claims and to determine whether there may have been alternative sources of claimed changes in his family relationships or alleged physical or mental impairments, Defendants requested production of all Plaintiff's emails on a variety of subjects.    Plaintiff objected to the request and Defendant was forced to file a Motion to Compel. (See, Dkt #61; see also Asia N. Wright Decl. ¶¶2-5). Ultimately, the Court ruled Plaintiff must produce all emails *from all accounts* containing specific words. (Wright Decl. ¶8; See, Dkt #66).[1]

At the time of the Court's discovery Order, Amy Mizeur was Plaintiff's personal assistant at his gold business where she and Plaintiff shared a single physical office. (Mizeur Decl. at ¶¶2-3).    When Plaintiff received the Court's Order requiring him to produce his emails, Plaintiff panicked, fearing that the disclosure of the emails would damage his case. (Mizeur Decl. at ¶17). Following the verdict in this action, Ms. Mizeur came forward and revealed to Defendants that, in what can only be described as a shocking intentional and flagrant fraud on the court and violation of this Court's discovery Order, Plaintiff thereafter ordered Ms. Mizeur to immediately delete all emails he had ever sent to her. Plaintiff, who

---

[1] Plaintiff's counsel agreed to produce all emails from all accounts containing the words "seizure[s]," "headache[s]," "dizzy," "dizziness," "vertigo," "Holland," "HAL," "not the same," "bi-parting automatic door[s]," "automatic door[s]," "sensor[s]," "door /s injur!," and "door /s [faulty OR broken OR damaged OR defective]." (Wright Decl. ¶8). In addition, the Court's Order required Plaintiff to also produce all Emails containing the words "injury," "cruise," "lawsuit," "sue," "litigation" and "door."

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

routinely carries guns on his person, then personally stood over Ms. Mizeur to ensure she complied with his demand to destroy this potentially damming evidence.

> *"Immediately after he learned of the Court's order requiring him to turn over his emails to HAL, Mr. Hausman immediately ordered me to delete all the emails he had sent to me. He stood over me and my computer to make sure I did what I was told."*

(*Id.* at ¶18). Further, Ms. Mizeur (who shared an office with Plaintiff) then personally witnessed Plaintiff spending the multiple days deleting his own emails from his own work computer.

> *"I also personally observed Mr. Hausman deleting substantial amounts of emails from his computer. He spent multiple days in the office working at the computer to search words and delete the emails that he did not want to produce. Mr. Hausman told me in a panic "I have to get these [emails] out of here."*

(*Id.* at ¶20). Evidencing Mr. Hausman's knowing and intentional effort to defraud the Court and Defendants, he then discussed with Ms. Mizeur how he could destroy the hard drive on his computers so that Defendants would not be able to tell he had deleted emails after receipt of the Court's Order.

> *"Mr. Hausman and I discussed how HAL might be able to see that he had deleted emails. We discussed the possibility of hiring an outside vendor to "scrub" the computer. Mr. Hausman also mentioned that he could destroy the hard drive by using large magnets. He told me that a magnet would "destroy everything," but we discussed that Holland America likely would be able to see evidence of that."*
>
> *"At around this same time, Mr. Hausman told me that the hard drive on his personal home computer "fried." After working to replace the hard drive, he told me he put a magnet on the old hard drive to damage it...."*

(*Id.* at ¶¶21-22). None of this was known by Defendants until after trial. (Decl. of Louis Shields, ¶¶2-3). Despite being ordered to delete all her emails from Plaintiff, Ms. Mizeur was able to resurrect some of her deleted emails, including messages which were not produced in direct violation of the Court's discovery Order. (See Exs. 1 & 2 to Mizeur Decl.).

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 4

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

Although Plaintiff initially had claimed producing his emails would be unduly burdensome because he maintained a large volume of emails, almost two months after receipt of the Court's Order, Plaintiff produced a limited number of emails and claimed other emails were unavailable because "Mr. Hausman's practice has always been to regularly delete the 'sent' and 'deleted' folders from his personal email accounts." (Wright Decl. ¶¶15-19[2] & Ex. 9, 2:18-20 thereto).   This was yet another fabrication in an effort to falsely convince Defendants there were no other emails.  This newly discovered evidence from Ms. Mizeur demonstrates that Plaintiff had no such practice, that prior to receipt of the Court's Order he had kept emails going back at least ten years, and that he only systematically deleted emails after receipt of the Court's Order and for the purpose of avoiding disclosure of information that might undermine his lawsuit.

> *"Prior to this time, I had never observed Mr. Hausman deleting emails (other than junk mail type emails).  Often times we would search his old emails to locate old records for tax purposes or business dealings.   I remember one occasion where [we] searched [and] located some emails that were from as far back as 2003.  Mr. Hausman did not have a practice of routinely deleting sent, received or deleted emails.  In fact, I had never observed him deleting emails other than when he was ordered to produce them in the lawsuit (and obvious junk mail as noted above)."*

(Mizeur Decl. at ¶23).  Suspiciously, every email Plaintiff produced in this litigation was from his Hotmail email account.   The emails he ordered Ms. Mizeur to destroy clearly show he also maintained and actively used a Yahoo email account (*jimrhausman@yahoo.com*). Yet Plaintiff did not produce even a single email from this account.  (Mizeur Decl. ¶24 & Ex. 2 thereto; Wright Decl. at ¶21).  The undisclosed emails even show that Plaintiff apparently intentionally

---

[2] Prior to this response, Plaintiff had objected claiming the request would impose an undue burden because he had large number of emails.  He made no mention of his "practice" regularly deleting emails. Plaintiff's Response to Defendants' Tenth Set of Interrogatories. Ex. 6 to Wright Decl.

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 5

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1  used the Hotmail email account for mail he expected might be disclosed, but used the

2  undisclosed Yahoo email account for messages he wanted to keep hidden. For example, a

3  December 7, 2013 email sent by Plaintiff through his yahoo account to Ms. Mizeur

4  demonstrates his intentional use of the disclosed Hotmail account to create false information

5  while using the undisclosed yahoo account for private communication. *"Amy – Just sent you a*

6  *BS message on hotmail."* (See Ex. 2 attached to Mizeur Decl.).

7          Plaintiff continued the falsehood even through trial where he feigned a lack of interest

8  in the issue of his emails and claimed he was never asked to review them. (Wright Decl. at Ex.

9  12, pp. 13:22-1, 14:11-24 and 15:1). Plaintiff specifically denied at trial spending any time

10 looking through emails he was supposed to review in response to discovery requests and the

11 Court's Order. (*Id.*). Contrary to his testimony at trial, Mr. Hausman was very interested in

12 his emails and engaged in a willful, knowing and sinister effort to conceal emails that might

13 damage his case by providing alternative explanations for his claimed relationship problems or

14 which might undermine his damage claims. (Mizeur Decl. at ¶17). He not only deleted many

15 of his own emails, but also he directed his employee, Ms. Mizeur, to delete her emails and then

16 he personally made sure she complied by personally supervising her evidence destruction. He

17 even went so far as to intentionally destroy the hard drive of his home computer to prevent

18 Defendant from detecting his fraud. (*Id.* at ¶¶17-24). Ms. Mizeur, fearful of being fired or

19 harmed by Plaintiff, was intimidated from coming forward. (*Id.* at ¶47). This conduct alone

20 mandates setting aside the verdict and dismissing Plaintiff's case (or alternatively ordering a

21 new trial) – but there is more.

22     **B.     Plaintiff Concocted False Medical Evidence Causing His Medical Experts
               to Give False Evidence at Trial and Concealed Medical Evidence of Other
23             Medical Conditions that Could Be Causing His Symptoms**

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 6

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

In a further effort to manipulate the legal process, Plaintiff created false medical evidence for his medical experts so that they would support his claims at trial.   On two occasions Plaintiff's physician or expert gave him a medical device to wear on his head to capture possible seizure activity.   However, unbeknownst to Defendants (and presumably also unbeknownst to the doctor) Plaintiff artificially attempted to cause the device to register abnormal brain activity.

> *"There were two occasions when Mr. Hausman's physicians gave him a medical device to wear on his head to "capture" seizure activities.   One morning after wearing the medical device on his head, Mr. Hausman told me that he did not have any "seizures" Mr. Hausman also told me that he and Mrs. Hausman "purposefully fought" to see if they could induce a seizure or get the monitor to register abnormal brain activities."*

(Mizeur Decl. at ¶¶30-31).   In addition, at one point Plaintiff directed Ms. Mizeur to prepare a written summary of her interactions with Plaintiff so that Plaintiff could provide this "evidence" to Dr. Fortin.   However, rather than giving her written summary to the doctor, Plaintiff took Ms. Mizeur's written summary home, had it revised and embellished, and then instructed Ms. Mizeur sign the false statement.

> *"Mr. Hausman also directed me to prepare a summary of my interactions with him to provide to Dr. Fortin.   Mr. Hausman took the summary home for his wife Mrs. Hausman to revise.   The next day Mr. Housman instructed me to sign the revised statement which contained inaccuracies because of the revisions and embellishments that had been added.   Although the summary was no longer truthful, I signed it because I feared Mr. Hausman would fire me if I did not."*

(Mizeur Decl. at ¶15).   In a final effort to conceal other possible medical causes of his claimed problems, Plaintiff systematically had his staff review documents being produced to Holland America to ensure nothing contained any mention of a medical problem that he had related to a tick bite or the fact he had found a tick embedded in his skin. (Mizeur Decl. at ¶29).   Mr.

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 7

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

Hausman also watched videos of people having legitimate seizures on the internet to ensure he knew what a seizure was supposed to look like. (Mizeur Decl. at ¶26).

**C.   Plaintiff Instructed His Employees to Lie About His Drinking to Conceal His Alcoholism (Which Would Explain His Behavior, Family Problems, and Memory Issues) and About His Marital Problems When They Were Interviewed By the Defense**

In preparing its defense of Plaintiff's claims, Holland America's attorneys conducted extensive interviews of Plaintiff's employees, including Ms. Mizeur. One of the topics of these interviews was Plaintiff's drinking habits. Before Ms. Mizeur's interview with Defendant's representative, Plaintiff himself instructed her "not to tell the truth" about his drinking.

> *"During this preparation for the interview, Mr. Hausman ordered me not to tell the interviewers that he had moved out of his house and was living by himself at local hotels. He also had me deliver cases of beer to the hotels so that such purchases would not show up on the hotel receipts. Mr. Hausman frequently paid cash for his purchases when I was with him.*
>
> *Mr. Hausman also told me to not tell the truth about the amount of beer he drank on a daily basis (approximately one case of 24 cans per day). He told me that information on the amount of alcohol he drank would undermine his case as HAL would use his drinking as evidence to explain his behavior and memory issues. I observed Mr. Hausman drinking many cans of beer every day and evening that I was with him. He kept a refrigerator in our office fully stocked with at least two cases of beer at all times.*
>
> *Mr. Hausman told me how to respond to the interviewer's questions so the truth would not come out. For example he told me to say things like "its hard to keep track" or "I'm not sure" when asked questions by the interviewers that might make his actions sound bad or damage his case."*

(Mizeur Decl. at ¶10-12). To make sure Ms. Mizeur followed his order to "not tell the truth" Plaintiff himself insisted upon secretly listening to Ms. Mizeur's phone interview and even made her write down on paper what was being asked so that he could follow the conversation. Plaintiff would signal Ms. Mizeur when he wanted her to stop talking or say less. (Mizeur

Decl. at ¶13).  Plaintiff even monitored other employees interviews with Holland America's defense team over his company's closed circuit surveillance system. (Mizeur Decl. at ¶8).

**D.    Plaintiff Interfered with Defendant's Ability to Learn About Conduct that Directly Contradicted Claims Made in His Lawsuit About His Ability to Drive Long Distances, His Balance, His Ability to Climb and Use Tall Ladders, Etc.**

Ms. Mizeur had unique knowledge that Plaintiff was fabricating or exaggerating his damages.  For example, she rode as a passenger with him to his cabin in Wisconsin (500 mile drive) on multiple occasions but he instructed her to always tell people that she had driven as he did not want people to know he was able to drive that lengthy distance, including driving over lengthy bridges, without difficulty.  (Mizeur Decl. at ¶¶32-33).  She was able to observe him climbing ladders without difficulty, cleaning snow off tall roofs without difficulty, walking without difficulty, balancing without difficulty, walking while on a moving boat without difficulty, working lengthy hours including weekends without difficulty.  (Mizeur Decl. at ¶¶34-42).  This information directly contradicts what Plaintiff had claimed in his deposition where he alleged his injuries affected his ability to do even simple chores:

> Q    *Do your injuries affect your ability to do chores?*
> A    *Yes.*
> Q    *How?*
> A    *That I can't be on a ladder any more, I mean, stuff as simple as changing a light bulb, I can't get up, height, I'm not supposed to do anything where I can increase my chance of getting hurt.*
> Q    *If you look up does that trigger any symptoms?*
> A    *Yes.*

(Pl.'s Dep. at 139: 5-13, Ex. 13 to Wright Decl.). Plaintiff wanted to ensure Holland America discovered none of this so he personally directed Ms. Mizeur to conceal all of this from Holland America.

**NIELSEN ✦ SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

> *"At Mr. Hausman's direction, I intentionally withheld information from the HAL investigators on many relevant issues, including the following: 1) that I was Mr. Hausman's personal assistant; 2) that I shared an office with him; 3) that I worked 8-12 hours per day with him; 4) that I had driven with him to Hayward Wisconsin 10-12 times; 5) that I had observed him climbing ladders, working up on the roof of his Hayward home, operating and loading a boat and transporting and carrying cases of coins and metals weighing up to 70-75 lbs each."*

(Mizeur Decl. at ¶46). Ms. Mizeur's forty-eight paragraph Declaration includes many additional details evidencing Plaintiff's misconduct and fraud.[3] Plaintiff's intentional interference with Defendant's ability to investigate his claim has permanently tainted this proceeding and prejudiced Defendant's ability to investigate and defend the claim.   Had Mr. Hausman not instructed Ms. Mizeur to lie, conceal and destroy evidence, Defendant would have known all this information and would have called her as a crucial witness at trial.[4] Holland America would never had discovered any of this but for Ms. Mizeur's decision to contact Defense counsel after trial because she knew what she had done was wrong and because she *"feel[s] guilty having allowed Mr. Hausman to manipulate the Court by destroying evidence and fabricating or exaggerating his claimed injury."*   (Mizeur Decl. at ¶47-48).

The conduct outlined in the lengthy Declaration of Ms. Mizeur evidences an overt and concerted pattern of behavior by Plaintiff intended to destroy evidence, tamper with witnesses, violate this Court's discovery Order, and to prevent Holland America from presenting an

---

[3] Tellingly, during this time, Plaintiff rewarded Ms. Mizeur for her assistance and for her loyalty with cash payments that he placed in her purse and with a credit card which he paid. (Mizeur Decl. at ¶¶27-28).

[4] Just by way of example, if called as a witness Ms. Mizeur's information also would have shown that Mr. Hausman testified falsely in his deposition about his gun shooting when he testified that since the accident he had never shot guns with anyone other than Steve. (Pl.'s Dep. at 115: 10-13, Ex. 13 to Wright Decl.). Ms. Mizeur directly contracts this testimony as Mr. Hausman purchased a gun for her and taught her how to shoot it at the firing range. (Mizeur Decl. ¶44).

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    accurate defense to his damage claims.     Her Declaration attaches various documents and

2    photographs that corroborate her testimony.

3         For the foregoing reasons, this Honorable Court should immediately set aside the

4    Verdict and Judgment and dismiss Plaintiff's case with prejudice (or alternatively order a new

5    trial).  Defendant respectfully submits that no lesser relief will be adequate to dislodge and

6    avoid the fraud and misinformation injected into this process by Plaintiff, clearly resulting in

7    the patently unjust result reflected in the Judgment.

8

9                              **III. ARGUMENT**

10        As not less than the U.S. Supreme Court has held, a Court may grant a new trial under

11   Rule 59 if the "trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan*,

12   311 U.S. 243, 251 (1940).  In ruling on a Fed. R. Civ. P. 59 motion, a court "can weigh the

13   evidence and assess the credibility of the witnesses" and can grant a new trial, including raising

14   *sua sponte* its own concerns "on any ground necessary to prevent a miscarriage of justice."

15   *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).  If

16   considering a dismissal for fraud on the court, the Court should conduct an evidentiary hearing

17   allowing it to hear from Ms. Mizeur or other witnesses on this important miscarriage of justice.

18        Alternatively, Rule 60 provides a further basis upon which a Court may relieve a party

19   from a final judgment where there is evidence of: "(2) newly discovered evidence that, with

20   reasonable diligence, could not have been discovered in time to move for a new trial under

21   Rule 59(b), … (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or

22

23

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 11

1    misconduct by an opposing party," or "(6) any other reason that justifies relief."[5]  Fed. R. Civ.

2    P. 60(b)(2), (3) and (6).

3       To prevail on such grounds, the moving party must prove by (1) clear and convincing

4    evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct,

5    and (2) that the conduct complained of prevented either the full and fair preparation or

6    presentation of the case. *Jones*, 921 F.2d at 878-79.  The Declaration of Amy Mizeur filed

7    herewith establishes this and more.

8       Further, "when the case involves the withholding of information called for by

9    discovery, the party need not establish that the result in the case would be altered." *Jones*, 921

10    F.2d at 879 (citing *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir. 1982)).  Rather, the

11    moving party is entitled to a **presumption** of substantial interference.  *Id.*  (citing *Anderson v.*

12    *Cryovac, Inc.*, 862 F.2d 910, 923-27 (1st Cir. 1988).  Regardless of the presumption of

13    substantial interference, Plaintiff's misconduct here, as he intended and designed it, altered the

14    preparation and presentation of the case and greatly prejudiced Holland America's ability to

15    defend Plaintiff's case.

16       Where a party asserts that such misconduct has occurred, a district court "must make a

17    fresh determination" by conducting a hearing on whether the moving party has demonstrated

18    the worth of the material withheld as trial evidence or by elucidating its value as a tool for

19    obtaining meaningful discovery.  *Jones*, 921 F.2d at 879.  Defendants are fully prepared to

20    conduct a hearing if the Court so directs, and will make all necessary arrangements to have Ms.

21    Mizeur appear before the Court.  Alternatively, the Court simply may set aside the judgment

22

23    _____

[5] Rule 60(b)(2) and (3) grounds may also be used here for a new trial under Rule 59 as HAL's motion is
brought within the 28-day time limit under Rule 59.  *See Jones*, 921 F.2d at 878-79.

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 12

NIELSEN ❖ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1   and enter a dismissal because of the numerous and clear violations of its discovery order. *See*

2   *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 349 (9th Cir. 1995)

3   (expressly approving dismissal where plaintiff provided false evidence); *Huntley v. City of*

4   *Carlin*, 2014 U.S. Dist. LEXIS 113573, *4 & 19-21 (D. Nev. Aug. 14, 2014) (federal court has

5   inherent power to dismiss based on plaintiff's deceptive conduct).   Based on Plaintiff's

6   misconduct and violation of the Court's Order, HOLLAND AMERICA requests the verdict

7   and judgment be immediately set aside and the matter be dismissed in whole and with

8   prejudice.  Alternatively, and at a minimum, the Court should order a new trial and order such

9   other relief as the court may consider fair and just under these extraordinary circumstances.

10          In assessing misconduct under subsection (b)(3) of Rule 60, the Ninth Circuit noted that

11   "[f]ailure to disclose or produce materials requested in discovery can constitute 'misconduct'

12   within the purview of this subsection." *Jones*, 921 F.2d at 879 (quoting with approval

13   *Anderson v. Cryovac, Inc.*, 862 F.2d 910, (1st Cir. 1988)).  "'Misconduct' does not demand

14   proof of nefarious intent or purpose as a prerequisite to redress." 921 F.2d at 879. "The term

15   can cover even accidental omissions...." *Id.*   In this case there is no doubt, however, that

16   Plaintiff's misdeeds are not merely accidental omissions.  There is no scenario under which a

17   party's decision to destroy a computer hard drive by using strong magnets immediately after

18   receipt of a Court order requiring production of information from that computer can be

19   considered "accidental."

20          In *Jones*, the plaintiff appealed from the denial of a motion for a new trial following an

21   adverse jury verdict in her product liability action. *Jones*, 921 F.2d at 876. Two days after the

22   verdict, counsel for a third-party defendant gave to the plaintiff's lawyer copies of

23   correspondence, which had not been produced in discovery to plaintiff. *Id.* at 877. Although

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 13

**NIELSEN✦SHIELDS**
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1    the district court denied a new trial under Rule 59, despite newly discovered evidence, it

2    indicated it might later hold a hearing to determine whether defendant's failure to produce the

3    documents involved misconduct. *Id*. The Ninth Circuit agreed and held that when there is

4    discovery misconduct, Rule 59 must borrow from cases interpreting Rule 60(b)(3). *Id*. at 878.

5    Under this standard, discovery misconduct, including even accidental nondisclosure, is

6    sufficient misconduct to grant a hearing to determine appropriate relief.

7        A failure to produce requested emails ordered by the Court to be produced, violates a

8    direct court Order; doing so with the intent to destroy legitimate evidence is fraud.  It is

9    unlawful for anyone to attempt to so or to destroy email with the intent to impair the ability for

10   it to be used in a legal proceeding. 18 U.S.C. § 1512(c).  For example, in *United States v*

11   *Burge*, 711 F.3d 803, 808-809 (7th Cir. 2013), a jury convicted the defendant of violating

12   Section 1512(c) for giving false responses to written interrogatories.  The Seventh Circuit

13   upheld the conviction, noting that, "[v]ery few defendants shred incriminating papers in plain

14   view of a presiding judge. Obviously, the statute must apply to destruction of documents

15   performed in advance of an official proceeding." *Burge*, 711 F.3d 809.

16       As noted above, Mr. Hausman's supplemental discovery response states "Mr.

17   Hausman's practice has always been to regularly delete the "sent" and "deleted" folders from

18   his personal email accounts." (Wright Decl. Ex. 9, 2:18-20).  This response was aimed to

19   mislead Defendants and cover-up the fact that Plaintiff did not routinely delete emails as part

20   of a routine, but rather he deleted them intentionally out of concern that they would undermine

21   his case after learning of a court Order requiring their production. (Mizeur Decl. ¶¶17-23).

22   Mr. Hausman not only conspired to hide the fact that he had destroyed pertinent and responsive

23   emails, but also, he took steps to conceal his misdeeds by placing a magnet on his home

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 14

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1  computer's hard drive. (Mizeur Decl. ¶22). Mr. Hausman's false discovery responses and his

2  destruction of emails in the face of a Court Order to produce them, constitutes intentional

3  misconduct.

4        Recognizing the principle that means are as, or more, important as the result, "Rule

5  60(b)(3) is aimed at judgments that were unfairly obtained, not those which are factually

6  incorrect." *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000). "There

7  is no point to a lawsuit, if it merely applies law to lies. True facts must be the foundation for

8  any just result." *Valley Engineers Inc. v. Electric Engineering Co.*, 158 F.3d 1051, 1058 (9th

9  Cir. 1998). As is clearly established in Ms. Mizeur's declaration, Plaintiff Hausman willfully,

10  egregiously and fraudulently destroyed and created evidence, and tampered with the testimony

11  of at least one witness. In *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. Mass.

12  1989), the Court stated:

13        'Fraud on the court" occurs where it can be demonstrated, clearly and
      convincingly, that a party has sentiently set in motion some
14        unconscionable scheme calculated to interfere with the judicial system's
      ability impartially to adjudicate a matter by improperly influencing the
15        trier or unfairly hampering the presentation of the opposing party's claim
      or defense.

16

17  *Aoude* at 1118. While taking many forms, corrupt intent knows no stylistic boundaries;

18  fabrication of evidence is a near-classic example of the genre. Here, Plaintiff revised Ms.

19  Mizeur's summary of interactions with him to present a false record to his treating physician.

20  (Mizeur Decl. ¶¶15-16). At one point, Mr. Hausman admitted to Ms. Mizeur that he did not

21  "have a seizure," but rather intentionally tried to make his medical monitor record abnormal

22  brain activity. (*Id.* at ¶31). Plaintiff's actions constitute misconduct, requiring relief.

23

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1   In addition to destroying documents and giving false answers to discovery requests, it is

2   unlawful for a person to attempt or corruptly persuade another person or engage in misleading

3   conduct toward another person, with intent to (1) influence, delay, or prevent the testimony of

4   any person in an official proceeding; or (2) cause or induce any person to withhold testimony,

5   or withhold a record, document, or other object, from an official proceeding. 18 U.S.C. §

6   1512(b); *United States v Ortiz*, 367 F Supp. 2d 536, (S.D.N.Y 2005).

7        Here, Mr. Hausman not only destroyed emails (and tellingly failed to produce any

8   emails from his secret Yahoo account), he stood over and directed Ms. Mizeur to destroy her

9   emails received from him. (Mizeur Decl. ¶18). Furthermore, Mr. Hausman instructed Mizeur

10  how to respond to questions from Holland America's defense team to prevent discovery of

11  critical evidence and specifically instructed her to lie on several critical issues. (Mizeur Decl.

12  ¶¶12-13). He also secretly sat in the room with Ms. Mizeur while she was interviewed,

13  influencing her responses. *Id.*   In addition, he provided gifts to his treating physician, Dr.

14  Fortin, to influence his findings, and engaged in misleading conduct by creating a false account

15  by Mizeur. (*Id.* at ¶16). All of these intentional deceptive acts amount to misconduct requiring

16  reparation.

17       As the Ninth Circuit explained in *Jones, supra,* when considering a motion based on

18  misconduct, correspondence withheld from discovery may substantially interfere with a party's

19  ability to fully and fairly present the case – for example, concealment of knowledge about an

20  issue may have "precluded inquiry into a plausible theory of liability." *Jones*, 21 F.2d at 879

21  (citing *Anderson*, 862 F.2d at 925).[6]  Mr. Hausman's destruction of his email correspondence

22

23  ---

[6] Likewise in *Anderson,* the court found misconduct because plaintiffs demonstrated defendant knew, or was charged with knowledge, of the missing document, and had constructive (if not actual) possession

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 16

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1   and his non-disclosure of emails from his yahoo account, precluded Defendants from inquiry

2   into his motives for viewing such email as damaging to his case as well as having experts

3   opine on his cognitive ability in making such calculating (and strategically sinister) decisions.

4       As to trial, Plaintiff's failure to disclose that he had destroyed email and his affirmative

5   testimony that he had not done so intentionally, but as part of a routine, was designed to

6   mislead the defense and this Court.  Had he properly responded to discovery, Defendant could

7   have cross-examined Mr. Hausman about his motivations and about the conduct detailed in the

8   Mizeur declaration and certainly would have called Ms. Mizeur to testify.  Also, of note, Ms.

9   Mizeur was not disclosed as Mr. Hausman's *personal assistant*, who spent 8-12 hours per day

10  with him and worked in the same physical room as Plaintiff.  Had she been allowed to tell the

11  truth, HOLLAND AMERICA would have learned about Plaintiff's use of ladders and other

12  activities inconsistent with his claims made in discovery and at trial.

13      Importantly, there is a "presumption of substantial interference if [the moving party]

14  can demonstrate the misconduct was sufficiently knowing, deliberate or intentional." *Jones*, 21

15  F.2d at 879 (citing *Anderson*, 862 F.2d at 923-27, summarizing the applicable standards and

16  burdens of proof).  "Moreover, since parties ought not to benefit from their own mis-, mal-, or

17  nonfeasance, uncertainties attending the application of hindsight in this area should redound to

18  the movant's benefit." *Anderson*, 862 F.2d at 924 (citing *Minneapolis, St. Paul, & Sault Ste.*

19  *Marie Ry. Co. v. Moquin*, 283 U.S. 520, 521-22 (1931) (litigant who engages in misconduct

20  "will not be permitted the benefit of calculation, which can be little better than speculation, as

21  to the extent of the wrong inflicted upon his opponent")).  Accordingly, even if these actions

22  _____

23  of it and did not divulge the document's existence. *Anderson*, 862 F.2d at 928.  The court noted that "Another well-sculpted marker points out that misconduct need not be result-altering in order to merit Rule 60(b)(3) redress." *Anderson*, 862 F.2d at 924.

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 17

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

1  by Mr. Hausman, a licensed private investigator, a litigant in many other cases, and one who

2  testified that he was fully aware of his discovery obligations, are explained as accidental non-

3  productions, Defendant would be entitled to a presumption that Plaintiff substantially

4  interfered with either the preparation or presentation of the case, or both, requiring relief.

## IV. CONCLUSION

6      Plaintiff Hausman did not allow Defendants a full and proper hearing of the evidence

7  because he destroyed relevant evidence, violated this Court's discovery Order, created fictional

8  "evidence," and tampered with at least one witness instructing her to lie, and to hide or alter

9  her testimonial knowledge.  This misconduct allowed Plaintiff to present the jury a picture of

10  impairment and disability, of "pain and suffering" and "loss of enjoyment of life," that was

11  false, fabricated and the central element of the massive fraud committed in this Western

12  District of Washington Court, and elsewhere.  The breadth and the cynicism of Plaintiff's

13  improper conduct, both the secret intentional behavior, and the false presentations made in

14  Court, are stunning.  Ms. Mizeur was and remains fearful that Mr. Hausman will level his

15  wrath upon her once he learns of this Declaration and her confession of her involvement in

16  Plaintiff's fraud.  Nonetheless, she could not bring herself to stay silent, knowing what she

17  knows, and hearing what she heard about the case, both in the press and from Mr. Hausman.

18  Defendants appreciate that Ms. Mizeur finally listened to her true self, and decided to tell the

19  truth; better late than never.  For all of the foregoing reasons, Defendants respectfully request

20  the Court vacate the verdict and judgment forthwith and dismiss Plaintiff's claims herein with

21  prejudice.  Alternatively, the court should vacate the verdict and judgment, order a new trial,

22

23

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 18

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

and impose all available remedies for this abuse by Plaintiff James Hausman of the system and
its honorable practices.[7]

DATED this 19th day of November, 2015.

s/Louis A. Shields
LOUIS A. SHIELDS, WSBA # 25740
s/Richard A. Nielsen
RICHARD A. NIELSEN, WSBA # 11916
s/Asia N. Wright
ASIA N. WRIGHT, WSBA # 40648
NIELSEN SHIELDS, PLLC
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
Telephone:     206-728-1300
Facsimile:     206-728-1302
E-mail:        las@nielsenshields.com
Attorneys for HAL Defendants

---

[7] At an absolute minimum, in the event this Court opts to order a new trial, Plaintiff should be precluded from presenting any claim for punitive damages as a punishment for his own gross misconduct and unclean hands.

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR
DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 19

NIELSEN ✦ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Herbert Farber, Esq.
The Farber Law Group
PO Box 69
Bellevue, WA  98009-0069

Kenneth R. Friedman, Esq.
William S. Cummings, Esq.
Friedman Rubin
1126 Highland Ave
Bremerton, WA  98337

Richard H. Friedman, Esq.
David R. Roosa, Esq.
Roger S. Davidheiser, Esq.
Friedman Rubin
51 University Street, Suite 201
Seattle, WA 98101

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Signed at Seattle, Washington.

*Sheila Baskins*
Legal Assistant
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
Telephone:  206-728-1300
Facsimile:  206-728-1302
smb@nielsenshields.com

DEFENDANTS' MOTION TO VACATE JUDGMENT AND FOR DISMISSAL ETC -- CASE NO. 2:13-cv-00937-BJR – Page 20

NIELSEN ❖ SHIELDS
P L L C
1000 Second Avenue, Suite 1950
Seattle, Washington 98104
206.728.1300