UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES R. HAUSMAN,

      *Plaintiff*,

      v.

HOLLAND AMERICA LINE-U.S.A., *et al*.

      *Defendants*.

CASE NO.   CV11-1308 BJR

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL

## I.   INTRODUCTION

Before the Court is Plaintiff's Motion to Compel Production of Defendants' Records of Contact with Witness Amy Mizeur. Dkt. No. 238. Defendants oppose the motion. Dkt. No. 259. Having considered the parties' submissions, as well as the relevant case law and authority, the Court will DENY the motion. The reasoning for the Court's decision is set forth below.

## II.   BACKGROUND

Plaintiff, James R. Hausman, filed this negligence action against Holland America Line-U.S.A., a cruise company, and other related corporate entities (collectively, Defendants). Plaintiff alleges that while traveling as a passenger on Defendants' cruise ship - the MS AMSTERDAM, an automatic sliding glass door improperly closed, striking his head and causing him injury. After a two week jury trial in October, 2015, the jury rendered a verdict in favor of Plaintiff, awarding five million in compensatory damages and 16.5 million in punitive damages.

Accordingly, this Court entered judgment in favor of Plaintiff on November 4, 2015. *See* Dkt. No. 207.

Thereafter, on November 19, 2015, Defendants filed a Motion to Vacate Judgment and for Dismissal, or alternatively, a Motion to Vacate Judgment and for a New Trial Based on Plaintiff's Fraud on the Court, Willful Violation of this Court's Discovery Order, Intentional Destruction of Evidence, and Witness Tampering (hereinafter, "the Motion to Vacate"). Dkt. No. 216. Defendants base the Motion to Vacate, in part, on the declaration of Amy Mizeur, a former employee of Plaintiff. *Id*. at 2. Defendants contend that after the jury's verdict was rendered, Ms. Mizeur contacted Defendants' counsel and reported that, prior to trial, Plaintiff had "willfully and systematically destroyed evidence" in violation of this Court's order, "fabricated evidence," and "tampered with at least one witness." *Id*. at 2. A hearing on the Motion to Vacate is set for December 10, 2015. *See* Dkt. No. 234.

In the instant motion, Plaintiff moves to compel "production of any records" Defendants have of their contacts with Ms. Mizeur. Dkt. No. 238 at 1. Specifically, Plaintiff seeks a copy of notes defense paralegal Ellen Roberts took during an interview she conducted of Ms. Mizeur before the trial as part of the Defendants' trial preparation. Defendants oppose Plaintiff's request, arguing that the notes are protected attorney opinion work-product.

### III.   Legal Standards

The attorney "work[-]product doctrine reflects the strong public policy against invading the privacy of an attorney's course of preparation." *In re Sealed Case*, 856 F.2d 268, 273 (D.C. Cir. 1988) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)); *see also Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989) (the purpose of the work-product rule is to "prevent exploitation of a party's efforts in preparing for litigation"). The work-product

doctrine, therefore, serves to protect "written materials that lawyers prepare in anticipation of litigation." *United States v. Thompson*, 562 F.3d 387, 393 (D.C. Cir. 2009) (internal quotation marks omitted); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992) (same).

Although the attorney work-product doctrine protects an attorney's materials in a number of different circumstances, not "all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases." *Hickman*, 329 U.S. at 511. Rather, attorney work-product may be discoverable "if the party seeking discovery can make a sufficient showing of necessity." 8 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2025 (3d ed. 1998). Therefore, a party seeking work-product must show, at a minimum, a "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Holmgren*, 976 F.2d at 576 (quoting Fed.R.Civ.P. Rule 26(b)(3)).  However, if the work-product constitutes "opinion" work-product—*e.g.*, written materials prepared by counsel that reflect the attorney's "mental impressions, conclusions, opinions, or legal theories,"—such materials are "virtually undiscoverable." Rule 26(b)(3)(B); *Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997); *see also Holmgren*, 976 F.2d at 577 ("A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product.").

Discovery of "opinion" work-product is therefore permissible only where a party has made "a far stronger showing of necessity and unavailability by other means" than would otherwise be sufficient for discovery of "fact" work product. *Upjohn Co. v. United States*, 449

U.S. 383, 402 (1981); *Holmgren*, 976 F.2d at 577 (suggesting that in the Ninth Circuit, in order to discover opinion work-product, the movant must establish that "mental impressions are *at issue* in a case" in addition to establishing that the need for "the material is compelling") (emphasis in original).

Therefore, when confronted with a motion to compel attorney work-product, the court must first determine if the work-product constitutes "fact" or "opinion" work-product. "[T]he task of drawing a line between what is fact and what is opinion can at times be frustrating and perplexing." *Florida House of Representatives v. U.S. Dep't of Commerce*, 961 F.2d 941, 947 (11th Cir. 1992). And, in the work-product analysis, the "fact" and "opinion" labels are even less useful because even if it can be agreed that a collection of statements constitute "facts," the collection itself might nonetheless reveal an attorney's mental impressions of the case, thereby converting the information into "opinion" work-product. *See, e.g., Dir., Office of Thrift Supervision*, 124 F.3d at 1308 ("At some point, ... a lawyer's factual selection reflects his focus; in deciding what to include and what to omit, the lawyer reveals his view of the case."); *Better Gov. Bureau, Inc. v. McGraw*, 106 F.3d 582, 608 (4th Cir. 1997) (concluding that information gained from a witness and memorialized in a typewritten summary "tend[ed] to indicate the focus of [the attorney's] investigation, and hence, her theories and opinions regarding this litigation").

As such, the Supreme Court has suggested that particular caution must be used in the event that an attorney is being asked to produce notes taken during an interview of a witness. *See Upjohn*, 449 U.S. at 399 ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes."); *see also*, Notes of Advisory Committee on 1970 Amendment to Rules, 28 U.S.C.A.

§ 442 (noting that "[t]he *Hickman* opinion drew special attention to the need for protecting an attorney against discovery of memoranda prepared from recollection of oral interviews.").

### IV. DISCUSSION

Plaintiff argues that he is entitled to a copy of Ms. Roberts' notes from her pre-trial interview of Ms. Mizeur. Plaintiff concedes that these notes constitute attorney work-product; nevertheless, he claims that he is entitled to the notes because Defendants' recently filed Motion to Vacate is "based solely on what [Defendants] allege to be newly discovered evidence from Ms. Mizeur."[1] Dkt. No. 238 at 1-2. According to Plaintiff, because Defendants "imply that Ms. Mizeur lied" to Defendants when they interviewed her before trial, Defendants "have placed at issue the content of any interview" Defendants had with her. *Id*. At a minimum, Plaintiff argues, Defendants "must establish that Ms. Mizner actually lied to them. This requires a comparison between what she actually told them and what she now claims to be the truth[.]" *Id*. at 2. As a result, Plaintiff alleges, "any notes, recording, transcript, or other records of [Defendants'] contacts [with Ms. Mizuer] should be produced." *Id*.

The Court is not persuaded. Plaintiff misinterprets the basis on which the Motion to Vacate rests. The Motion is not, as Plaintiff alleges, based "solely" on a claim that Ms. Mizeur lied to Defendants during a pretrial interview. Rather, the Motion raises a number of serious allegations, not the least of which is that Plaintiff allegedly failed to produce and/or destroyed relevant evidence in direct contravention of the Federal Rules of Civil Procedure and this Court's orders. These allegations were raised by Ms. Mizeur with Defendants for the first time after the trial concluded. Therefore, it is not germane to Defendants' Motion to Vacate whether Ms. Mizeur's previous statement was truthful or untruthful.

---

[1] The parties do not dispute that, as a paralegal employed by Defendants' counsel, Ms. Roberts' notes are also protected by the work-product doctrine. *See*, *e.g. U.S. v. Nobles*, 422 U.S. 225, 238 (1975).

Moreover, even if Ms. Mizeur's prior statement was germane to the Motion to Vacate, Ms. Roberts' written notes from Ms. Mizeur's pre-trial interview would constitute the exact type of opinion work-product that the Supreme Court has cautioned must be zealously protected. *See Upjohn*, 449 U.S. at 399 (disclosure of notes of witnesses' oral statements is particularly disfavored because such work-product invariably reflects the attorney's impressions from the nature of what the attorney selected to memorialize). Further, even if an exception could be made to this general rule of non-disclosure, this is not the type of situation that would warrant such an exception. Plaintiff's reliance on the Ninth Circuit's decision in *Holmgren* is misplaced. In *Holmgren*, the Court stated that opinion work-product "may be discovered [] when mental impression are *at issue* in the case and the need for the material is compelling." *Holmgren*, 976 F.2d at 577 (emphasis in original). In that case, a third-party tort victim sued her insurer alleging bad faith in the settlement of her claim. *Id*. at 576. She sought to obtain opinion work-product of the insurer and the Court determined that such information was discoverable given the nature of the claim against the insurer (*i.e*., a bad-faith insurance claim) because the mental impressions of the insurer were at issue. *Id*. at 578. This is not such a case. Ms. Mizeur's mental impressions are not at issue in this case, nor even in the Motion to Vacate. As such, the holding in *Holmgren* offers Plaintiff no relief.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel Production of Defendants'

Records of Contact with Witness Amy Mizeur is HEREBY DENIED.

Dated this 9th day of December, 2015.

*[signature: Barbara J. Rothstein]*

Barbara Jacobs Rothstein
U.S. District Court Judge